## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| CARLO M. CROCE | Case No. 2:23-cv-02896 |
| Plaintiff, | |
| | Judge Morrison |
| vs. | |
| | **DEFENDANTS' MOTION TO DISMISS** |
| SOTHEBY'S FINANCIAL SERVICES, INC., *et al.* | |
| Defendants. | |

Now come Defendants Sotheby's Inc.[1] ("Sotheby's"), Sotheby's Financial Services Inc. ("SFS"), and Sotheby's Financial Services California, Inc. ("SFS CA") (collectively, "Defendants"), by and through the undersigned counsel, and respectfully submit this Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), the Complaint (ECF No. 1) (the "Complaint") of Plaintiff Carlo M. Croce ("Plaintiff" or "Croce") in its entirety and with prejudice.

A Memorandum in Support is attached.

Respectfully submitted,


/s/ Zachary C. Schaengold
Jarrod M. Mohler (0072519)
Zachary C. Schaengold (0090953)
Robbins, Kelly, Patterson & Tucker, LPA
312 Elm Street, Suite 2200
Cincinnati, Ohio 45202
T: (513) 721-3330 | F: (513) 721-5001
jmohler@rkpt.com
zschaengold@rkpt.com

*Attorneys for Defendants*

Paul Cossu (pro hac vice forthcoming)
Rachel M. Kaplowitz (pro hac vice forthcoming)
PRYOR CASHMAN LLP
7 Times Square
New York, New York 10036
(212) 421-4100
pcossu@pryorcashman.com
rkaplowitz@pryorcashman.com

*Attorneys for Defendants*

---

[1] Plaintiff has incorrectly named as a defendant "Sotheby's Corporation"; Sotheby's, Inc. is the actual auction house entity to whom Plaintiff's claims are presumably directed, as is the entity with whom Plaintiff previously contracted. (*See* Ex. A, ECF 6-1).

## **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................... ii

TABLE OF AUTHORITIES .......................................................................................... iv

INTRODUCTION ...........................................................................................................1

RELEVANT ALLEGATIONS AND FACTS.................................................................2

     A.    THE PARTIES ENTERED INTO A VALUATION AGREEMENT
           RELEASING DEFENDANTS FROM ALL CLAIMS RELATED
           TO THE VALUATIONS PROVIDED PLAINTIFF ................................................2

     B.    PLAINTIFF'S FORMER COUNSEL, AND A JUDGMENT
           CREDITOR OF PLAINTIFF, SERVED SOTHEBY'S WITH
           A SUBPOENA CONCERNING PLAINTIFF .......................................................4

STANDARD OF REVIEW ..............................................................................................5

LAW AND ARGUMENT ................................................................................................5

     A.    THE COMPLAINT MUST BE DISMISSED .......................................................6

          1.   Plaintiff Fails to Properly Allege Sufficient Claims Against
              Sotheby's Financial Services California, Inc. ....................................................6

          2.   Plaintiff's Product Disparagement Claim Fails for Lack of
              Malicious Intent and/or Special Damages ........................................................7

          3.   Plaintiff's Negligent Appraisal Claim Must be Dismissed............................10

              a.   Plaintiff Agreed to Release Defendants from Any Claims
                   Arising Out of or Relating to Defendants' Valuation of
                   Plaintiff's Old Masters Collection .....................................................10

              b.   The Claim is Also Time-Barred, and Plaintiff Concedes
              c.   that there is No "Special Relationship" with SFS...............................12

          4.   Plaintiff's NY GEN BUS § 239 Claim Fails as it
              Does Not Apply to the Artwork at Issue.........................................................13

          5.   Plaintiff's Negligent Misrepresentation Claim Fails ......................................13

          6.   Plaintiff's Promissory Estoppel Claim Fails As There is No Ongoing "Injustice"
              that Enforcement of

Defendants' Alleged Promises Would Cure……………...........................…...15

7.  Plaintiff's Fraud and Intentional Misrepresentation Claim Fails
for Failure to Sufficiently Plead Fraudulent Intent..........................................18

CONCLUSION.................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abercrombie v. Andrew Coll.*,
438 F. Supp. 2d 243 (S.D.N.Y. 2006) .........................................................................14

*Accelerated Moving & Storage v. Herc Rentals, Inc.*,
2022-Ohio-3016, 169 Ohio St. 3d 1458, 204 N.E.3d 568, ............................................9

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).....................................5, 7, 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)....................................5, 7, 8

*BNP Paribas Mortgage Corp. v. Bank of Am.*, N.Am.,
949 F. Supp. 2d 486 (S.D.N.Y. 2013) .........................................................................15

*Campbell v. Worthy*,
No. 12-CV-11496, 2013 U.S. Dist. LEXIS 78818 (E.D. Mich. June 5, 2013)...............7

*Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*,
76 A.D.3d 310 (N.Y. 2011) .........................................................................................12

*Clegg v. Sotheby's*,
No. 1:23-CV-01995 (ER), 2023 WL 8281487, at *5 (S.D.N.Y. Nov. 30, 2023) .............12,14, 17

*Comm. to Save St. Brigid v. Egan*,
30 A.D.3d 356 (1st Dep't 2006) .................................................................................17

*Conte v. Newsday, Inc.*,
703 F. Supp. 2d 126 (E.D.N.Y. 2010) .........................................................................10

*Delman v. City of Cleveland Height*,
41 Ohio St. 3d 1, 534 N.E.2d 835 (1989) ....................................................................15

*Est. of Mautner v. Alvin H. Glick Irrevocable Grantor Tr*
No. 19 CIV. 2742 (NRB), 2019 WL 6311520, (S.D.N.Y. Nov. 25, 2019) .................11

*F.D.I.C. v. Hoyle*,
10-CV-4245 JG VVP, 2012 WL 4049808 (E.D.N.Y. Aug. 2, 2012)...........................12

*Flagstar Bank v. Airline Union's Mtge. Co.*,
128 Ohio St.3d 529, 947 N.E.2d 672,.........................................................................13

*Foxley v. Sotheby's Inc.*,
893 F. Supp. 1224 (S.D.N.Y. 1995).........................................................................................14

*Gallagher v. New York City Health & Hosps. Corp.*,
No. 16 CIV. 4389 (GBD), 2017 WL 4326042 (S.D.N.Y. Sept. 20, 2017)....................................14

*Gavitt v. Born*,
835 F.3d 623 (6th Cir. 2016) .........................................................................................................5

*Gus Hoffman Family Ltd. Partnership v. David*,
12th Dist. Clermont No. CA2006-09-076, 2007-Ohio-3968.........................................................16

*Hoffmann v. Boone*,
708 F. Supp. 78 (S.D.N.Y. 1989) ...........................................................................................18, 19

*In re Solomat Partners, L. P.*,
261 B.R. 72 (Bankr. D. Conn. 2001) ..............................................................................................8

*Kirby v. Wildenstein*,
784 F. Supp 1112 (S.D.N.Y. 1992) .................................................................................................9

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
313 U.S. 487, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941)....................................................................6

*Mandarin Trading Ltd. v. Wildenstein*,
65 A.D.3d 448, 450, 884 N.Y.S.2d 47, 50 (N.Y. App. Div. 2009) .........................................10, 20

*Maniolos v. United States*,
741 F. Supp. 2d 555 (S.D.N.Y. 2010)...........................................................................................17

*Marcilis v. Twp. of Redford*,
693 F.3d 589 (6th Cir. 2012) ..........................................................................................................7

*Mories v. Boston Sci. Corp.*,
494 F. Supp. 3d 461 (S.D. Ohio 2020) .........................................................................................20

*Nathan v. Whirlpool Corp.*,
492 F. Supp. 3d 747 (S.D. Ohio 2020) .........................................................................................20

*Ohio Bureau of Workers' Comp. v. MDL Active Duration Fund, Ltd.*,
476 F. Supp. 2d 809 (S.D. Ohio 2007) .........................................................................................19

*Power-Tek Sols. Servs., LLC v. Techlink, Inc.*,
403 F.3d 353 (6th Cir. 2005) ..........................................................................................................6

*Rather v. CBS Corp.*,
68 A.D.3d 49 (N.Y. App. Div. 2009) ........................................................................20

*Ravenna v. Christie's Inc.*,
289 A.D.2d 15 (N.Y. App. Div. 2001) .....................................................................13

*Sanderson v. HCA—The Healthcare Co. et al.*,
447 F.3d 873 (6th Cir. 2006) ...................................................................................19

*Smith v. Loc. 819 I.B.T. Pension Plan*,
291 F.3d 236 (2d Cir. 2002)........................................................................................9

*State v. Brown*,
2022-Ohio-4347, 171 Ohio St. 3d 303, 217 N.E.3d 767 .........................................10

*Surace v. Wuliger*
25 Ohio St.3d 229, 25 Ohio B. 288, 495 N.E.2d 939 (1986) ...................................10

*Tele-Save Merchandising Co. v. Consumers Distrib. Co., Ltd.*,
814 F.2d 1120 (6th Cir. 1987) ....................................................................................6

*Universal Contr. Corp. v. Aug*,
1st Dist. Hamilton No. C-030719, 2004-Ohio-7133...................................................15

*Weinreb v. Hosp. For Joint Diseases Orthopaedic Inst.*,
404 F.3d 167 (2d Cir. 2005) ......................................................................................16

*Yuhasz v. Brush Wellman, Inc.*,
341 F.3d 559 (6th Cir. 2003) ....................................................................................19

**Other Authorities**

C.P.L.R. 214(6)..............................................................................................................12

Fed. R. Civ. P. 12(b)(6)..............................................................................................1, 5

Fed. R. Civ. P. 9(b)........................................................................................................19

NY GEN BUS § 239.......................................................................................................13

Restatement of the Law 2d, Torts (1965) 126-127, Section 552(1) ...............................15

<u>**MEMORANDUM IN SUPPORT**</u>

**I.**    <u>**INTRODUCTION**</u>

Plaintiff has brought this action in attempt to distract from a million-dollar judgment that has been entered against him in Ohio in favor of his previous legal counsel. Embarrassed by the prospect that, in order to satisfy that judgment, his judgment creditor will need to sell his prized art collection through Sotheby's, Plaintiff makes a misguided attempt to blame Defendants for the consequences of Plaintiff's own actions and to further delay the judgment enforcement actions that are already underway.

Evidence of this misdirection strategy can be seen by the fact that the Complaint (i) fails to disclose that Plaintiff already contractually agreed to release Defendants from the very claims he brings against them, (ii) provides the Court with only misleading excerpts of documents, intentionally omitting the parts that exculpate Defendants, and (iii) fails to disclose undisputed key facts, such as that Defendants' disclosure of Plaintiff's alleged "confidential information" was in response to a subpoena of which Plaintiff had prior notice and to which Plaintiff made no objection to Defendants' response. Plaintiff's attempt to hide these facts from this Court should not be countenanced.

However, even if the releases and disclaimers that Plaintiff has disingenuously omitted did not govern this dispute, Plaintiff's Complaint is still subject to dismissal for failure to state a claim upon which relief can be granted. Plaintiff fails to adequately state a claim against any of the named Defendants, engages in "group pleading" that provides no factual basis to distinguish each Defendant's conduct, and alleges wrongdoing barred by the litigation privilege. The Complaint should be dismissed.

## II.   **RELEVANT ALLEGATIONS AND FACTS**

### A.  **THE PARTIES ENTERED INTO A VALUATION AGREEMENT RELEASING DEFENDANTS FROM ALL CLAIMS RELATED TO THE VALUATIONS PROVIDED PLAINTIFF**

On April 16, 2019, Plaintiff and Sotheby's entered into a valuation agreement (the "Valuation Agreement") pursuant to which Sotheby's agreed to render "a written valuation of the retail replacement values of certain items of [Fine Art]" (the "Valuation"), subject to certain conditions. (Valuation Agreement, Ex. A at 1, ECF 6-1)[2] First, the Valuation Agreement clearly disclaimed that the Valuation would represent "only [Defendants'] best judgment and opinion…and is not a statement or representation of fact" and any such judgment of value would "not to be deemed a representation or warranty that" any of the artwork appraised "will bring the noted value if offered for sale at public auction or otherwise." (*Id*.)

Second, while Sotheby's agreed "not to disclose any Confidential Information to any third party without [Plaintiff's] prior written consent," Sotheby's explicitly carved out several exceptions to such confidentiality obligations including, most importantly, disclosure "as a result of valid legal process compelling the disclosure, provided we first give you prompt written notice thereof and allow you, if you deem it appropriate, to seek to obtain a protective order." (*Id*. at 2.). Finally, Plaintiff agreed that "Sotheby's may have been, or may be in the future, engaged to sell some or all of the property at auction or by any other means." (*Id.*)

As consideration for, and a necessary precondition to, Sotheby's provision of the Valuation, Plaintiff agreed to a broad release of Sotheby's, "its parents, subsidiaries and affiliated entities [*i.e.*, Defendants]…from liability or damages whatsoever arising out of or related to the Valuation" and

---

[2]      Throughout the Complaint, Croce regularly refers to the relationship established between him and Sotheby's, and incorporates by reference the valuation provided by Sotheby's. Defendants attach the contract for the valuation as Exhibit A (ECF 6-1).

further agreed that he would not "at any given time commence any action, assert any claim or make any demand of Sotheby's in connection with the Valuation." (*Id.*). Subject to these express terms, Sotheby's then provided Plaintiff with Sotheby's Retail Replacement Valuation for Insurance Purposes of Plaintiff's art collection (the "Old Masters Collection"). (Valuation, Ex. B, ECF 6-2) [3] The Valuation presented single-figure insurance values, *i.e.*, the values at which Plaintiff might schedule items of property from the Old Masters Collections on his insurance policy.

The Valuation was clearly to Plaintiff's satisfaction: Plaintiff alleges in the Complaint that the Valuation gave him confidence in any future valuations that Defendants might undertake on his behalf. (Complaint., ECF 1, Page ID # 16, ¶ 109.) Subsequently, on or about August 25, 2022, Plaintiff sought a $3 million dollar loan from SFS.[4] (*Id*. Page ID # 3, ¶ 11.) Croce selected artworks from his "well known" Old Masters Collection to provide as collateral for the potential loan (*Id*., Page ID # 4, ¶¶ 14, 17). In October 2022, SFS proposed a loan of $1,255,000 based on the artworks proposed by Plaintiff. (*Id*., Page ID # 3, ¶ 11; Ex. C, ECF 6-3)[5] That document specifically states:

> This Summary of Indicative Terms and Conditions (this "Term Sheet") is provided for discussion purposes only and does not constitute an agreement by [SFS] or any of its affiliates or subsidiaries to negotiate, or a commitment to lend, or an agreement to issue any such commitment, nor does it create any binding or enforceable obligation on SFS or any of its affiliates or subsidiaries.

Ex. C at 1.

---

[3]  Croce selectively included two pages of the Valuation in his Complaint. (Doc. 1-3). Defendants attach the entire document.

[4]  As Plaintiff repeatedly acknowledges, SFS advised Plaintiff that any valuation for potential loan purposes would take "at least 30 days" (Complaint, ECF 1, Page ID # 4, ¶¶ 13, 17), yet Plaintiff paradoxically appears to complain that SFS did not complete the valuation within the "first 30 days of the loan process." (*Id*. ¶ 18.)

[5]  Croce selectively included the last page of the confidential term sheet discussing the potential value of certain art pieces in his Complaint. (Doc. 1-2). Defendants attach the entire document, with limited non-relevant redaction.

As Plaintiff concedes, the "loan was not completed" (*Id.*, Page ID # 8, ¶ 39) as SFS and Plaintiff failed to agree on the appropriate loan collateral values for certain artworks from Plaintiff's Old Masters Collection. (*Id.*, Page ID ## 5-6, 8, ¶¶ 23, 25, 28, 43.) It is noteworthy that the document provided by SFS does not constitute an *appraisal* of the Old Masters Collection, but simply potential auction "Low Estimate" and "High Estimate" assessments.

## B. PLAINTIFF'S FORMER COUNSEL, AND A JUDGMENT CREDITOR OF PLAINTIFF, SERVED SOTHEBY'S WITH A SUBPOENA CONCERNING PLAINTIFF

On or about March 8, 2023, Sotheby's was served with a subpoena (the "Subpoena") by Kegler, Brown, Hill, & Ritter, Co., LPA (the "Judgment Creditor"), who had obtained a judgment against Plaintiff in the amount of $1,098,642.80 (the "Judgment") resulting from unpaid legal fees to the Judgment Creditor. (Ex. D, ECF 6-4). The Subpoena required that Sotheby's produce documents related to its prior appraisals of Plaintiff's art collection. (Ex. E, ECF 6-5).[6]

In accordance with the Valuation Agreement, on March 15, 2023, Sotheby's gave notice to Plaintiff of Sotheby's receipt of the Subpoena. Neither Plaintiff nor Plaintiff's counsel (who appears to have been separately served with the Subpoena) ever responded to the email or sought to quash the Subpoena. Sotheby's accordingly produced documents in response to the Subpoena, including the Valuation Agreement and Sotheby's 2019 Valuation of the Old Masters Collection. (Ex. A and B, ECF 6-1 and 6-2, described above).

Following Sotheby's production of documents to the Judgment Creditor, the Judgment Creditor requested that Sotheby's provide proposed auction estimates and/or proposed minimum net private sale prices for certain artworks located in Plaintiff's residence (that had been seized by

---

[6]     Exhibit D and E are incorporated by reference into the Complaint in discussion of Croce as a Judgment Debtor. (Complaint, ECF 1, Page ID # 9, 10, ¶¶ 52, 60).

the Sheriff).  Accordingly, Sotheby's communicated solely to the Judgment Creditor a June 12, 2023 document providing "Auction Estimate[s]" and a single "Private Sale Value" for such items from the Old Master Collection. The Judgment Creditor – not any Defendant – subsequently published Sotheby's 2023 document as an exhibit to its *Motion to Sell Personal Property Seized by Sheriff by Private Selling Officer,* filed in the Court of Common Pleas, Franklin County, Ohio. (*See* Ex. F, ECF 6-6).

## III.   STANDARD OF REVIEW

In accordance with the Court's Standing Orders (Aug. 31, 2022), Defendants do not include the standard of review for a motion to dismiss under Federal Rule of Civil Procedure 12(b)6), or the primary cases on this standard, *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). However, Defendants do note that in deciding a motion to dismiss under Civ. R. 12(b)(6), a court is able to review and take into account matters of public record, orders, items of record in the case, and exhibits attached to the complaint without converting the motion to one for summary judgment. *See Gavitt v. Born,* 835 F.3d 623, 640 (6th Cir. 2016).

## IV.   LAW AND ARGUMENT

"Federal courts in diversity cases apply the choice of law rules of the state in which they sit." *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941). Ohio has adopted the approach of the Restatement (Second) of the Law of Conflicts, which applies the law of "the state with the most significant relationship to the transaction and the parties." *Power-Tek Sols. Servs., LLC v. Techlink, Inc.*, 403 F.3d 353, 357 (6th Cir. 2005). Thus, when reviewing a relationship arising out of a contract, the Court must consider the place of

contracting, the place of negotiation, the place of performance, the location of the contract's subject matter, and the places of incorporation and business of the parties. *Id.*

This analysis is rendered more facile if the parties have already agreed to a choice of law. The Valuation Agreement provides just that: a provision stating that disputes arising out the agreement will be determined under the laws of New York. (Ex. A., ECF 6-1). Because "Ohio choice-of-law principles strongly favor upholding the chosen law of the contracting parties," *Tele-Save Merchandising Co. v. Consumers Distrib. Co., Ltd.*, 814 F.2d 1120, 1122 (6th Cir. 1987), and none of the exceptions to this rule apply, New York law applies to the analysis of the Valuation Agreement. For the sake of completeness, however, and to address Plaintiff's imprecise pleading, Defendants move to dismiss under both Ohio and New York law.  Both lead to the same result: the Complaint should be dismissed.

### A.  THE COMPLAINT MUST BE DISMISSED

While the Valuation Agreement is dispositive in this case (as discussed below in Section IV.A.3 below), Plaintiff's claims fail for additional reasons. Whether the claims are time-barred, do not apply to Plaintiff's Old Masters Collection, or simply fail to state a claim, none of Plaintiff's causes of action are sufficient to carry this lawsuit past the pleading stage. The Complaint should be dismissed.

### 1.  Plaintiff Fails to Properly Allege Sufficient Claims Against Sotheby's Financial Services California, Inc.

As an initial matter, Plaintiffs' Complaint should be dismissed for the failure to distinguish his allegations against SFS CA. Sixth Circuit law holds that grouping a collection of defendants together and providing no factual bases on which the court or the parties can distinguish each defendant's conduct is insufficient to satisfy the federal pleading standard under *Twombly* and *Iqbal*. *See Marcilis v. Twp. of Redford*, 693 F.3d 589, 596-97 (6th Cir. 2012) (affirming dismissal

of claims against officers where complaint made only categorical references to "defendants" collectively). *See also, Campbell v. Worthy*, No. 12-CV-11496, 2013 U.S. Dist. LEXIS 78818, 2013 WL 2446287, at *2 (E.D. Mich. June 5, 2013) (discussing *Marcilis* and dismissing claims against police officers where the plaintiff failed to plead sufficient factual allegations against each officer).

Plaintiff's claims against Defendant SFS CA are similarly deficient. The only unique allegation against this Defendant is that it "is a licensed California finance lender that has its principal place of business in New York, New York." (Complaint, Doc. 1, Page ID # 3, ¶ 9.) Sotheby's Financial Services, Inc. is defined as business that "provides financial services to customers and collectors that include, among other services, the provision of financial loans (collateralized by art work)." (*Id.*, ¶ 7). And Sotheby's is described as "the world's largest, most trusted marketplace for art," where clients can obtain "a range of services from the valuation of art to the financing of art acquisitions and collateral loans." (*Id.*, ¶ 8). But the simple authority to lend money in California, or having a principal place of business in New York, do not rise to the level of pleading required by *Twombly* and *Iqbal*. Sotheby's Financial Services California, Inc. should be dismissed from this action.

### 2. Plaintiff's Product Disparagement Claim Fails for Lack of Malicious Intent and/or Special Damages

Plaintiff cannot adequately allege malicious intent as is required to state a claim for Product Disparagement. "Under New York law, to prevail on a claim for product disparagement, a plaintiff must establish (i) the falsity of a statement by the defendant, (ii) publication of the statement to a third person, (iii) malice, and (iv) special damages in the form of actual pecuniary or economic losses." *In re Solomat Partners, L.P.*, 261 B.R. 72, 79 (Bankr. D. Conn. 2001). But Plaintiff's allegations of malice are both conclusory and rest on a false factual premise. Specifically, Plaintiff

alleges "Sotheby's publication was made with express or implied malice because the valuation report was procured during a confidential collateral loan process…and is now being used by a Judgment Debtor Creditor to sell pieces of Croce's art collection." (Complaint, ECF 1, Page ID # 12, ¶ 72). Tellingly, Plaintiff fails to support his accusation with any coherent explanation for how or why Sotheby's acted with malice in preparing the report, *i.e.*, why Defendants would have any desire to harm him or his Old Master Collection (when, to the contrary, it is common sense that Sotheby's only business interest would be to sell the property at the highest-possible market prices, since Sotheby's earns a commission based on the sale price). Although Croce may be upset that his Old Masters Collection may be sold by Sotheby's to satisfy the Judgment Creditor's Judgment, Croce fails to demonstrate that this alone constitutes "express or implied malice."

Moreover, Plaintiff's position is also contradictory to his own pleadings, wherein Croce alleges that his Old Masters Collection was "well known" and thus ***not*** confidential (*Id*., Page ID # 4, ¶¶ 14, 17), as well as to the plain text of the documents, which show that the 2023 "Auction Estimate[s]" and "Private Sale Value" document provided by Sotheby's to the Judgment Creditor was dated *after* the failure of Croce to reach an agreement with SFS as to any loan collateralized by artwork, and provided valuation figures that on their face were geared towards prospective sale of the property, *not* potential collateralization by SFS. (ECF 1-1.)

Similarly, Plaintiff has failed to allege special damages with particularity. "Special damages are limited to losses having pecuniary or economic value, and must be 'fully and accurately stated,' 'with sufficient particularity to identify actual losses.'" *Kirby v. Wildenstein*, 784 F. Supp 1112, 1116 (S.D.N.Y. 1992) (citations omitted). As in *Kirby*, Plaintiff's product disparagement claim must be dismissed as Plaintiff does not specify the losses underlying Plaintiff's allegation that he "has suffered damages in an amount to be determined at trial, but in

no event will not be less than $75,000" and the allegations in the Complaint simply allege that another painting by the same artist sold for more recently. *Compare Kirby*, 784 F. Supp 116 *with* Complaint, ECF 1, Page ID # 5, ¶ 25. What remains are simply "conclusory allegations or legal conclusions masquerading as factual conclusions [that] will not suffice to prevent a motion to dismiss." *Smith v. Loc. 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002). Plaintiff has not pleaded that the value of any item from the Old Masters Collection has suffered depreciation as a result of the publication by the Judgment Creditor of Sotheby's 2023 auction estimates, nor in fact *could* Plaintiff make any such showing in the absence of an actual depreciated sale.

Plaintiff's product disparagement claim also fails under Ohio law. To show product disparagement—also known as trade libel—in Ohio, Plaintiff must allege that the defendant published a knowingly false statement harmful to the interests of another and intended such publication to harm the plaintiff's pecuniary interests. *Accelerated Moving & Storage v. Herc Rentals, Inc.*, 10th Dist. Franklin No. 21AP-523, 2022-Ohio-3016, ¶ 10 (reviewing claims for product disparagement by applying common-law libel elements). Here, in addition to the reasons set forth above, Plaintiff has done nothing of the sort. First, Plaintiff has not alleged that Defendants made false statements of fact; only false statements of valuation (which Plaintiff agreed under the Valuation Agreement were Defendants' "opinion" and not "a statement or representation of fact").[7] (ECF 6-1, Ex. A at 1). Second, Plaintiff has not alleged that he had a business (or product) to disparage, only that he was a collector who wanted to obtain a loan collateralized by his art. Third, the allegedly improper statements were not "published" by

---

[7]    *See Mandarin Trading Ltd. v. Wildenstein,* 65 A.D.3d 448, 450, 884 N.Y.S.2d 47, 50 (N.Y. App. Div. 2009), *aff'd*, 16 N.Y.3d 173, 944 N.E.2d 1104 (N.Y. 2011)("the appraisal consists of opinion, which is not actionable").

Defendants, but rather provided to a third-party creditor of Plaintiff who filed them in a court docket.

Any claims regarding defamation of Plaintiff's art collection are, in addition, barred by the litigation privilege. Although the valuation statements are neither factual nor untrue, even if they were defamatory, they are protected under the long-standing Ohio litigation privilege. *See State v. Brown*, 171 Ohio St. 3d 303, 2022-Ohio-4347, P20-P23, 217 N.E.3d 767, ¶ 23 ("Since *Surace*,[8] this court has applied the litigation privilege to provide civil immunity to individuals who have made defamatory statements during judicial proceedings that were reasonably related to those proceedings."). *See also, Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 146 (E.D.N.Y. 2010) ("[s]tatements made in the course of court proceedings are absolutely privileged under New York common law."). The valuation of Plaintiff's art published by the Judgment Creditor is insulated by litigation privilege, as it was made during and in the course of, as well as reasonably related to, the judgment and collection proceedings.

### 3. Plaintiff's Negligent Appraisal Claim Must Be Dismissed

#### a. Plaintiff Agreed to Release Defendants From Any Claims Arising Out of or Relating to Defendants' Valuation of Plaintiff's Old Masters Collection

As discussed in Section II.A. above, on April 16, 2019, the Parties executed the Valuation Agreement, pursuant to which Sotheby's agreed to render "a written valuation of the retail replacement values of certain items of [Fine Art]," and Plaintiff in consideration thereof agreed to a broad release of Sotheby's, "its parents, subsidiaries and affiliated entities…from liability or damages whatsoever arising out of or related to the Valuation" and further agreed that he would

---

[8]     *Surace v. Wuliger*, 25 Ohio St.3d 229, 231-233, 25 Ohio B. 288, 495 N.E.2d 939 (1986).

not "at any given time commence any action, assert any claim or make any demand of Sotheby's in connection with the Valuation." (Ex. A at 1, ECF 6-1).

"[A] valid release constitutes a complete bar to an action on a claim which is the subject of the release." *Est. of Mautner v. Alvin H. Glick Irrevocable Grantor Tr.,* No. 19 CIV. 2742 (NRB), 2019 WL 6311520, at *4 (S.D.N.Y. Nov. 25, 2019). Sotheby's cannot have any liability related to either the original Valuation issued by 2019 for "Retail Replacement" (*i.e.* insurance) purposes, nor the estimates provided by SFS to Plaintiff in 2022, which necessarily arises from and/or relates to the original Valuation (as it pertains to a subset of the same Old Masters Collection).  There can be no doubt that Plaintiff's claims are subject to this broadly worded release, the existence of which is conspicuously and deceptively absent from the Complaint, despite the fact that *the Complaint attaches portions of the valuations that were prepared by Sotheby's pursuant to the Valuation Agreement*. (*See* Complaint, ECF 1, Page ID # 6, ¶ 27 & attached ECF No. 1-3).  Indeed, the word "valuation" itself appears 162 times throughout the Complaint and the word "appraisal" (used seemingly interchangeably in the Complaint with "valuation") appears an additional 32 times.[9]

It is well-settled that "a release may [not] be treated lightly. It is a jural act of high significance without which the settlement of disputes would be rendered all but impossible," and even "a claim for fraud within the scope of a release can be released even if it is unknown to the releasor." *Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*, 76 A.D.3d 310, 316, 318 (N.Y. 2011); *see also Clegg v. Sotheby's*, No. 1:23-CV-01995 (ER), 2023 WL 8281487, at *5 (S.D.N.Y. Nov. 30, 2023) (dismissing complaint where letter executed between the parties "releases Sotheby's entirely from any obligations related to submitting the Painting to the Comité").

---

[9]    For purposes of this Motion, and accept where specifically noted, Defendants accepts these characterizations by Plaintiff, without waiving their right to contest them at a later stage in this litigation.

**b. The Claim Is Also Time-Barred, and Plaintiff Concedes that There is No "Special Relationship" With SFS**

Plaintiff's Negligent Appraisal claim is also time-barred. "For appraiser malpractice actions, the date of malpractice is the date on which the appraisal was completed." *F.D.I.C. v. Hoyle*, No. 10-CV-4245 JG VVP, 2012 WL 4049808, at *8 (E.D.N.Y. Aug. 2, 2012), report and recommendation adopted, No. 10-CV-4245 JB, 2012 WL 4049950 (E.D.N.Y. Sept. 13, 2012). The statute of limitations for appraisal malpractice, *i.e.*, negligent appraisal, is three years pursuant to C.P.L.R. 214(6) ("The following actions must be commenced within three years…6. an action to recover damages for malpractice, other than medical, dental or podiatric malpractice, regardless of whether the underlying theory is based in contract or tort"). Any claim in relation to the original Valuation conducted by Sotheby's is thus time-barred, as more than three years have since elapsed since it was issued.

Further, any claims in relation to SFS's subsequent "auction estimate" valuation rendered in connection the Judgment Creditor's subpoena and potential judgment satisfaction fail for lack of a special relationship because, despite his contrary allegation in ¶ 76, Plaintiff admits that no borrower-lender relationship was ever entered into. (*Compare* Complaint, ECF 1, Page ID # 12 ¶ 76 *with id*., Page ID # 51) ("No one from Sotheby's indicated that they had terminated the loan evaluation process, and Croce certainly believes the process is ongoing"). Nor does Plaintiff's allegation that "Sotheby's owes a duty to Croce because it was foreseeable by Sotheby's that Croce would rely on appraisals to secure a collateral loan" establish a special relationship. (*See id.*, Page ID # 12, ¶ 77). "[R]eliance and the existence of a special relationship between the parties" are two separate legal elements. *Ravenna v. Christie's Inc*., 289 A.D.2d 15, 16 (N.Y. App. Div. 2001). Plaintiff thus cannot allege a viable negligent appraisal claim on any of the valuations conducted by Defendants.

Ohio's law is similar, but allows four years, which have also passed in relation to the original Valuation issued in 2019. *See, e.g.*, *Flagstar Bank v. Airline Union's Mtge. Co*., 128 Ohio St.3d 529, 2011-Ohio-1961, 947 N.E.2d 672, ¶ 30 (holding that four-year statute of limitations for negligent appraisal accrued on the date of the appraisal). The Valuation Agreement was codified and completed in April 2019. The statute of limitations has run and this cause of action must alternatively be dismissed under Ohio law.

### 4. Plaintiff's NY GEN BUS § 239 Claim Fails as It Does Not Apply to the Artwork at Issue

Because Plaintiff's artwork does not contain any precious stones or metals, NY GEN BUS § 239 does not provide Plaintiff with a cause of action for appraiser liability. "Property" is defined narrowly under § 239 as "jewelry, watches, and objects made from or containing precious stones or metals." NY GEN BUS § 239. The artwork described by Plaintiff plainly does not fall within the operative definition of "Property," and indeed the Complaint is utterly bereft of any allegations indicating that it does. Plaintiff's claim under NY GEN BUS § 239 thus fails.

### 5. Plaintiff's Negligent Misrepresentation Claim Fails

To state a claim for negligent misrepresentation, plaintiff must establish that "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that [it] should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *Gallagher v. New York City Health & Hosps. Corp.,* No. 16 CIV. 4389 (GBD), 2017 WL 4326042, at *7 (S.D.N.Y. Sept. 20, 2017), *aff'd*, 733 F. App'x 3 (2d Cir. 2018). "[A] plaintiff may recover for negligent misrepresentation only where defendant owes her a fiduciary duty." *Foxley v. Sotheby's Inc*., 893 F. Supp. 1224, 1232 (S.D.N.Y. 1995).

Plaintiff does not adequately allege the existence of a required fiduciary relationship between the parties to sustain its negligent misrepresentation claim. Plaintiff alleges that the requisite relationship between the parties exists "based on Sotheby's superior knowledge and expertise (appraiser), the close business relationship and dealings between Croce and Sotheby's, and the lender-borrower relationship."[10] (Complaint, ECF 1, Page ID # 14, ¶ 88). This is not enough to demonstrate a fiduciary relationship. *See, e.g., Abercrombie v. Andrew Coll*., 438 F. Supp. 2d 243, 274 (S.D.N.Y. 2006) ("[T]he fact that one party trusts the other is insufficient to create a fiduciary relationship."); *see also, Foxley v. Sotheby's Inc*., 893 F. Supp. at 1232 (relationship spanning two decades, multiple personal visits, personal collection viewing, private luncheons, and introduction to Sotheby's key personnel did not create a fiduciary duty); *Clegg v. Sotheby's*, 2023 WL 8281487, at *4 ("While the complaint discusses Clegg's exclusive thirty-year relationship with Sotheby's at some length, prior to consignment, there was no fiduciary relationship between Clegg and Sotheby's"). Even if Plaintiff could allege a fiduciary relationship between the parties, Plaintiff's claims would be barred by the release in the Valuation Agreement (*see* Section IV.A.3.a *supra*), as well as the fact that Defendants did not breach any confidentiality obligations to Plaintiff (*see* Section II.A *supra*).

Plaintiff's claim for negligent misrepresentation also fails under Ohio law. Plaintiff's Complaint comes nowhere close to meeting the basic elements of the claim, which are: "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their *justifiable*

---

[10] This allegation is also demonstrably false as Plaintiff admits in the Complaint that no "lender-borrower relationship" ever existed between the parties. (Complaint, ECF 1, Page ID # 8, ¶ 39).

*reliance* upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."*Delman v. City of Cleveland Heights*, 41 Ohio St. 3d 1, 4, 534 N.E.2d 835, 837-838 (1989), citing 3 Restatement of the Law 2d, Torts (1965) 126-127, Section 552(1) (emphasis in original). Such claims are usually founded in "the existence of a duty to provide accurate information to the plaintiff that goes beyond the common-law duty to exercise reasonable care to prevent foreseeable harm." *Universal Contr. Corp. v. Aug*, 1st Dist. Hamilton No. C-030719, 2004-Ohio-7133, ¶ 14.

Again, Plaintiff's Complaint contains no allegations that he was in the business of selling art, only that he was an art collector attempting to collateralize his art. But even *assuming arguendo* that Croce was in such a business, the allegations do not show that Sotheby's provided false valuations, that Croce justifiably relied on these valuations, or that Croce has established any pecuniary loss for such valuations. Perhaps more to the point, Croce has failed to show that Defendants' obligations to him went "beyond the common-law duty to exercise reasonable care to prevent foreseeable harm." Because Plaintiff has not shown this elevated duty, or any of the elements required in a negligent misrepresentation claim, this cause of action should be dismissed.

### 6. Plaintiff's Promissory Estoppel Claim Fails as There is No Ongoing "Injustice" that Enforcement of Defendants' Alleged Promises Would Cure

"Promissory estoppel is a narrow doctrine designed to enforce a contract in the interest of justice where some contract formation problem would otherwise prevent enforcement—for example, the Statute of Frauds or a failure of consideration." *BNP Paribas Mortgage Corp. v. Bank of Am.*, N.A., 949 F. Supp. 2d 486, 516 (S.D.N.Y. 2013). "A plaintiff must satisfy four elements to succeed on a promissory-estoppel claim: '(1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, and (4) an injustice if the promise is not enforced.'" *Weinreb v. Hosp. For Joint Diseases Orthopaedic Inst.,* 404 F.3d 167, 172 (2d Cir. 2005) (internal quotations omitted).

In Ohio, the elements are similar. *Gus Hoffman Family Ltd. Partnership v. David*, 12th Dist. Clermont No. CA2006-09-076, 2007-Ohio-3968, ¶ 5 ("The elements of promissory estoppel are: (1) a clear and unambiguous promise (2) upon which it would be reasonable and foreseeable to rely, and (3) actual reliance on the promise (4) to the detriment of the one who relied.")

Plaintiff's promissory estoppel claim fails because the "promises" Plaintiff alleges were not the subject of a failed contract, and did not constitute "injustices" that could only be cured by enforcement. Plaintiff alleges that Defendants promised that "(1) the loan process would be completed in at least 30 days, (2) loan would be based on a true 50% LTV, (3) that as an Old Master expert their valuations would be accurate, (4) that it would act ethically regarding its clients (*i.e.*, no conflict of interest)." As an initial matter, the Term Sheet explicitly states that it is "provided for discussion purposes only and does not constitute an agreement by [SFS] or any of its affiliates or subsidiaries to negotiate, or a commitment to lend, or an agreement to issue any such commitment, nor does it create any binding or enforceable obligation on SFS or any of its affiliates or subsidiaries." (Ex. C at 1, ECF 6-3)

As to the first "promise," Plaintiff does not allege that Defendants made any more specific time commitment during which it promised to render a valuation and therefore there was no broken promise. *Comm. to Save St. Brigid v. Egan*, 30 A.D.3d 356, 357 (1st Dept. 2006) (upholding dismissal of promissory estoppel claim "for lack of a specific promise."). As to the fourth promise, outside of Plaintiff's pure legal speculation, nothing in the Complaint suggests Defendants did not at all times act ethically and pursuant to their legal obligations.

The alleged "conflicts of interest" complained of by Plaintiff were specific and express terms of the Valuation Agreement that Plaintiff acknowledged and accepted. Specifically, Plaintiff willingly agreed in the Valuation Agreement that Sotheby's—a singularly qualified appraiser—

might one day be engaged to sell the property subject to the Valuation Agreement or otherwise to provide business information pursuant to lawful process as occurred. (Ex. A at 2, ECF 6-1) Where an agreement between the parties "explicitly raised the possibility" that certain eventualities might occur, a claim arising out of those eventualities may not stand. *Clegg v. Sotheby's*, 2023 WL 8281487, at *5 (dismissing breach of fiduciary duty claim where "Release Letter explicitly raised the possibility that the Painting could be confiscated if the Comité determined the Painting was inauthentic and imposed no obligation on Sotheby's to raise red flags, conduct preliminary research, or advocate on Clegg's behalf to defend the Painting's authenticity.") These are the exact same substantive allegations of Plaintiff's claims.

Section 9 of the Valuation Agreement provides "Sotheby's may have been, or may be in the future, engaged to sell some or all of the property at auction or by any other means." (Ex. A at 2, ECF 6-1) As discussed *supra* at Section II.A, Plaintiff in essence complains that Defendants adhered exactly to those contractual terms. But when "an agreement is complete, clear and unambiguous on its face, it must be enforced according to the plain meaning of its terms." *Maniolos v. United States*, 741 F. Supp. 2d 555, 567 (S.D.N.Y. 2010), aff'd, 469 F. App'x 56 (2d Cir. 2012). That means that Plaintiff cannot prevail on a cause of action alleging conduct that may otherwise be actionable but that is plainly covered and disclaimed by a binding contract in the absence of breach (which Plaintiff does not allege occurred).

As to Plaintiff's complaint that Defendants' dual roles as lender and valuator was a "conflict of interest" that Croce would "never have consented to," there is plainly no "there" there. (Complaint, ECF 1, Page ID # 11, ¶ 66). To the contrary, Plaintiff actually alleges that, in seeking out Defendants' services, he *specifically relied* on Defendants' expertise in *both* art valuation and

collateral lending. (*See e.g., id.*, Page ID # 3, ¶ 12) (Plaintiff alleging he "sought the loan from Sotheby's for its reputation for…expertise in the art market valuations and collateral lending.").

As to the remaining promises—both of which are squarely released under the Valuation Agreement— Plaintiff himself admits that whatever damage he has allegedly suffered (and he has not suffered any) cannot be avoided through enforcement of a promise. Specifically, Plaintiff repeatedly alleges that the publication of Sotheby's valuations or auction estimates, even were the Court to assume that they were wrong when rendered, have now by virtue of Sotheby's reputation *actually devalued* Plaintiff's artwork. (*See e.g.* Complaint, ECF 1, Page ID # 10, ¶ 56) ("Given Sotheby's reputation and domination of the art market, Croce's art work will, in all likelihood, not sell for the art's true value"); (*id.*, ¶ 61) ("As a result of Sotheby's action, Croce's collection has been unreasonably devalued and such devaluation is now a matter of public record"). The import of these allegations is that a new "more accurate" valuation would not recover the purportedly lost value caused by the publication of previous valuations or estimates and thereby cure a present "injustice." And in any event, "the mere failure to obtain an uncertain prospective benefit," such as a greater collateral loan premised on simply thinking your property is worth more than experts say that it is, "does not rise to a sufficient level of unconscionability to warrant the application of the doctrine of promissory estoppel"—*i.e.*, there is no injustice here at all. *Hoffmann v. Boone*, 708 F. Supp. 78, 82 (S.D.N.Y. 1989). A promissory estoppel claim cannot lie on these facts under New York or Ohio law.

### 7. Plaintiff's Fraud and Intentional Misrepresentation Claim Fails for Failure to Sufficiently Plead Fraudulent Intent

Fraud-based claims are subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *see also, Ohio Bureau of Workers' Comp. v. MDL*

*Active Duration Fund, Ltd*., 476 F. Supp. 2d 809, 816 (S.D. Ohio 2007) ("While state law governs the burden of proving fraud at trial in a diversity action, the procedure for pleading fraud is governed by the pleading requirements of Rule 9(b)."). The minimum pleading requirements for claims of fraud in the Sixth Circuit require the plaintiff to "allege the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Sanderson v. HCA—The Healthcare Co. et al*., 447 F.3d 873, 877 (6th Cir. 2006) (quoting *Yuhasz v. Brush Wellman, Inc*., 341 F.3d 559, 563 (6th Cir. 2003)).

Plaintiff does not meet this minimum standard, and it is far from self-evident why Defendants—who have every reason to uphold their reputation for honesty and integrity as leaders in the art world—would devalue Plaintiff's artwork to issue a lower one-time collateral loan. Plaintiff even admits that "his prior business dealings with Sotheby's caused him to believe the valuations would not be false." (*See* Complaint, ECF 1, Page ID # 16, ¶ 109). Providing no reason for such a sharp departure in the parties' course of dealing, Plaintiff instead alleges merely that Defendants had "actual knowledge of [the valuations'] falsity" and "knew [Plaintiff] would be induced to rely on the valuations." (*Id.*, ¶ 108). That is woefully insufficient, and courts have already held that valuations of this nature, which represent the opinions of Sotheby's and SFS, are not actionable as a matter of law. *See Mandarin Trading Ltd,* 65 A.D.3d at 450, 884 N.Y.S.2d at 50 ("[t]he complaint fails to state a cause of action for fraudulent misrepresentation, because the appraisal consists of opinion, which is not actionable").

This cause of action should be dismissed accordingly. *See, e.g., Mories v. Boston Sci. Corp*., 494 F. Supp. 3d 461, 476 (S.D. Ohio 2020) (allegations regarding marketing materials, an email about the plaintiff's response to a medical device, and an adverse event were not sufficient to

substantiate claims for fraudulent misrepresentation); *Rather v. CBS Corp.*, 68 A.D.3d 49, 58 (N.Y. App. Div. 2009) (dismissing fraud and misrepresentation claims as [loss of an "alternative contractual bargain" is "undeterminable and speculative."]); *compare Nathan v. Whirlpool Corp.,* 492 F. Supp. 3d 747, 764 (S.D. Ohio 2020) (Rule 9(b) pleading standard satisfied where plaintiffs pleaded "the content of the misrepresentation, who made the misrepresentation, when and where the misrepresentation was made, why it was misleading and how it induced them to purchase the Blenders.").

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that this Court dismiss all of Plaintiff's claims in their entirety with prejudice, and that the Court further award Defendants such other and further relief as deemed just and proper.

Respectfully submitted,

/s/ Zachary C. Schaengold
Jarrod M. Mohler (0072519)
Zachary C. Schaengold (0090953)
Robbins, Kelly, Patterson & Tucker, LPA
312 Elm Street, Suite 2200
Cincinnati, Ohio 45202
T: (513) 721-3330 | F: (513) 721-5001
jmohler@rkpt.com
zschaengold@rkpt.com

PRYOR CASHMAN LLP
Paul Cossu (pro hac vice forthcoming)
Rachel M. Kaplowitz (pro hac vice forthcoming)
7 Times Square
New York, New York 10036
(212) 421-4100
pcossu@pryorcashman.com
rkaplowitz@pryorcashman.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been electronically filed this 18th day of December, 2023. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's CM/ECF system.

*/s/ Zachary C. Schaengold*
Zachary C. Schaengold