**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **CARLO M. CROCE** | : | |
| 2140 Cambridge Blvd | | |
| Columbus, Ohio 43221 | : | |
| | : | Case No. 2:23-cv-02896 |
| | : | Judge Sarah D. Morrison |
| v. | | |
| | : | Magistrate Judge Chelsey M. Vascura |
| | : | |
| **SOTHEBY'S FINANCIAL SERVICES INC.** | : | |
| c/o Senior Manager or Chief Executive Officer | | |
| 1334 York Avenue | : | **JURY DEMAND ENDORSED** |
| New York, New York 10021 | | **HEREON** |
| | : | |
| and | : | |
| | : | |
| **SOTHEBY'S INC.** | : | |
| c/o Statutory Agent Corporation Trust Company | | |
| 1209 Orange Street | : | |
| Wilmington, Delaware 19801 | : | |
| | : | |
| Defendants. | : | |

**FIRST AMENDED COMPLAINT**

I.   **Preliminary Statement**

1.      This action arises from Defendants' misrepresentations, negligent artwork appraisal, product disparagement and conflict of interest for their role as lender, appraiser and proposed judgment debtor appraiser and auctioneer.

II.  **Jurisdiction**

2.     This Court has subject matter diversity jurisdiction over this action pursuant to 28 U.S.C. §1332.   Complete diversity exists between the parties, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

3.     The  Court has personal jurisdiction over Defendants pursuant to Ohio Revised Code § 2307.382 (A)(1), (4) and (6) because Defendants have (1) transacted business in Ohio, (2) caused tortious injury in Ohio to Plaintiff by act (s) inside of Ohio committed with the purpose of injuring the Plaintiff, which they reasonably should have expected would have caused injury in Ohio and (3) regularly does and solicits business, or engages in a persistent course of conduct and derives substantial revenue from goods and services rendered in Ohio.

4.     The exercise of jurisdiction over Defendants is consistent with Due Process.

III.  **Venue**

5.     This action properly lies in the United States District Court, Southern District of Ohio, Eastern Division, pursuant to 28 U.S.C. § 1391 because all or a substantial part of the events giving rise to the claims alleged in the Complaint occurred in this Judicial District.

IV.  **Parties**

6.     Plaintiff Carlo Croce ("Croce") is a world renowned cancer scientist and collector/seller of art internationally.   He is a resident of the State of Ohio, County of Franklin.

7.     Defendant Sotheby's Financial Services Inc. is a corporation which has its principle place of business in New York, New York and is registered as a Nevada corporation. Defendant Sotheby's Financial Services Inc. provides financial services to customers and collectors that include, among other services, the provision of financial loans (collateralized by artwork) to collectors such as Croce.

2

8.     Defendant Sotheby's Inc. is a Delaware corporation whose principle place of business is 1334 York Avenue, New York, New York 10021.  Sotheby's is the world's largest, most trusted marketplace for art.  Defendant Sotheby's provides a range of services from valuation of art to the financing of art acquisitions and collateral loans through Sotheby's Financial Services Inc.   It performs over 600 auctions annually and performs numerous appraisals of art.

9.     At all relevant times in this action, Sotheby's and Sotheby's Financial Services acted in concert and under the same control and each participated in the valuation and collateral art loan process.

10.     The Defendants Sotheby's and Sotheby's Financial Services Inc. shall be referred hereinafter referred to individually in their own name and/or collectively as "Sotheby's."

V.     **Facts**

11.     On or about August 25, 2022, Plaintiff Croce applied for a $ 3 million art collateral loan from Sotheby's based on the Old Master's paintings and one of the drawings in his personal collection.  Prior to his application, Croce had a business relationship with Sotheby's.   In 2019, Sotheby's performed a valuation of Plaintiff Croce's *drawings* only for insurance replacement value, i.e., the valuations an insurer would rely on for loss.   No paintings were evaluated for the 2019 appraisal.

12.     He executed a valuation agreement in 2019 that concerns his *drawings* solely and not the paintings on which his claims in this action are based—2022 and 2023 valuations of paintings.

13.     Plaintiff's claims arise from the 2022 and 2023 valuations.

14.     Plaintiff Croce sought the loan from Sotheby's and Sotheby's Financial Services

Inc. for their reputation for integrity and expertise in the art market valuations and collateral lending.   Sotheby's is the world's oldest and largest internationally recognized fine art and luxury auctioneer.   Its Old Masters department "has led the industry as the dominant market force for a generation" and has "seen particular success" in sale of Old Master artwork.  *See* Original Compl., ECF # 1-1, Exhibit A, p.1, Franklin County Common Pleas Court Exhibit to Motion to Sell Private Property ("June 13, 2023 Franklin County Valuation Document" or "June 2023 valuation").

15.    Sotheby's represents on its website and publications and in documents provided to Croce that art collateral loans involve the following terms:  (1) loan amount is 50%  loan to value (LTV), (2) the loan process takes at least 30 days, (3) the appraisals will be completed in a short period of time, (4) that it has expertise in provenance and valuation of Old Master works of art and will adhere to professional appraisal standards of care when providing appraisals and loan services, (5) that it will adhere to ethical standards of conduct and (6) that it will <u>not</u> engage in a conflict of interest with its private clients.

16.    Sotheby's represents on its website to Croce and other consumers that "[o]ur scholarship and expertise in the art market allows us to offer the highest level of service with the strictest policy of confidentiality for private collections . . ."  See Exhibit B.

17.    Sotheby's and Sotheby's Financial Services also represents to Croce and other consumers concerning the art loan issued by Sotheby's and Sotheby's Financial Services that "[w]ith our experience, in house resources, and underwriting focused on art alone, you can often access funds within a matter of days.   Each consultation is confidential . . . "  See Exhibit B.

18.   The misrepresentations were made to Croce on Sotheby's website and in the 2022 loan process to induce him to pursue valuation by Sotheby's and a collateral loan by Sotheby's

Financial Services.

19.     Croce reasonably relied on these representations for the purpose of obtaining an accurate valuation from Sotheby's based on his art work and a collateral loan from Sotheby's Financial Services Inc.   He also relied on their reputation and representations to determine the true and accurate value of his art work.   Croce, however, never received the art loan.

20.     In the summer of 2022, Croce provided an initial group of Old Master paintings art work and one drawing to support a valuation of $ 6 million or more to obtain a 50% LTV loan of $ 3 million.

21.     Croce stated at the outset of the collateral loan process that he was seeking a $ 3 million loan within 30 or less days and he provided an initial list of works supporting this loan amount.

22.     Given Sotheby's expertise in Old Master paintings work and its representations to him, Croce and Sotheby's agreed to go forward with the loan process, since the valuation estimates are critical in obtaining the loan and encumbering the art as collateral.

23.     Croce's Old Master collection is well known by scholars and documented by well-respected publications on his art work.   Accordingly, the valuation should have taken 30 or less days to complete, as there was already ample information available to Sotheby's.

24.     Croce emphasized in statements to Sotheby's and Sotheby's Financial Services, relying their representations, that he expected the process to take 30 days or less as he needed the funds quickly.   Croce provided Sotheby's with ample information and documents to support a valuation in excess of $ 6 million within the first 30 days of the loan process.

25.     Sotheby's knew or should have known the works collected for evaluation by them would support an initial valuation in excess of $ 6 million, as many of the works collected by it

for evaluation have been vetted by some of world's foremost art experts and by scholarly publications confirming the value and provenance of his art work. Croce provided art expert and scholarly documents to Sotheby's.

26.     By end of September 2022, the valuation and loan process had not been completed as represented by Sotheby's and Sotheby's Financial Services.

27.     In October 2022, Sotheby's issued an appraisal of works owned by Croce for a total valuation of $2,510,000, based on the works listed in Schedule A of the valuation statement ("October 2022 valuation"). *See* Exhibit C, October 2022 Valuation, ECF. #1-2 Original Compl. Sotheby's submitted the appraisal statement to Croce. Based on the Schedule A valuation of the listed works, Sotheby's and Sotheby's Financial Services Inc. offered a collateral loan of $ 1,255,000. The only remaining work to be completed in 30 days or less was confirm attribution, which Sotheby's already knew from its art market expertise and prior dealings with Croce.

28.     The October 2022 valuation provides that terms are for information purposes only as to the financial terms, but not valuation. Valuation is a process involving research regarding the provenance and authenticity of the art work and is often completed in a short time period. Sotheby's research, however, was substantially longer than the 30 days represented by Sotheby's; it went on for over 8 months. Sotheby's was familiar with Croce's collection from prior business dealings, and scholarly publications regarding his art work. The valuation process, therefore, should have taken 30 days or less time.

29.     The low-high estimates in the October 2022 valuation are based on Sotheby's best judgment subject to further due diligence regarding art work's provenance and authenticity.

30.     The October 2022 valuation listed two works in Schedule B of the valuation statement but provided no valuation. *See* Exhibit C, Schedule B, ECF # 6-2. The two works in

Schedule B are the Anthony van Dyck's *Portrait of Giorgio Centurione* and Orazio Gentileschi's *Judith and Her Maidservant*. Sotheby's was supposed to assess the value of both of these works. Sotheby's failed to perform adequate due diligence to assess the value. This failure is striking because Gentileschi's *Judith and Her Maidservant* has an estimated value of up to $10 million.

31.     Further, as to the Van Dyck painting, Sotheby's Christopher Apostle, Senior Vice President, Head of Department, stated that he believed it was not by Van Dyck but failed to provide any expert opinion or evidence contradicting its attribution.

32.     The October 2022 valuation is riddled with gross errors and mistakes.

33.     The portrait of *Man With a Turban by Guercino* has been validated by Dennis Mahon, the world's foremost expert on Guercino. Sotheby's gave it a value of $300,000 to $500,000 in their October 2022 valuation statement, but very recently Sotheby's sold an inferior, smaller Guercino for well over $1 million.

34.     In regard to the single drawing, Sotheby's October 2022 valuation of Croce's *Modello by Guercino* states a valuation range of $10,000 (low) to $15,000 (high). This valuation is fraudulent or at least grossly negligent. This is shown by example: a 2019 valuation by Sotheby's gave the *Modello of Guercino* a $250,000 replacement value—a value relied on by insurers and Croce to replace the art in the event of loss. *See* Exhibit D, Valuation Statement by Sotheby's dated April 16, 2019. Sotheby's therefore had in its possession a valuation showing its October 2022 valuation of *Modello of Guercino* was false.

35.     Indeed, prior to the October 2022 valuation, Croce gave Apostle an original opinion letter from Dennis Mahon, the world's most prominent *Guercino* expert. The original letter was given to Apostle when he came to Croce's home over 6 years ago with a Philadelphia banker. The original letter was never returned by Apostle. Thus, Apostle had in his possession

the original Mahon letter prior to the October 2022 valuation confirming the value of the work and the fact that the value is well in excess of the amount stated in Schedule A. *See* Exh. C. ECF # 1-2.

36. Croce again provided Sotheby's with a "copy of the Mahon letter" at the time of initial valuation in October 2022. Sotheby's knew or should have known prior to the October 2022 valuation that this valuation was grossly inaccurate.

37. Croce also provided the *Revised and Expanded Catalogue Raisonne of the Paintings of Guercino* by Nicholas Turner, a highly regarded expert on Guercino paintings. Turner's inclusion of Croce's drawing in the catalogue *raisonne* of paintings by Guercino is significant as to the provenance and value of art work. Sotheby's had Turner's *Guercino Catalogue Raisonne* in its possession during the art loan valuation process. Turner considered this work extraordinary, a fact Sotheby's was aware of, given its expertise in Old Master art work.

38. These sources are standard references relied on by professional appraisers of art and are dispositive as to the value and provenance of artwork. Sotheby's failed to rely on these dispositive references for the October 2022 valuation by unreasonably delaying the process and falsely stating they were doing research. Sotheby's alleged "research" was a sham: force Croce to accept a loan based on 20-30% LTV of his art work rather the promised 50% LTV. Sotheby's and Sotheby's Financial Services, acting in concert, knew Croce needed the loan due to the judgment creditor's legal actions.

39. In another instance of gross negligence or fraud, Sotheby's grossly undervalued the work entitled "*Double Portrait of Virginia da Vezzo Vouet Holding a Painting by Simon Vouet,*" by Simon Vouet. The work is very important and auction prices for works by Vouet

have sold for significantly higher prices than Sotheby's October 2022 valuation.

40.     In addition, Sotheby's further grossly undervalued Giovanni Francesco Barbieri, II Guercino work entitled "Modello for the Offering of Abigail," with valuations ranging from $10,000 to $15,000 in Schedule A of its October 2022 valuation.    Sotheby's previously valued this work in 2019 at $250,000.    The variation in value from $10,000/$15,000 to $250,000 is either gross negligence or, in the alternative, is fraudulent misconduct.

41.     Plaintiff Croce reasonably relied on Sotheby's representations of expertise and professionalism to accurately appraise the art work  to generate true valuations and a loan based on them.

42.      Guercino's "Modello for the Offering of Abigail was valued by two of the foremost Guercino experts in the world at $1-2 million dollars.   Sotheby's valuations of $10,000 to $15,000 (October 2022) and $250,000 (June 2023) is certainly less than the $1-2 million valuation given by the two experts, whose qualifications are superior to staff at Sotheby's.

43.     Similarly, Simon Vouet's "*Saint Francis Receiving The Stigmata"* is also grossly undervalued by Sotheby's.    In October 2022, Sotheby's estimated the value at $600,000 to $800,000. (See Exh. B).    Less than a year later, in June 2023, Sotheby's valued this work from $300,000 to $400,000 (see Exh. A, ECF # 1-1).

44.     For the aforementioned art work, the valuations by Sotheby's in 2022 and 2023 show very wide variation in value.  The 2023 valuation range differs by $200,000 at low end of the range and by  $400,000 on the high end of the range when compared to the October 2022 valuation.    The gross variation in valuation of this art work were published to the Franklin County Common Pleas Court by Sotheby's and the judgment creditor.

45.     More to the point, scholarly publication by two of foremost experts on Vouet's

"*Saint Francis Receiving The Stigmata,*" indicated that this work was commissioned by Paolo Alaeoni, an assistant to Pope for Chapel of St. Lorenzo in Lucina, a major commission in the 17th Century Rome has valued at $700,000 to $900,000.

46.     In another instance of gross negligence and/or intentional misconduct, Sotheby's estimated Simon Vouet's "*Double Portrait of Virginia Da Vezzo Vouet Holding A Painting of Simon Vouet*" in October 2022 at $500,000 to $700,000, but less than a year later valued the same artwork at only $400,000 to $700,000. This is a variation of over $200,000 in a short time period.

47.     There is no business or professional rationale for such wide variations, in a short period of time, by the same appraiser, Sotheby's.

48.     When challenged by Croce as to the reason for the unreasonably low valuations, Sotheby's provided no credible evidence for the low valuations other than the assertion that a lending valuation may be less than the market price. Lending valuation does not account for widely divergent valuations produced by Sotheby's.

49.     Sotheby's and Sotheby's Financial Services failed to disclose to Croce the distinction between lending and market valuation and that its collateral loans are not truly 40-60 % or 50% (promised to Croce) LTV loans, since the valuation range (low to high) produced by Sotheby's is significantly below the "true" low and high valuations of Croce's art work. The purported lending valuation is a sham designed to acquire control of art work at less than 40-60 % LTV. Sotheby's and Sotheby's Financial Services gave Croce false valuations ranging from 10% to 30% LTV for Croce's artwork.

50.     Sotheby's and Sotheby's lending valuation deceptive and result in prospective borrowers receiving less than the 40-60 % LTV. The consequence is that prospective and actual

borrowers' collateral (i.e., artwork) is encumbered for a lower loan amount than advertised to public and as represented by Sotheby's and Sotheby's Financial Services Inc. to Croce and public.

51.     Although Croce strongly disagreed with the 2022 valuation provided by Sotheby's based on Sotheby's history of sales of particular artist in his collection and scholarly publications, the parties agreed continue evaluate additional works owned by Croce in Columbus, Ohio to reach at least the $ 6 million valuation.   The focus of the continued valuation by Sotheby's and Croce concerned artwork's attribution.

52.     After the October 2022 valuation, the parties agreed that Sotheby's representatives would come to Columbus, Ohio to perform a further evaluation of Croce's collection in November 2022.   The further evaluation was designed to choose additional paintings to bring the evaluation of Sotheby's over the six (6) million valuation mark.

53.     Sotheby's Senior Vice President Christopher Apostle ("Apostle") is the Sotheby's person who visited Croce in Columbus, Ohio.   Apostle, not Croce, selected the artwork necessary to reach a $ 6 million valuation.   In reliance on this promise, Croce provided full access to more than 250 paintings in his collection in Columbus, Ohio, attribution and provenance resources and relied on Sotheby's expertise to select and appraise the artwork to reach the $ 6 million valuation.

54.     In November 2022, Apostle visited Croce's collection in Columbus, Ohio and conducted an appraisal of the additional works owned by Croce.  The physical visit, according to Sotheby's, is simply to conduct a physical inspection of the art works.    Neither Sotheby's, nor Sotheby's Financial Services, communicated to Croce that works were not in acceptable physical condition.

55.     Despite evaluating well over 250 works in Croce's collection during his November 2022  Columbus, Ohio visit, Sotheby's Apostle selected only the *Costabli Schedoni* by Bartolomeo Schedoni implying it had a valuation of $3.5 million.   Therefore, Sotheby's Apostle knew or should have known that the piece supported a valuation by itself of at least $ 3.5 million.

56.     Croce relied on Sotheby's reputation and purported adherence to professional and ethical appraisal standards when Apostle selected the *Schedoni* to achieve a $ 6 million valuation.

57.     Relying on this representation and Sotheby's reputation, Croce decided not to pursue other options for financing a collateral art loan from his collection.  Indeed, in light of the 2023 publication, he has been injured because, in all likelihood, Croce will not be able to sale the art work based on its "true" value, or use it obtain a collateral loan consistent with the "true" value of the art.   This has and will result in loss of millions of dollars of value (Croce's true value of potential collateral art valued in excess of $6,000,000, while Sotheby's values are less than $3,000,000).

58.     After the Columbus, Ohio valuation visit, Apostle promised Croce that the loan process would be completed soon.

59.     In addition, Sotheby's Financial Services Inc.'s Global Head of Lending Scott Milleisen likewise promised the loan would be completed shortly.

60.     The loan was not completed shortly after the November 2022 visit.

61.     Instead, Sotheby's continued to unreasonably delay the loan process despite demands by Croce and the supply of documents and information confirming the value and provenance of his artwork.

62.    Croce reasonably believes that the *Schedoni* work was valued at $ 3 to 3.5 million in value, matching the selection of this painting by Apostle out of over 250 paintings.   The *Schedoni* work, along with initial valuation, would support a valuation in excess of $ 6 million and accordingly allow Croce to receive a $ 3 million collateral loan.   The work was from the *Costabilli Schedoni* collection.

63.    He provided Sotheby's with two publications produced by two of the world's most preeminent scholars on *Schedoni*.

64.    In April 2023, despite two expert publications confirming the attribution of Croce's *Schedoni*, Sotheby's told Croce that Trinity Fine Art of London had the original Schedoni in the *Costabili Collection* and that Croce's Schedoni was worth substantially less.

65.    Sotheby's devaluation of Croce's *Schedoni* was wrongful because Sotheby's failed to follow established practices for authentication and valuation.   It should have consulted Professor Emilio Negro, the foremost expert on *Schedoni* who stated that the Trinity Fine Art *Schedoni* is a copy of the *Schedoni* painting owned by Croce.    Sotheby's did not consult Professor Negro, a clear violation of appraisal standards and practice in the art world.

66.    Sotheby's reliance on a gallery curator's bare assertion does not comport with established standards of appraisal.

67.    Sotheby's unsupported conclusion that Croce's *Schedoni* is not the *Constabili Schedoni* is gross negligence because Croce provided an email from Professor Negro over a year before his art loan application stating that the Trinity Fine Art *Schedoni* is a copy of the Croce's painting done by a student of *Schedoni*.   Croce's *Schedoni* is the original *Constabili Schedoni*. Sotheby's disregarded this key evidence and devalued Croce's *Schedoni*.   Sotheby's never produced any reference or evidence showing the art work was not authentic and would not

support a $3.5 million valuation, except for the bare assertion of a gallery manager, who is not professional appraiser.

68.     More to the point, Art appraisals generally focus on the history of a work and chain of title.  No evidence was provided or cited by Sotheby's indicating Croce's *Schedoni* does not comport with established evidence confirming its inclusion in the *Costabili collection*.

69.     By January 2023, having waited for over 2 months since Apostle's visit in Columbus, Ohio, Croce again demanded Sotheby's complete the loan process.

70.     Sotheby's responded that additional research must be conducted despite having over 6 months to do so.  No additional research was needed because Sotheby's was provided with ample, credible information by Croce, and should have consulted the experts referenced by Croce and those experts available to them.   Sotheby's has the resources to comply with the 30 day guarantee to complete the art loan process.  Despite more than ample information to complete the valuations and loan process, Sotheby's continued to unreasonably delay the valuation and loan process.

71.     Indeed, based upon information and belief, as well as email exchanges by and between Sotheby's and Croce,  Sotheby's had unqualified, in-house staff perform the valuations and did not consult with well-known experts as to the value and provenance of his art work, in violation of professional appraisal standards and practice.

72.     In April 2023, Sotheby's again stated it needed more time to evaluate Croce's art work even though (1) Croce had provided ample evidence to Sotheby's supporting the value and provenance of Croce's artwork very early in the loan process, (2) that it had more than ample time to determine the valuation, and (3) had failed to complete the art work evaluation in 30 days as represented to Croce and the public.

73. During the more than eight (8) month valuation process, Croce had multiple discussions with Sotheby's and provided strong evidence establishing value and provenance and even discussed such evidence during Apostle's visit to Croce' Columbus, Ohio home.

74. For its 2023 valuation, Sotheby's stated in an affidavit submitted in the writ of execution proceedings that their "knowledge of Croce's Old Masters Art Collection" arises from their role as appraiser and as lender in the recent art collateral loan deal with Croce. Sotheby's had direct access to Plaintiff Croce's collection and used that access to prepare and disseminate the false and erroneous valuations (i.e., 2023 valuations are erroneous).

75. On or before June 2023, Sotheby's agreed to participate in the Judgment creditor's auction of Croce's art work which it had previously evaluated and promised to keep strictly confidential. Sotheby's never requested Croce's consent to use the strictly confidential valuation on behalf of Croce's judgment creditor in a public legal process. Sotheby's confirmed in an affidavit from their legal counsel that they had evaluated Croce's art work and this qualified them to serve as valuator for the judgment debtor sale of his property. Sotheby's participation in the judgment debtor sale was *derived* from the confidential, private client valuations in 2022 and 2023 (appraisal process from October 2023 to Sotheby's apparent termination when it agreed to serve as judgment creditor valuator and liquidator) and pre-2022 business dealings with Sotheby's, i.e., Sotheby's visited Croce home with a Columbus banker, prior to 2022.

76. Sotheby's consented to the filing of the valuation document on dealings and information provided by Croce. *See* Exhibit A, 2023 Franklin County Common Pleas Court Exhibit to Motion to Sell Private Property ("Franklin County Valuation Document"). The valuation document is based on confidential information acquired by Sotheby's from their

November 2022 visit to Croce's home Columbus, Ohio and from discussions by and between Sotheby's and Croce regarding the value and provenance of his art work, as well as documents provided to Sotheby's from August 2022 to April 2023.

77.     No one from Sotheby's informed Croce that the art loan process was terminated. Croce certainly believed the process was ongoing until he was informed of Sotheby's retention as valuator and seller in the Franklin County Common Pleas judgment process.  Sotheby's knew or should have known Croce would *not* approve of their retention as judgment debtor auctioneer and valuator, especially since the 2023 valuations are based on information and evidence derived from the private client appraisal and loan application.   Sotheby's action constitute a very serious conflict of interest and breach of confidentiality.

78.     Sotheby's led Croce to believe the process was ongoing and they were discussing the provenance of the *Costabili Schedoni as late as April 2023.*  He waiting for more discussion about attribution by Sotheby's in June 2023.

79.     More to the point, Sotheby's agreed to the "sale" of certain art work in the judgment sale which it passed over and apparently would not use to support the art collateral loan.

80.     Sotheby's actions are clearly contrary to their representations to the public and to Croce himself that their dealings with prospective and actual loan clients are private, confidential matters.   Sotheby's deceitful conduct is inconsistent with its representations and violates the trust of art collectors, such as Croce, who believe their dealings with Sotheby's are private.

81.     Croce reasonably expected that Sotheby's would keep his artwork, the valuations, and provenance documents strictly confidential.   No consent or permission was given to Sotheby's by Croce to publish the value of his art work in a public court proceedings, especially

where Sotheby's practice and custom is maintain the strictest confidentiality, *see* 2019 valuation agreement, ("Valuation Agreement between Sotheby's and Carlo Croce" requires Croce's consent to disclose private information about his collection).  (See ECF # 1-3, 2019 Valuation Agreement); and Sotheby's website represents strict confidentiality.   Although the  2019 valuation agreement's provisions allow Sotheby's to produce the confidential valuation information, that Agreement has no application to this case (2019 valuation concerned only drawings).   The 2019 Agreement, as a matter of business practice and the website representations, caused Croce to rely to his detriment, i.e., damaged products, and to justifiably believe that the 2022 appraisal and loan process would not  be disclosed to general public.  The subpoena language in 2019 Agreement has no application because the 2019 agreement governs his drawings only.    Sotheby's is subject to appraiser ethics rules and can only disclose by consent of an appraisal client.

82.    Despite providing Sotheby's with ample information and documents establishing the art work's value, Sotheby's negligently published, without consent, false and erroneous valuations in the June 2023 report filed with The Franklin County Common Pleas Court.

83.    The Franklin County Valuation Document, Exhibit A, ECF # 1-1, is a public record that can be accessed by anyone.   Upon information and belief, the Judgment Debtor Creditor in the writ of execution proceedings submitted the Franklin County Valuation Document with the consent and approval of Sotheby's, or, in the alternative, Sotheby's knew or should have known the valuations contained in the June 13, 2023 document would be made public and therefore ratified this conduct.

84.    The publication of Sotheby's erroneous valuation has disparaged Croce's art collection.  Given Sotheby's reputation and domination of the art market, Croce's artwork will,

in all likelihood, not sell for the art's true value because Sotheby's is a market maker in art sale world and its judgments are relied on by investors, banks, government agencies and private buyers.

85.     The negligent and/or intentionally false valuations published by Sotheby's has caused significant damage and interfered with his ability to sell or use the artwork as collateral for another loan based on the art's true value.

86.     Sotheby's inherent conflict of interest as lender, valuator, and judgment creditor liquidator is clearly contrary to good faith and fair dealing and constitutes a conflict of interest.

87.     Sotheby's has a duty as a lender to be to truthful in its lending practices, to adhere to professional appraiser standards and practices; a duty to act in good faith, as represented in advertisements and public statements, to Croce and other borrower/sellers; and a duty to maintain client confidentiality.   Sotheby's breached these duties as set forth in this First Amended Complaint.

88.      Sotheby's has taken advantage of its unique position with Croce and intends to profit by auctioning his artwork in connection the Judgement Debtor Sale of his art work.

89.     Sotheby's was motivated by malice by taking strictly confidential valuations, using them to generate the June 2023 valuation,  actively participating in the judgment debtor proceedings, and by prospectively more from the judgment sale (commissions and fees) than from the art loan.  The collateral loan is a one-year loan, which Sotheby's earns modest interest and fees from; given Croce's creditor claims, Sotheby's and Sotheby's Financial Services knew or should have known Croce could not refinance the loan and thus would be subject to Sotheby's Financial Services' loan default collateral liquidation.  The sale of the art work at auction or sale at Sotheby's will generate significantly more commission and fee revenue for Sotheby's.

90.     As a result of Sotheby's and Sotheby's Financial Services' actions, Croce's collection has been unreasonably devalued and such devaluation is now a matter of public record.

91.     Based on good faith business practices, the valuation and documentation provided by Croce should have remained confidential and should not have been used to Croce's disadvantage and the benefit of Sotheby's (as auctioneer fees) and the Judgment credit's advantage (collection of a judgement debt).

92.     Sotheby's enjoys a reputation in the art market for integrity and fair dealing. Its actions against Croce do not constitute good faith and fair dealing. Croce, like other private clients of Sotheby's, has an expectation of privacy and confidentiality and certainly do not expect that information, learned during a private client transaction, will be used publicly against them.

93.     As lender, Sotheby's Financial Services, acting in concert with Sotheby's appraisal service, is in the business of making collateral loans on art and has an incentive to devalue a client's artwork to reduce its risk and make such loans more attractive to investors in art loan or asset portfolios.

94.     Business media and other sources indicate that Sotheby's is also engaged in securitization of its art loan portfolio (devalued art work makes securitization more attractive to investors).

95.     Sotheby's does not disclose to its prospective clients its conflicting roles as lender, appraiser, and issuer/supplier of art loans for investor securities. Croce was not informed of these conflicting roles and would never have consented to Sotheby's serving as a lender, appraiser, and judgement debtor sale auctioneer.

96.    Sotheby's knew or should have known that its valuations are relied on by Croce and the art public and that valuation are perceived as more than a mere "estimate" given Sotheby's alleged expertise, experience, and resources.

97.    Art appraisal estimates are relied on by Internal Revenue Service, insurance companies, banks, private collectors, traders, and others who rely on appraisals to ascertain the value of a piece of art work for specific purposes.    Sotheby's gross negligence appraisals and consent to disseminate to the public a private client valuation has and will continue to adversely affect Croce's art work.

98.    All of wrongful conduct against Croce was motivated by malice and/or recklessness by Defendants.

**FIRST CAUSE OF ACTION**
**(Product Disparagement)**

99.    Croce avers the forgoing allegations as if fully restated herein.

100.    Defendants made false and erroneous statements and conclusions about the value and provenance of Croce's works of art.  The products disparaged are his paintings as contained in Sotheby's October 2022 and June 2023 valuation reports.

101.    Defendants owed duties to Croce as follows: (1) Sotheby's owed a duty to produce a fair and accurate valuation of his art work as an appraiser and (2) Sotheby's Financial Services and Sotheby's owed a duty to give him an art loan based on a true and accurate valuation of his art work based Sotheby's 50% LTV representation.    That duty extended to the October 2022 valuation and June 2023 valuation, both of which arise from information and evidence provided by Croce (documents, access to collection in Columbus, Ohio) Sotheby's. *See* Exhibit D, Sotheby's affidavit.   Sotheby's and Sotheby's Financial Services, acting in

concert, at all relevant times, are under essentially the same management, or approved or contributed to the misconduct and accordingly are jointly and severally liable.

102.    Sotheby's and Sotheby's Financial Services knew or should have known its statements and conclusions were <u>not</u> true regarding the valuation and attribution regarding Croce's paintings and a single drawing.

103.    Sotheby's published the false and erroneous statements and conclusions to the general public based, in substantial part, on information, discussions and documents provide by Croce to Sotheby's and Sotheby's Financial Services during the art loan process in the 2023 valuation report.  The 2023 valuation report is a public record in the Franklin County Common Pleas Court and has disparaged the value of his artwork.  *See* Exhibit A, ECF # 1-1.    The 2023 report was co-prepared by and effectively filed by Sotheby's, which participated in and ratified the judgment creditor filings and valuations.

104.    Sotheby's own records conclusively demonstrate the October 2022 and June 2023 valuation are false and inaccurate valuations as Sotheby's itself has produced widely divergent valuations over a short period of time—2019 valuation of the single drawing and 2022 valuation and 2023 valuation of paintings and single drawing differ substantially.  *See* Exhibits A, B and C valuations.   Sotheby's actions demonstrate gross negligence and/or intentional misconduct as plead in this First Amended Complaint.

105.    Sotheby's publication was made with malice because (1) Sotheby's breached its representations of strict confidentiality when his private valuation was disclosed  to the public in the June 13, 2023 Franklin County Common Pleas Court valuation report, (2) Sotheby's acted with malice by publishing wrong valuations in the 2023 report, which it had prior knowledge are wrong, (3) Sotheby's and Sotheby's Financial Services deceived Croce into believing the loan

process was ongoing because Sotheby's was purportedly still researching attribution matters, (4) Sotheby's decision to serve as judgment creditor seller of Croce's art work based on valuations derived from his private client appraisal and loan application is both malicious and unethical, (5) Sotheby's and Sotheby's Financial Services maliciously deceived Croce because it knew the purported 50% LTV, based on false valuations, was substantially less than the 50 % LTV, and (6) Sotheby's had a financial incentive to pursue the sale of Croce's art work by auction because the sales commissions are more lucrative than the interest and fees earned on a collateral loan, especially where, as here, Croce needed the loan.

106.    The publication is not privileged because it was motivated by bad faith and malice as plead in this Amended Complaint and because it violates professional appraiser standards.

107.    As a result of Sotheby's wrongful  and malicious conduct, the value of the artwork cited in Exhibit A has been damaged as to the art work's value and attribution. Sotheby's valuation report, produced by the largest art market maker for Old Master works, will be relied on by the art buying world.   The art work actually have a value of at least $12 million, but Sotheby's overly low valuation in 2023 report of $2,260,000 to $3,260,000, has resulted in losses in excess of $ 8 million.

108.    In particular, the art work set forth in the June 13, 2023 valuations have been diminished in value by publication as a result of Sotheby's conduct.   The Guercio's *Man With Turban* (actual value is $ 1-2 million less Sotheby's valuation of $300,000 = $1.2 million loss), Bernardo Cavallino's *Healing Tobit* (actual value is $500,000 to $750,000 less Sotheby's $150,000 = $600,000 loss),  Giovanni Lanfranco's *Diana Playing With Three Children* (actual value is $750,000 to $ 1,000,000 less Sotheby's $150,000 = $ 600,000), The Master Of The Annunciation To The Shepherds' *Rest on the flight into Egypt* (actual value $2-3 million less

Sotheby's valuation of $200,000 resulting loss = $1.8 million), Jusepe De Ribera's *Madonna And Child* (actual value $500,000 to $750,000 less Sotheby's valuation $150,000= $350,000 loss), Virgina Da Vezzo's *Allegory Of Painting* (actual value $ 5-8 million less than Sotheby's $400,000 = $4.6 million loss), and Simon Vouet's *Saint Francis Receiving The Stigmata* (actual value is at least $ 2 million less Sotheby's valuation of $300,00 =loss of $ 1.7 million).

109.    In addition, Croce has suffered other special damages as follows:  (1) inability to obtain art loan based on the inaccurate valuations of the art work listed in Exhibits A and B, (2) inability to sell the art work to a private or museum buyer due to the adverse valuations prepared by Sotheby's, and (3) legal fees, costs and expenses incurred in pursuing this action against Sotheby's.

110.    Sotheby's valuations were made with knowledge of their falsity or with reckless disregard as to the true value and provenance of Croce's artwork and therefore are not privileged statements.

111.    As a direct and proximate result of Sotheby's negligence, Croce has suffered damages in an amount to be determined at trial, but in no event less than $25,000,000.

## SECOND CAUSE OF ACTION
### (Negligent Appraisal And Ethics Violations)

112.    Croce avers the forgoing allegations as if fully restated herein.

113.    Croce is avid collector and seller of his art works.

114.    Sotheby's performed October 2022 and June 2023 appraisals of Croce's paintings arising from his strictly confidential dealings with Sotheby's and Sotheby's Financial Services Inc.   Sotheby's, as the oldest and largest art auctioneer and appraiser, is a market maker and influences art valuations.  Sotheby's knew or should have known that customers, such as Croce, would rely on its appraisals and representations of privacy.   This claim does not arise from the

2019 appraisal of his drawings.

115.    Sotheby's, Sotheby's Financial Services and Croce entered into a strictly confidential valuation of his art work and collateral art loan offering.   The private dealings by Defendants with private clients, such as Croce, creates a special relationship insofar as the private client, believe, based on Defendants' representations that his dealing will be kept strictly confidential and not disclosed to the public by Sotheby's.   This is because the high end art world involves highly sensitive information about valuation and attribution and private client rely on such private, confidential representations made by Sotheby's.

116.    Sotheby's and Sotheby's Financial Services breached the following duties: (1) Sotheby represented the 2022 valuation would be based on its good faith judgment of his art work's value and a 50% LTV—not overly low valuations substantially less than 50% LTV, (2) Sotheby's Financial Services, acting in agreement with Sotheby's, created fictious 50% LTV valuations, when in reality the October 2022 valuation were much less than 50% LTV.   Croce reasonably relied on these negligent misrepresentations.  Sotheby's and Sotheby's Financial Services foresaw by that Croce would rely on appraisals to secure a collateral loan for 50% LTV loan and that such valuations would be strictly confidential value.

117.    Sotheby's breached this duty by negligently appraising Croce's Old Master art collection without performing adequate research, failing to obtain the input of recognized experts for each work, failure to rely in well-known publications regarding Croce's art work, and by disregarding the evidence provided by Croce establishing their value and provenance.

118.    The ASA Code of Ethics and industry custom provides that appraiser must provide accurate appraisals and maintain client confidentiality.   Sotheby's and Sotheby's Financial Services, acting collectively and individually, failed to provide accurate appraisals, and

breached confidentiality.

119.    Sotheby's has an ethical duty under the ASA Code of Ethics to maintain the

confidentiality of the valuations of Croce's art work.   ASA Code § 4.1 provides that an appraiser

has a duty to keep all appraisals confidential and ASA Code § 4.5 provides an appraiser cannot

serve as appraiser for two or more person (s) or entities with respect the same property without

written consent.   *See* American Society of Appraisers, Principles of Appraisal Practice and Code

of Ethics, Code Section 4.1 and 4.5 (2015).

120.    Similarly, the Uniform Standards of Professional Appraisal Practice (USPAP)

provides, in relevant part, "an appraiser must protect the confidential nature of the appraiser-

client relationship" and "must act in good faith with regard to the legitimate interests of the client

in the use of confidential information and in communication of assignment results."   In

addition, an appraiser "must not disclose confidential information to anyone other than the client

or parties specifically authorized by the client."   No permission was given by Croce to

Sotheby's to disclose valuations  derived from strictly confidential dealings with Croce for a

Judgment Creditor in a public proceeding.   This violates well-established ethical standards and

practices. *See* Uniform Standards of Professional Appraisal Practice (USPAP) Standards 1-4,

2020-2021.

121.    Sotheby's breached ASA Code  §§ 4.1 and 4.5 and USPAP standards by not

maintaining the confidentiality of Croce's art work, by not obtaining his consent to disclose the

appraisals, and by failing to obtain consent to represent both him and judgment creditor in

connection with the valuation of the same art work, the Croce collection.

122.    Sotheby's "private valuation" of Croce's Old Master paintings collection has been

disclosed to the public and is now devalued for the foreseeable future.

123.    As a direct and proximate result of Sotheby's negligence, Croce has suffered damages in an amount to be determined at trial, but in no event less than $25,000,000.

### THIRD CAUSE OF ACTION
### (Negligent Misrepresentation)

124.    Croce avers the forgoing allegations as if fully restated herein.

125.    Sotheby's represents that it has superior expertise in valuation and provenance of Old Master Art Work and that its valuation will be strictly confidential.

126.    A special relationship exists between Croce and Sotheby's based on Sotheby's (1) appraiser-client relationship, (2) appraiser-client requirement of strict confidentiality, (3) appraiser's professional duty to produce reliable estimates based on artwork's true value rather than deceptive 10% to 30% LTV valuations , (3) Sotheby's unfettered access to his private collection and attribution sources (Original Mahon letter), and (4) Sotheby's knowledge and obligation that Croce, as well as, the public, including private buyers, government agencies, insurance companies and others would rely on its estimates.

127.    Sotheby's had a duty to impart correction information to Croce regarding the value and provenance of his Old Master art collection, a duty to perform professional due diligence, and a duty to maintain confidentiality and not use confidential information to Croce's disadvantage.

128.    The valuation information given to Croce and public by Sotheby's is false.

129.    As the world's largest art auctioneer and appraiser, Croce reasonably relied on Sotheby's representations.

130.    The erroneous valuations are now public.  As a result, several of the Old Master art works listed in the October 2022 and June 2013 valuations have lost substantial value in excess of $ 10 million.

131.    As a direct and proximate result of Sotheby's negligence, Croce has suffered

damages in an amount to be determined at trial, but in no event will be less than $25,000,000.

### FOURTH CAUSE OF ACTION
### (Promissory Estoppel)

132.    Croce avers the forgoing allegations as if fully restated herein.

133.    Sotheby's and Sotheby's Financial Services collectively promised that (1) the

loan process would be completed in at least 30 days, (2) loan would be based on a true 50%

LTV, (3) that as an Old Master appraisals its valuations would be accurate, (4) that it would act

ethically regarding its clients (i.e., no conflict of interest) and (5) that private client dealings,

including appraisals and loans, would be strictly confidential.

134.    Sotheby's and Sotheby's Financial Services failed to keep these promises.  Croce

reasonably relied on these broken promises.

135.    The loan process was not completed in at least 30 days.  The reasons for delay by

Sotheby's are unreasonable because Sotheby's, as the world oldest and largest auctioneer and

appraiser, had ample information showing the value of Croce's collection already in its

possession and control.   Sotheby's breached its promise to perform prompt due diligence and its

promise of confidentiality regarding business dealings with Croce.

136.    The erroneous valuations contained in October 2022 and June 2023 devalued

Croce's collection and consequently any collateral loan based on such valuations is not truly a

50% LTV loan as promised by Sotheby's and as commonly understood by consumers such as

Croce.

137.    Sotheby's valuations were not accurate as promised.

138.    Sotheby's promises on its public website that it will "avoid conflicts of interest,

both real and perceived."

139.    Despite this promise, Sotheby's has engaged in multiple conflicts of interest. Sotheby's interest as appraiser, lender and judgment auctioneer/seller.  The duty of the appraiser is to provide a true and accurate appraisal of the true value of artwork, which did not occur. Sotheby's interest, as lender, is to the enhance the collateral security of its loans and make such loan attractive art loan portfolio investors.

140.    These roles are inherently in conflict as one interest is provide a private client with accurate, professional appraisals while the other is provide a hedge against risk of non-payment of the loan and to make loan attractive to art loan investors.   For Croce, Sotheby's valuations created an unreasonable "super hedge," much larger than the 50% LTV represented by Defendants.

141.    Sotheby's role as a judgment debtor valuator and auctioneer for Croce's judgment creditor is certainly a conflict of interest.  Sotheby's obtained the valuation information contained in Exhibit A in the course of a strictly confidential customer relationship.  It is now using such information, obtained confidentially, for the benefit of itself and Croce's judgment creditor.

142.    Croce reasonably relied to his detriment on the aforementioned promises and has suffered damages.

143.    An injustice will certainly occur if Sotheby's is allowed to continue the sale of the art work based on false and misleading valuations and by taking advantage of Croce.   His collections also will collaterally affected because the inaccurately valued art work, if sold at such prices, will adversely affect other works in his collection by the same artist.

144.    As a direct and proximate result of Croce's reliance, Croce has suffered damages in an amount to be determined at trial, but in no event will be less than $75,000.

28

## SIXTH CAUSE OF ACTION
### (Fraud and Intentional Misrepresentation)

145.    Croce avers the forgoing allegations as if fully restated herein.

146.    Sotheby's misrepresented the value of certain works in Croce's collection in its October 2022 valuation report in Columbus, Ohio and in the June 2023 valuation report submitted to Franklin County Common Pleas Court, Columbus, Ohio.

147.    Defendants defrauded Croce by valuing his paintings and one drawings substantially less than the 50% LTV, by delaying the attribution process for over 8 months, thereby forcing Croce to accept the unreasonable, predatory loan terms or sale the art work outright through Sotheby's auction and/or private sales.

148.    Sotheby's and Sotheby's Financial Services unreasonably delayed the art loan process because Croce's financial problems, and with the knowledge that if he did not accept the overly low valuations and loan, Sotheby's would make more money from auction commissions than from a loan.  Indeed, Defendants knew the art work would eventually be sold at auction due to (1) Croce's prospective default on art loan due to financial problems, or (2) the judgement creditor legal actions, started as early 2022 to collect payment for its judgment, would eventually result in the auction or private sale of the art work.

149.    The false and deceptive representations and conduct, as plead in this Complaint, has injured Croce and the art work.

150.    Croce's reliance was justified because he believed Sotheby's was reputable company and its representations that it will conduct valuation fairly and thatSotheby's Financial Services would not defraud by giving him an art loan based on 10-30%  LTV.

151.    The fraudulent misrepresentations were made in October 2022 valuation

document provided to Croce in Columbus, Ohio and in June 2023 document in the Franklin County Common Pleas court.   Additionally, the fraudulent representations (i.e., loan process 30 days or less, etc.)  were made to Croce via email and Sotheby's website and in person when Sotheby's corresponded with him and visited his collection in November 2022.   The 2022 valuations were more than mere "opinion," as they would form the basis for a loan.

152.    Croce did not receive the art loan due to Defendants fraudulent conduct, has loss the opportunity to obtain an art loan from another lender based on art work's true value , and has suffered the loss of selling his art work for its true market value now or in foreseeable future based on publication of the false valuations.

153.    As a direct and proximate result of Croce's reliance, he was damaged by fraudulent representations as alleged herein.

**SEVENTH CAUSE OF ACTION**
**(False Advertising Under The Lanham Act (15 USC 1125))**

154.    Croce avers the forgoing allegations as if fully restated herein.

155.    The Lanham Act, 15 USC § 1125, prohibits false or misleading descriptions of fact in commercial advertising or promotion. To establish a false advertising claim under the Lanham Act, a plaintiff generally must prove five elements: (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement.

156.    Sotheby's made false statements in advertising its loan terms and art valuation services and further published false statement of fact about its product, namely false advertising

claim of loan-to-value requirements.

157.    These statements were deceptive and materially influenced Croce's decision to seek a loan from Sotheby's, breached its strict confidentiality representation, and produced valuations, deceptively based on 10-30% LTV rather than the represented 50% LTV.

158.    Sotheby's caused these false statements to enter interstate commerce through their website, publications, and documents provided to Croce and other consumers across state and national boundaries.

159.    This statement deceived or had the tendency to deceive a substantial segment of its audience.

160.    The deception is material in that it is likely to influence the purchasing decision of consumers.

161.    Sotheby's caused these false statements to enter interstate commerce through their website, publications, and documents provided to Croce and other consumers across state and national boundaries.

162.    The defendant further published false statements about the value of certain works in Croce's collection in its June 2023 valuation report submitted to Franklin County Common Pleas Court.

163.    As a direct and proximate result of the Sotheby's actions, the Croce has been injured and/or is likely to be injured including, but not limited to, the undervaluation of his art collection, inability to obtain the expected loan amount, damage to his collection's public perception, and loss of potential opportunities for alternative financing.

164.    As a further result of the Sotheby's actions, Croce suffered damages, including devaluation of his art collection and the reputation of the Croce collection.

## EIGHTH CAUSE OF ACTION
### (Misrepresentation of Art Collection Valuation)

165.    Croce avers the forgoing allegations as if fully restated herein.

166.    Sotheby's, falsely represented its expertise and reliability in the valuation of fine art, specifically Old Master artworks, which is a violation under the Lanham Act. Sotheby's advertised its alleged superior ability to accurately appraise and value such artworks.

167.    In reliance on these representations, the Croce engaged Sotheby's for the valuation of his art collection of some of his paintings.  Sotheby's, however, grossly undervalued the Plaintiff's collection, including key artworks with significant historical and monetary value.

168.    Notable examples of such misrepresentation include the Guercino works and failure to estimate the  Gentileschi's "Judith and Her Maidservant" in over 8 months.  Sotheby's was unable to attribute and estimate these works is a breach of its promise of a short, 30 day or less valuation.  These valuations were inconsistent with market values and Sotheby's previous appraisals of similar works. Recently, Sotheby's sold a Gentileschi for over $30 million.

169.    The false valuation provided by Sotheby's was used in a manner that disparaged the Croce's collection and adversely affected his ability to use the art as collateral for loans in future or to sale them for their true market value.

170.    This misrepresentation has caused significant reputational and financial harm to the Plaintiff.

171.    Sotheby's position as both a valuator and a potential auctioneer for the same art collection presents a conflict of interest, further undermining the integrity of the valuation provided to the Plaintiff.

172.    All exhibits are incorporated by reference into the First Amended Complaint.

173.    As a direct and proximate result of the Sotheby's misrepresentation of the

valuation of the Croce's art collection, the Croce has suffered and continues to suffer damages, including, but not limited to,  product damage, financial loss, reputational harm, and emotional distress.

WHEREFORE, Plaintiff Croce demands judgment against Defendants as follows:

(a)     an order enjoining Defendant from continuing its deceptive practices;

(b)     a declaratory judgment regarding Defendant's conflict of interest and breach of trust;

(c)     money damages in an amount to be proven at trial, but expected to exceed the jurisdictional amount;

(d)     reasonable attorney's fees;

(e)     costs;

(f)     punitive damages;

(g)     any such further compensatory relief which he is entitled to.

Respectfully Submitted,

/s/ William W. Patmon III
William W. Patmon III (0062204)
The Patmon Law Firm LLC
4200 Regent Street Suite 200
Columbus, Ohio 43219
Phone: (614) 944-5786
Fax: (614) 448-4393
wpatmon@patmonlaw.com
*Attorney for Plaintiff Carlo Croce*

## **<u>JURY DEMAND</u>**

Plaintiff demands a trial by jury by maximum number of jurors allowed by law on all issues so triable.

<u>/s/ William W. Patmon III</u>



Sotheby's 苏富比

AUCTIONS    BUY NOW    PRIVATE SALES    SELL    Search Sotheby's    🔍  🛍

Exhibit B

About Us  >  Services

# Valuations

OVERVIEW    |    CONTACTS    |    RELATED STORIES

## Overview

Sotheby's Valuations Department provides bespoke inventories and appraisals which are recognised around the world by government agencies, financial institutions and international insurance brokers, including Her Majesty's Revenue and Customs in the United Kingdom and the Internal Revenue Service in the United States.

We tailor each valuation around the collector and the collection, working with single items through to large multi-category collections. Our scholarship and expertise in the art market allows us to offer the highest level of service with the strictest policy of confidentiality for private collections, museums, fiduciaries, and corporations.

Working remotely and in the office, we continue to provide valuations in a digital format. Our team is available to produce draft valuation documents on receipt of detailed information and high-resolution images and provide updated figures for collections previously valued by Sotheby's. With all our specialist and production teams working remotely and in the office, we can initiate the valuation process with in-person and virtualinspections.

Our comprehensive valuation services, as outlined above, also include:

- Estimates for Sale (Private Treaty and Auction)
- Valuations for Collection Management Purposes
- Valuations for Loan Collateral (depending on jurisdiction)
- Taxation Valuations (Inheritance, Estate, Donation, Gift and Capital Gains Tax)
- Valuations for Family Division
- Valuations for Insurance Purposes

If you wish to sell with Sotheby's please access our free and easy-to-use online valuation service. You only need to provide some information and upload images from your phone or laptop. Our specialists will review your submission and issue preliminary estimates for items that can be included in our sales. Click here to get started!

To learn more about all our valuation services and how we can assist you, please contact us directly by phone or by email.

READ LESS

### Related Links

Fiduciary Client Group

Upcoming Auctions

### Contact Us

LONDON:      +44 20 7293 6422
             valuations@sothebys.com
NEW YORK:    +1 212 894 1297
             valuationsnewyork@sothebys.com

## Contacts

**NEW YORK**    LONDON    PARIS



**Mari-Claudia Jiménez**

Chairman, President, Americas | Head of Global Business Development
New York

VIEW BIO



**Catherine Foster Ellison**

Senior Vice President, Head of Business Development, Americas
New York

VIEW BIO



**Danielle Isaacs**

Vice President, Head of Department, Valuations
New York

VIEW BIO



**Grace Kortlander**

Assistant Vice President, Director of Operations
New York

VIEW BIO

## Related Stories

### Follow Us    🐦    f    📷    ▶ YouTube    🌐

SUPPORT
Help Center
Locations
Download the App

CORPORATE
Press
Privacy Policy
Corporate Governance
Careers

MORE...
Security
Terms & Conditions
Conditions of Business
Modern Slavery Statement
Do Not Sell My Personal Information

(C) 2024 Sotheby's

All artclock's beverage tanks in New York are made solely by Sotheby's



Need Help

## Sotheby's

AUCTIONS    BUY NOW    PRIVATE SALES    SELL    🔍 Search Sotheby's    🛒



# Art Financing with Sotheby's Financial Services

## Want to Use Art as Collateral?

Sotheby's Financial Services is the world's *only* full-service art financing company. With almost three decades of experience in art lending, $5.5 billion in loans made to date, and an in-depth knowledge of the international art market, we can provide a timely and accurate valuation of your collection, then offer you a tailor-made financing solution.

We tailor each loan to fit your personal circumstances and ensure that each transaction is as streamlined and worry-free as possible. We offer loans against items consigned for sale and term loans against the value of your corporate collection.

We pride ourselves in our ability to provide funds with unmatched speed. With our experience, in-house resources, and underwriting focused on the art alone, you can often access funds within a matter of days. Each consultation is confidential and our Financial Services experts are always available to assist you.

*For more information, simply fill out the form or please contact:*
Sotheby's Financial Services
New York: +1 (212) 894 1130
London: +44 (0) 207 293 5797
services@sothebysfinancial.com

## Request a Confidential Consultation:

* Title ⌄

* First Name

* Last Name

* Email

Notes

protected by reCAPTCHA
Privacy · Terms

SUBMIT

## Follow Us

                

### SUPPORT
Help Center
Locations
Download the App

### CORPORATE
Press
Privacy Policy
Corporate Governance
Careers

### MORE...
Security
Terms & Conditions
Conditions of Business
Modern Slavery Statement
Do Not Sell My Personal Information

By clicking "Accept All Cookies", you agree to the storing of cookies on your device to enhance site navigation, analyze site usage, and assist in our marketing efforts.

Cookies Settings    Accept All Cookies