IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CARLO M. CROCE<br><br>Plaintiff,<br><br>vs.<br><br>SOTHEBY'S FINANCIAL SERVICES, INC., et al.<br><br>Defendants. | Case No. 2:23-cv-02896<br><br>Judge Morrison<br><br>Magistrate Judge Vascura |

## PLAINTIFF'S MEMORANDUM CONTRA TO DEFENDANTS' MOTION TO DISMISS

Now comes the Plaintiff, Carlo Croce, M.D., by and through counsel, and submits his Memorandum Contra to Defendants' Motion to Dismiss. As more fully set forth below in the Memorandum in Support, Defendants' Motion to Dismiss provides no good or legal basis to support dismissal of Plaintiff's claims, and as such, Plaintiff respectfully requests that Defendants' Motion to Dismiss be overruled and denied in its entirety.

Respectfully Submitted,

/s/ William W. Patmon III
William W. Patmon III (0062204)
The Patmon Law Firm LLC
4200 Regent Street Suite 200
Columbus, Ohio 43219
Phone: (614) 944-5786
Fax: (614) 448-4393
wpatmon@patmonlaw.com
*Attorney for Plaintiff Carlo Croce*

## **MEMORANDUM**

This case is about a breach of trust and using that breach to take advantage of a customer who trusted you.  The private art world depends on trustworthiness and discretion.  Defendants Sotheby's, Sotheby's Financial Services, and Sotheby's Financial Services California whose businesses are allegedly rooted in trust and discretion violated that trust and caused substantial damage and harm.

Defendants want this Court to focus on a years-old legal release that has no application to the claims in this action and their efforts to recast Plaintiff Croce's claims as meritless.  In truth, Sotheby's and Sotheby's Financial Services abused the trust placed in them by a private client and then decided to profit off that trust.  Plaintiff Croce respectfully requests that this Honorable Court deny the Motion to Dismiss in its entirety and allow this case to proceed forward on the merits.

**I.      The 2019 Valuation Agreement Has No Application To The Claims in This Case**

Defendants argue throughout their Motion to Dismiss that a 2019 Valuation Agreement contains a release of claims provision and accordingly all of the Plaintiff's claims must be dismissed.  Defendants present a valuation agreement dated April 16, 2019 as Exhibit A in support of their Motion to Dismiss.  *See* ECF Doc. # 6-1.  They also present, as Defendants' Exhibit B, the artwork subject to the 2019 Valuation Agreement.  See ECF Doc # 6-2.   The artwork subject to the 2019 Valuation Agreement and its release provision are largely "drawings."  *See* Plaintiff's Exhibit A, Complete Valuation Agreement and artwork to Memorandum Contra. [1] With the exception of a single drawing in the 2022 and 2023 Valuations,

---

[1] Defendants separate the 2019 Valuation Agreement into two exhibits, A and B to their Motion to Dismiss. As Defendants are well aware, the 2019 Valuation Agreement included the attached artwork that is subject

2

Plaintiff Croce's claims do not concern "drawings," but rather paintings. *See Fox v. Doe*, 2006 NYLJ LEXIS 3375, *8 (July 6, 2006) ("Certainly, a release may not be read to cover matters which the parties did not desire or intend to dispose of").

The Defendants attempting to extend the 2019 Valuation Agreement to the paintings at issue is both factually and legally wrong. A contract, such as the 2019 Valuation Agreement, cannot be extended to artwork that was never evaluated in 2019.

Finally, most of the drawings in the 2019 Valuation have different artists and titles than those set forth in the 2022 and 2023 Valuation. For instance, the 2019 Valuation mentions Antonio D'Enrico's piece called Tanzio Da Varallo's *Drapery Study*, or the piece *Venetian Or Ferrarese School, First Half of The 16th Century*. *See* Exhibit A, full 2019 Valuation, p. 41. By contrast, paintings by Simon Vouet, *Saint Francis receiving the Stigmata* and *Double Portrait of Virginia da Vezzo Vouet Holding a Painting of Simon Vouet*, listed in the 2022 Valuation are <u>not</u> mentioned at all in the 2019 Valuation. Moreover, the 2023 Valuation contains a number of paintings that are not mentioned in the 2019 Valuation: Giovanni Francsco Barbieri, Called IL Guercino's *Man With Turban* and Jacopo Da Ponte, called Jacopo Bassano's *Saint John the Baptist taking leave of his parents* as examples. *See* Plaintiff's Original Complaint Exhibit 1, ECF Doc 1-1, p. 5 of the June 13, 2023 Valuation Report.

A. **2019 Valuation Agreement Contains No Evergreen Contract Provision**

The 2019 valuation contains no "evergreen" contract provision permitting the 2019 Valuation agreement to automatically renew, or extend to all future valuation engagements by Sotheby's on behalf of Plaintiff Croce. In their Motion to Dismiss, Defendants argue they have no liability because the 2022 Valuation Agreement necessarily arises from and/or relates to the

---

to the 2019 Agreement. Plaintiff's Exhibit A shows the full Valuation Agreement and drawings. There are no paintings that were valued in the 2019 Valuation.

original Valuation. See ECF # 6, Page ID #61. Defendants' spurious argument fails because it is factually and legally meritless.

First, there is no factual support for deeming the 2019 Valuation the "Original Valuation." The 2019 Valuation is limited by its subject matter: the drawings. [2] Defendants' argument, taken literally, would extend the 2019 Valuation to "any and everything" evaluated by Sotheby's on behalf of Plaintiff Croce from 2019 to the end of the world. This is factually and legally unsound. With the exception of a single drawing found in the 2022 Valuation, virtually all of the products "damaged" by Defendants' conduct are paintings—not drawings.

Second, the 2019 Valuation Agreement is for insurance replacement purposes only. The 2022 and 2023 Valuations, which are the basis for the Plaintiff's claims, are for the purposes of a collateral loan (2022 Valuation) and a judicial sale (2023 Franklin County Common Pleas Court valuation) . Neither the 2022, nor 2023 Valuations, are for the purpose stated in the 2019 Valuation, i.e., insurance replacement value. The purpose for the 2019 Valuation is therefore self-limiting and cannot be construed as applying to valuations for a collateral loan or auction/sale of art work.

A.     No Release By Contract If Releasee Act In Bad Faith Or Fraud

Defendants may not avail themselves of the 2019 Valuation Agreement liability release provision if they acted in bad faith or fraud in regard to the October 2022 and June 2023 Valuation. *See Madeof, LLC v. Bronson*, 2019 N.Y. Misc. LEXIS 1904 (April 12, 2019) (" ' a release may be invalidated . . . for any traditional bases for setting aside written agreements, namely, duress, illegality, fraud or mutual mistake' "), *quoting Central Empresrial Cempresa S.A. v. America Movil, S.A.B. de C.V.*, 17 N.Y.3d 269 (2011); *Avnet, Inc. v. Deloitte Consulting*

---

[2] There are a few oil canvases in the 2019 Valuation, but none of the pieces are the subject of the 2022 and 2023 Valuations.

4

*LLP,* 187 A.D. 3d 430 (2020) ("A party that releases a fraud claim may later challenge that release as fraudulently only if it can identify a separate fraud from the subject of the release").

**II.     The 2019 Valuation Agreement Subpoena Provision Does Not Apply To The Plaintiff's Claims and Defendant Sotheby's Had A Duty To Limit Disclosure**

At the outset, as set forth above, the 2019 Valuation Agreement and its provisions have absolutely no application to the claims in this action. Defendants assert they innocently responded to a subpoena from a judgment creditor and that the Plaintiff's then counsel failed to file a motion to quash the subpoena. Contrary to the Defendants' assertions, in the absence of the 2019 Valuation Agreement, appraiser ethics rules control the response to the subpoena. Those ethics rules require an appraiser to maintain strict confidentiality and that obligation required Sotheby's to object or seek a court order limiting the disclosure of the valuations.

Ohio Civil Rule of Procedure 45 (C) (2)(b) provides that a person served with a subpoena may file an objection to the Subpoena.[3] Sotheby's had a duty to object to the subpoena because of its ethical obligations and because of its promise to Plaintiff Croce that any valuation would be kept in the strictest confidentiality. The Rules governing discovery gave Sotheby's the right object and to seek a court order protecting the valuations from public disclosure. Sotheby's, in dereliction of its duty of confidentiality, elected to simply turn over the confidential Valuations and did nothing at all to protect them from public disclosure.

In summary, the fact that the Plaintiff's then counsel failed to object or complain to Sotheby's has no bearing on the *duty* imposed on Sotheby's itself to make every effort to maintain the strictest confidentiality of the painting valuations.

---

[3] NY CPLR 2304 and 3103 provide procedures for objecting and modifying a civil subpoena.

5

### III. Plaintiff Croce Has Adequately Plead Malicious Intent and Special Damages In Support of His Product Disparagement Claim

Plaintiff Croce has, in fact, adequately plead malicious intent and special damages in the Original Complaint. *See* ECF Doc. # 1, Page ID # 5, 6, 10; see also Proposed First Amended Complaint, ECF Doc. # 16-1. Plaintiff Croce has also moved to amend the Complaint concerning malicious intent and special damages. *See* ECF # 16, Motion For Leave To File First Amended Complaint.

#### A. Plaintiff Croce Has Plead More Than Sufficient Facts To Establish A Product Disparagement Claim

The Defendants took advantage of Plaintiff Croce by participating in, approving, and acting in concert with, the Judgement creditor to publish strictly confidential valuations. This fact is not disputed. Defendants contend that they had no desire to harm Plaintiff Croce and that the mere preparation of the 2023 Valuation report is not malice. They further argue that Sotheby's business interest is to sell property at the highest-possible market prices.

The Defendants bare assertion is insufficient where, as here, Rule 12 requires the allegations concerning malice and special damages be construed in Plaintiff Croce's favor. Defendants' strained interpretation of the Complaint disregards the Complaint in its entirety and cherry picks certain allegations to prove Plaintiff Croce failed to adequately plead. Plaintiff Croce has plead in the Complaint ample facts showing malice occurred when strictly confidential valuation information, gained from a private client, was published in the Franklin County Common Pleas Court. Defendants' argument is fallacious because Sotheby's business model and interest are to provide strictly confidential valuations to clients. That business model and interest is not served by publishing a valuation derived from confidential information generated for a client. Indeed, private clients would not seek Sotheby's private, confidential services for

valuation and collateral loans if they knew Sotheby's would disclose the valuations and loan requests, without objecting or seeking a court order protecting such confidentiality, from disclosure to the public.   Sotheby's entire business model is based on privacy and discretion.  Sotheby's should have simply refused to participate in the judicial sale proceedings, but it did not.  Instead, motivated by greed, Sotheby's violated ethical rules and its' own public representations of confidentiality to profit off of the sale of Plaintiff Croce's art work.

Special Damages are also amply plead in the Original Complaint.   Plaintiff Croce's Complaint sets forth differences between the actual values and Sotheby's erroneous valuations.  *See* ECF No. # 1, Page Id # 5,8, and 10, paragraphs 22, 25, 26, 41, and 59; ECF No. #16-1, Paragraphs 33,40,42,43,44,46, 107, 108 and 109.  In Paragraph 25 of the Original Complaint, Plaintiff alleges Sotheby's gave *Man with a Turban* by Guercino a valuation of $300,000 to $ 500,000.   Yet, Sotheby's recently sold a smaller, inferior Guercino for well over $1 million.  The pecuniary loss for this artwork is up to $500,000 to $700,000.  Page Id# 5.   Similarly, Sotheby's failure to adequately research and assign no value to Plaintiff's Costabili Schedoni, recognized by art experts, as worth at least $3.5 million, is a specific damage.

Plaintiff's Amended Complaint pleads with more specificity the actual losses suffered by Plaintiff Croce.  *See* ECF No. # 6-1, Page ID # 170, 171,183, 187 Paragraphs 42, 43, 45, 46, 107, 108, 130.  The losses suffered by Plaintiff Croce is excess of 10 million.  See ECF # 16-1, Page Id# 184, 187.

These losses underscore the reason for confidential valuations in the first place. The valuation is for the appraisal client and Sotheby's only.   Once the public has a "benchmark" for the value of a particular type of art, bidders at an auction will use that benchmark to assess value.  If Sotheby's had provided an accurate valuation, the benchmark would be higher, and the

7

bidding would start at a higher price.  Plaintiff Croce has been an avid collector and seller of artwork.   The Defendants' unlawful disclosure of Sotheby's woefully deficient valuations has damaged the paintings.  If he tries selling the artwork in the future, in event the judicial collection/liquidation is unsuccessful, Plaintiff Croce's efforts to sell  the artwork will be substantially less than its actual worth. [4]  The damaged valuations will also affect his rights as a debtor insofar as the artwork will sell for less and consequently adversely affect his ability to satisfy the judgment.

Defendants' distinction about false statements of fact and opinion is baseless.   In the world of high end art, Sotheby's valuation is, in reality, a statement of fact. [5]  *See* Exhibit B to the Memorandum Contra, Media Articles.  Sotheby's valuations carry significant weight in the art world and are relied on by others, as well as Sotheby's Financial Services itself to provide collateral loans.

IV.    **The Litigation Privilege Has No Application To An Ancillary Judicial Collection Process**

Defendants cannot avail themselves of a privilege for a statement that should never been in submitted in the Franklin County Common Pleas Court in the first place.  The 2023 valuation is derived from strictly confidential valuation work performed by Sotheby's for Plaintiff Croce.  Defendants had no right to participate in, or support the publication of the art valuations.  The

---

[4] Plaintiff Croce is vigorously opposing the judicial sale of his art work in Franklin County Common Pleas Court.

[5] For example, in the October 2022 valuation, Sotheby's knew immediately, based on its experience and resources, the value of the piece of artwork.   This is the reason they are able to close on collateral loans in 30 days or less.  For the October 2022 valuation, Sotheby's is only needed to confirm certain aspects about the art, such as the artwork's physical condition.  In this case, after Sotheby's provided the erroneous valuations, in order to create a super hedge for risk rather than the promised 50% LTV, Sotheby's only needed to confirm the physical condition of the art which, of course, it did in November 2022 at Plaintiff Croce's residence.

privilege cannot be taken advantage of where a person publishing the statement had no right to publish it.

The purpose of the litigation privilege is to facilitate the disclosure of pertinent information that helps ascertain the truth. *See Reister v. Gardner*, 163 Ohio St.3d 546 (2020). The judicial collection process is an ancillary judicial process in Franklin County Common Pleas Court that has no relation to determining the truth of the underlying action against Plaintiff Croce to recover allegedly unpaid legal fees. The underlying legal action ended in a judgment. No truth is aided, since judgment has already occurred against Plaintiff Croce, by publishing the false valuations. To allow Defendants, who are not parties to the litigation, and are not witnesses being asked to testify as to the truth of matter (whether Croce owes the unpaid legal fees), to publish false valuations is an abuse of the litigation privilege.

**V.      Plaintiff's Negligent Appraisal Claim Is Not Barred By The 2019 Valuation Agreement**

As shown in Section I, Plaintiff's claims are not barred by the 2019 Agreement because it does not apply to the Negligent Appraisals performed by the Defendants in October 2022 and June 2023. The Defendants, however, are trying to extend the reach of the Agreement to the 2022 and 2023 valuation by asserting the 2019 Valuation Release provision applies because it concerns a subset of the same Old Masters Collection. This is blatantly false. The subject matter of the 2019 Valuation are Old Master drawings—not paintings. The world of Old Master Art extends to sculptures, furniture, artifacts and other forms of art. As argued by the Defendants, all works of Art that fall into the "Old Master" category would be subject to the 2019 Agreement, including sculptures and other forms of art. This reasoning is not sound. A valuation is based on the particular analysis of a piece of art by Sotheby's. If the artwork is not

9

evaluated, then it cannot be subject to a particular valuation, and cannot be governed by an agreement releasing Sotheby's from liability as to the particular pieces of art.

The paintings at issue in this action were simply not evaluated by Sotheby's in 2019 and thus are not governed by the 2019 Valuation Agreement. The Defendants veiled attempt to convert the 2022 and 2023 valuation into the "2019 valuation" fails for factual and common sense reasons.

### A. The 2022 and 2023 Appraisals Are Not Time Barred

The claims in this action concern the 2022 and 2023 valuation. To the extent that the *Modello of Guercino* is subject to the 2019 Valuation agreement, a contractual release does not apply to claims based on bad faith.

This action was filed on September 8, 2023. Applying the New York's three (3) year statute of limitations or even Ohio's four (4) statute of limitations, Plaintiff Croce's claims are not time-barred and are still viable.

### VI. Plaintiff Croce Has Plead A Cognizable Negligent Misrepresentation Claim Against Defendants

Defendants assert no special or fiduciary relationship exists between Plaintiff Croce and the Defendants.[6] They cite two cases, *Foxley v. Sotheby's Inc.*, 893 F. Supp. 1224, 1232 (S.D. N.Y. 1995) and *Clegg v. Sotheby's*, 2023 WL 8281487, for the proposition that no special or fiduciary relationship exists. The facts in both cases are inapposite to the allegations in the Original Complaint and the Proposed First Amended Complaint. *Foxley* and *Clegg* are not based on appraisal cases. *See Clegg v. Sotheby's*, 2023 U.S. Dist. LEXIS 213356, * 8 (November 30, 2023) ("Notably, Clegg does not bring claims against Sotheby's related to . . . its appraisal of the Painting in 2008"); *Foxley* at 1227 ("Foxley seeks damages in connection with

---

[6] Sotheby's Financial Services, acting in concert and agreement, with Sotheby's is jointly and severally liable.

10

his purchase at auction of a painting subsequently regarded as inauthentic"). This action arises from a special relationship premised on *strict confidentiality*. Sotheby's and Sotheby's Financial Services, acting in concert, caused Plaintiff Croce to enter into a fiduciary relationship dependent on confidentiality and a pecuniary interest (collateral loan interest and fees), which ultimately resulted in substantial loss to him when the erroneous valuations were published.

A fiduciary relationship may "arise de facto from an informal relationship if both parties understand that special trust or confidence has been reposed." *See, generally*, *Cairins v. Ohio Sav. Bank* (1996), 109 Ohio App.3d 644, citing *Umbaugh Pole Bldg. Co. v. Scott* (1979) 58 Ohio St.2d 282, syllabus. " [L]iability for negligent misrepresentation has been imposed only by those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with injured party such that reliance on the negligent misrepresentation is justified." *New York Disaster Intefaith Servs. Inc. v. Council of Peoples Org., Inc*., 2018 N.Y. Misc. LEXIS 152 * 19 (Jan. 18, 2018) (citing *Kimmel v. Schaefer*, 89 NY2d 257, 263 (1996). Defendants' relationship with Plaintiff Croce was more than a simple arms-length transaction. As plead in the Original Complaint, ECF No. # 1, PAGEID# 4, 6, and 9, Paragraphs 12, 53, 63 and Proposed First Amended Complaint, ECF No. #16-1, Plaintiff Croce's allegations are sufficient to show a special relationship of trust and confidentiality with the Defendants.

In the proposed First Amended Complaint, Plaintiff Croce pleads numerous facts showing a special relationship between him and Defendants based on (1) Sotheby's expertise to provide accurate appraisals, (2) private client strict confidentiality, (3) Plaintiff Croce's reliance based on access to his personal collection and attribution sources, and (4) his expectation of private confidential appraisal that would not be used in a public court proceeding. See ECF No.# 16-1 PAGE ID #  179, 185-186, 123, Paragraphs 87, 88, 93, 118-121, 123.

11

In sum, a special relationship has been plead as to Defendants Sotheby's and Sotheby's Financial Services. The parties' relationship was built on trust and confidence in Defendants' appraisal competence and a strict confidential relationship. The strict confidentiality representations required Defendants to maintain confidentiality even after the business transaction, i.e., collateral loan, was completed or abandoned. Plaintiff Croce's trust and confidence that Sotheby's would never divulge such information is more than an arms-length transaction. It is a fiduciary relationship that requires Sotheby's to keep the valuations confidential, or at least protect them from public disclosure (obtain court order limiting disclosure in the Franklin County Common Pleas Court). The disclosure of the valuations, which are themselves false, in a public court proceeding has caused substantial injury and harm.

**VII.     Plaintiff Croce's Promissory Estoppel Pleads Sufficient Facts Showing the Claim Is Viable**

Contrary to the Defendants' assertion that no injustice will be suffered fails to recognize that if the artwork is sold at auction, based on wrongful valuations, the sale will cause Plaintiff Croce to not realize the true value of the art work. Art collector buyers will rely on the erroneous valuations as a benchmark for value. More to the point, auctions, based on judicial sales, invariably invite low bids because buyers understand the owner has no choice in the sale and pricing of the art. And finally, an injustice has occurred if a major art dealer, such as Sotheby's, can violate its confidentiality representations, ethical standards, and common business practice in the high end art market. The cure is simple: hold Sotheby's and Sotheby's legally responsible for breach of the promise.

The Defendants' argument that the term sheet is only for discussion purposes only mischaracterizes the October 2022 Valuation term sheet. The term sheet should reasonably be read to mean that "discussion purposes only" concerns the financial terms. The discussion

12

purposes only is direct toward "Sotheby's Financial Services," the finance arm of Sotheby's. Indeed, the term sheet should also be read, in conjunction with Sotheby's and Sotheby's Financial Services website representations, that a consumer such as Plaintiff Croce should expect that the (1) appraisal and loan process would take 30 days or less, (2) the collateral loan will be 50% LTV rather than a much lower LTV, and (3) Sotheby's will act ethically and keep the valuations confidential. Plaintiff has amply plead facts in the Original Complaint and Proposed First Amended Complaint.

And finally, because the 2019 Valuation Agreement has no application to the claims in this action, Sotheby's dual role as lender and valuator does, in fact, raise a conflict of interest. Sotheby's provides appraisal services purportedly for the purpose of determining the true value of a piece of art. Sotheby's Financial Services, by contrast, is for the purpose of lending money against the artwork and to protect lender risk by creating a hedge against the risk of default. This is the reason for the 50% LTV. However, as plead in Original Complaint and Proposed First Amended Complaint, Sotheby's and Sotheby's Financial Services, acting in concert and agreement, are actually generating very low valuations in order to achieve a loan-to-value substantially less than 50% LTV and consequently creating a "super hedge" against risk. This is harmful to the art work owner because he does not obtain a larger loan (based on a true 50% LTV) and the artwork is now encumbered by Sotheby's loan security agreement.

Sotheby's Financial Services also has a further role that creates a substantial conflict of interest with Sotheby's appraisal arm. News media and Sotheby's Securities and Exchange Commission ("SEC") filings clearly show Sotheby's Financial Services is in the business of securitization of their art collateral loan portfolio. *See* Exhibit B, media articles. "Depressed valuations" create a super hedge against default risk and make Sotheby's loan portfolio more

13

attractive to portfolio investors and credit facility lenders. These dual roles by Sotheby's and Sotheby's Financial Services is in breach of the promises and representations made to, and relied on, by Plaintiff Croce and the public.

**VIII.   Plaintiff Croce Plead Facts Establishing A Fraud Claim**

Plaintiff Croce has plead that Sotheby's and Sotheby's Financial Services are motivated to devalue the paintings in order to create a loan with a loan-to-value less than the represented 50% LTV.  Plaintiff Croce relied on the Defendants' reputation for integrity and expertise when he sought the collateral art loan.  That reliance was betrayed.  Defendants, having devalued the art work in the 2022 valuation, continued to cause injury and harm by participating in, and collaborating with Plaintiff Croce's judgment creditor to publicly disclose the valuations.  *See* Original Complaint, ECF No. # 1 and Proposed First Amended Complaint ECF No. # 6-1.

As to the Rule 9 requirement that fraud be plead with particularity, once again, Plaintiff Croce has amply plead facts supporting a fraud claim.  Plaintiff Croce has plead that the fraud occurred in October 2022, based on art work situated in Columbus, Ohio, continued with Sotheby's visit to his home in November 2022, and has resulted in specific financial loss and non-pecuniary loss.  The fraudulent representations relied on are the false valuations which were produced to offer a loan based on the less than 50% LTV, the representation that the loan and appraisal process would be completed in a short time period, and strict confidentiality misrepresentations.  The fraudulent conduct continued when the Defendants participated in and collaborated with the judgment creditor to publish the false valuations and agreed to sell the artwork listed in the 2023 valuation in violation of their representations of strict confidentiality in Columbus, Ohio.

14

The damages suffered by the Plaintiff is the violation of his expectation that his artwork valuation would be kept confidential and the losses incurred when the art work is sold for less than its actual value.[7] Plaintiff's proposed First Amended Complaint presents allegations setting forth actual monetary losses suffered by Croce. See ECF # No. 1, Proposed First Amended Complaint, ECF # 6-1.

## IX. CONCLUSION

Based on the forgoing, Plaintiff Croce respectfully requests the Defendants' Motion To Dismiss be dismissed.

Respectfully Submitted,

/s/ William W. Patmon III
William W. Patmon III (0062204)
The Patmon Law Firm LLC
4200 Regent Street Suite 200
Columbus, Ohio 43219
Phone: (614) 944-5786
Fax: (614) 448-4393
wpatmon@patmonlaw.com
*Attorney for Plaintiff Carlo Croce*

---

[7] Art auction buyers perform due diligence on art work prior to auctions or sales. The wide variation in the valuations will cause buyers to "benchmark" the art work lower than a buyer would if valuations were accurate. For example, if Sotheby's values a piece of art at $10,000 to $15,000, but its actual value is $250,000, it is unlikely that the bidding will reach $250,000 or any number in close approximation of the actual value. This will result in the loss of his art work and less satisfaction of the judgment against him.

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that a copy of the foregoing has been electronically filed this 10th day of February, 2024. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's CM/ECF system.

      /s/ William W. Patmon III
      Counsel for Plaintiff Carlo M. Croce