**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| CARLO M. CROCE | Case No. 2:23-cv-02896 |
| Plaintiff, | Judge Morrison |
| vs. | Magistrate Judge Vascura |
| SOTHEBY'S FINANCIAL SERVICES, INC., et al. | |
| Defendants. | |

## PLAINTIFF'S MEMORANDUM CONTRA TO DEFENDANTS' MOTION TO DISMISS FILED ON MARCH 14, 2024

Now comes the Plaintiff, Carlo Croce, M.D., by and through counsel, and submits his Memorandum Contra to Defendants' Motion to Dismiss filed on March 14, 2024.  As more fully set forth below in the Memorandum in Support, Defendants' Motion to Dismiss provides no good or legal basis to support dismissal of Plaintiff's claims, and as such, Plaintiff respectfully requests that Defendants' Motion to Dismiss be overruled and denied in its entirety.

Respectfully Submitted,

/s/ William W. Patmon III
William W. Patmon III (0062204)
The Patmon Law Firm LLC
4200 Regent Street Suite 200
Columbus, Ohio 43219
Phone: (614) 944-5786
Fax: (614) 448-4393
wpatmon@patmonlaw.com
*Attorney for Plaintiff Carlo Croce*

## **TABLE OF CONTENTS**

TABLE OF CONTENTS …………………………………………………….. ii

TABLE OF AUTHORITIES …………………………………………………...3

INTRODUCTION………………………………………………………… 5

ARGUMENT…………………………………………………………… 5

    A.    The 2019 Valuation Agreement Has No Application To The ……………5
            Claims In This Case

    B.    Defendants'2022 Loan Offer Was Not Based On Actual
            Valuations To Lend Money…………………………………………… 7

    C.    The November 2022 Additional Valuation Work Was Prompted
            By Plaintiff Croce's Concern That 2022 Valuation Loan Offer
            Was Not Based On A True 50% LTV…………………………………… 8

    D.    Defendants Actively Participated In The Publication Of The 2023
            Valuation Based On Defendant Sotheby's Prior Work For
            Plaintiff Croce In 2022 …………………………………………………10

    E.    Defendants Are Not Entitled To The Protections Of The Litigation
            Privilege …………………………………………………………………12

    F.    Plaintiff Croce Has Sufficiently Plead Injury and Harm ……………….. 13

    G.    Plaintiff Croce's Product Disparagement Claim Is Based On
            The Publication of Valuations Originally In The October
            2022 Valuation…………………………………………………… 15

         1.    Plaintiff Has Plead Malice …………………………………………17

         2.    Defendants' Negligent Valuations Are More Than
               Opinions/Estimates…………………………………………19

    H.    Plaintiff Croce Has Plead A Cognizable Negligent Appraisal And
            Misrepresentation Claims Against Defendants…………………………. 20

         1.    Fiduciary Relationship Is Established By The Facts And
               Circumstances Of Trust And Confidence In This Case …………20

    I.    Plaintiff Croce's Promissory Estoppel Pleads Sufficient Facts
            Showing The Claim Is Viable…………………………………………23

J.      Plaintiff Croce Plead Facts Establishing A Fraud Claim………………24

K.     Plaintiff Has Adequately Plead A Lanham Act False Advertising
Claim and Has Standing……………………………………………...25

      1.     Plaintiff Has Standing To Bring A Lanham Act……………..26

CONCLUSION……………………………………………………………………28

**TABLE OF AUTHORITIES**

**Cases**

*Cooker v. United Dairy Farmers, Inc.*, 2003-Ohio-3118 (10th Dist. 2003)……………11

*Wattley v. Rinaldi*, 2022 Ohio Misc. LEXIS 2486 ………………………………………..11

*Youmans v. Smith*, 153 N.Y. 214 (Ct of Appeals 1897) ………………………………..11

*Kosmdes v. Sine*, 2020 N.Y. Misc. LEXIS 1668 ………………………………………11

*Halperin v. Salvan*, 117 A.D.2d 544 (App. Div. 1st Dept. 1986) ………………………13

*Reister v. Gardner*, 2020-Ohio-5484 ……………………………………………………...13

*Watley v. Dept. of Rehab & Corr.* 2007-Ohio-4148…………………………………… 13

*Popovich v. Health-Regional*, 2020 Ohio Misc. LEXIS 3588…………………………..17

*Porter v. Forest Hills Care Ctr LLC*, 2018 N.Y. Misc. LEXIS 6745…………………...17

*State v. Smith*, 2022-Ohio-4687…………………………………………………………18

State v. Baker, 2020-Ohio-7023……………………………………………………………18

*People v. Helms*, 119 A.D. 3d 1153 (N.Y. App. Div. 2014) …………………………18

*Holliswood Owners Corp. v. Rivera*, 145 A.D. 3d 968 …………………………………19

*Eros Intl. PLC v. Mangrove Partners*, 2019 N.Y. Misc. LEXIS 1010 ………………… 19

*Cairns v. Ohio Sav. Bank*, 109 Ohio App.3d 644 (1996) ………………………………..20

*New York Disaster Interfaith Servs. Inc. v. Council of Peoples Org., Inc.* ………………20
2018 N.Y. Misc. LEXIS 152

*Abercrombie v. Andrew Coll.*, 438 F.Supp.2d 243 (S.D. N.Y. 2006) ……………………..22

Foxley v. Sotheby's, Inc., 893 F.Supp. 1224 (S.D. N.Y. 1995) …………………………..22

*Am. Council of Certified Podiatric Physicians & Surgeons v.*
*Am. Bd. of Podiatric Surgery, Inc*., 185 F.3d 606, 613 (6th Cir. 1999)……………………26

*Lewis v. Acuity Real Est. Servs*., LLC, 63 F.4th 1114, 1116 (6th Cir. 2023)………………..27

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) ……………27

*De Sole v. Knoedler Gallery*, LLC, 139 F.Supp. 3d 618 (S.D. N.Y. 2015) ………………..27

<u>**MEMORANDUM**</u>

**I.      INTRODUCTION**

Plaintiff Croce is a victim of one of the world's oldest art dealers and appraisers.   He placed in his trust in the Defendants and they betrayed that trust.  The private client art world is a very confidential market, in which buyers/sellers/prospective borrowers depend on discretion and secrecy.   Plaintiff Croce trusted the Defendants to act ethically and to keep their promises made to him and the art buying public.   Instead of keeping its promises and adhering to a century old business practice of loyalty and strict confidentially, Defendants motivated by profit, breached this trust by reproducing the confidential valuation in 2023.   This caused injury to the Plaintiff's artwork because Defendants aided and abetted the publication of the false and misleading valuations.  They also deceived Plaintiff by making a collateral loan offer that was not based on the 50% LTV (loan-to-value), but rather a much lower loan-to-value.   Defendants' less than 50% LTV offer was motivated by the desire to include Plaintiff's proposed loan in a portfolio whose shares are bought by investors.

**II.     ARGUMENT**

**A.      The 2019 Valuation Agreement Has No Application To The Claims in This Case**

The 2019 Valuation Agreement is not controlling as to release of claims provision and subpoena provision.  The art work subject to the 2019 Valuation Agreement and its release provision are largely "drawings—not the paintings in the October 2022 and June 2023 valuations. *See* Plaintiff's Exhibit A, 2019 Complete Valuation Agreement and artwork to

Memorandum Contra. *See* Exhibit A. [1] With the exception of a single drawing in the 2022 and 2023 Valuations, Plaintiff Croce's claims do not concern "drawings," but rather paintings. [2]

As a contract, the 2019 Valuation Agreement, cannot be extended to artwork that was never evaluated in 2019. The 2019 Valuation Agreement and its subpoena provisions, jurisdiction and release provisions cannot control Plaintiff Croce's claims based on paintings valued in October 2022 and published in June 2023. *See* Exhibits B, October 2022 Valuation and Exhibit C, June 13, 2023 Valuation. The 2019 valuation contains no "evergreen" contract provision permitting the 2019 Valuation agreement to automatically renew, or extend to all future valuation engagements by Sotheby's on behalf of Plaintiff Croce. Indeed, extending the 2019 Valuation Agreement to art not evaluated by Sotheby's would lead to an absurd result: the agreement would apply to different art, valued at different times from 2019 to the end of world.

Specifically, the 2019 Valuation contains different artists and titles than those set forth in the 2022 and 2023 Valuations. For instance, the 2019 Valuation mentions Antonio D'Enrico's works called Tanzio Da Varallo's *Drapery Study*, or Venetian Or Ferrarese School, First Half of The 16th Century. *See* Exhibit A, 2019 Valuation, p. 41. By contrast, paintings by Simon Vouet, *Saint Francis receiving the Stigmata* and *Double Portrait of Virginia da Vezzo Vouet Holding a Painting of Simon Vouet*, listed in the 2022 Valuation is not mentioned at all in the 2019 Valuation. Moreover, the 2023 Valuation contains a number of paintings that are not mentioned in the 2019 Valuation: Giovanni Francsco Barbieri, Called IL Guercino's *Man With*

---

[1] Defendants separate the 2019 Valuation Agreement into two exhibits, A and B to their Motion to Dismiss. As Defendants are well aware, the 2019 Valuation Agreement included the attached artwork that is subject to the 2019 Agreement. Plaintiff's Exhibit A shows the full Valuation Agreement and drawings. There are no paintings that were valued in 2019 Valuation.

[2] Plaintiff is no longer asserting claim in this action based on the single drawing contained in the 2019, 2022 and 2023 valuation. It is mentioned only for illustration to demonstrate the haphazard nature of Sotheby's alleged expertise.

*Turban* and Jacopo Da Ponte, and Jacopo Bassano's *Saint John the Baptist taking leave of his parents* as examples.  *See* Exhibit C, June 13, 2023 Valuation.

In sum, the 2019 Valuation is limited by its subject matter:  the drawings. [3]  With the exception of a single drawing found in the 2022 Valuation,  virtually all of the products "damaged" by Defendants' conduct are paintings—not drawings.

Plaintiff Croce's claims arise only from the October 2022 valuation and the reproduction of such valuations in the June 2023 valuation.

### B.    Defendants' 2022 Loan Offer Was Based on Actual Valuations To Lend Money

Defendants argue that determining Old Master work valuations takes time and effort and that they had to determine the state of the work.  (ECF # 24, PAGEID #309).   They argue that this is why the process takes at least 30 days or more.   The October 2022 valuations, which they assert are mere estimates, were actually used to make a loan offer of $1, 255,000.  *See* Exhibit B, 2022 Valuation.  The 2022 valuations were therefore more than "mere" estimates, but *actual* lending valuations provided by Sotheby's in order to lend $1.2 million in actual funds to Plaintiff Croce.   Further proof that they were actual valuations is demonstrated by the fact that the October 2022 valuations did <u>not</u> change when published in the 2023 valuation, almost a year later in June 2023.

 Given that Sotheby's was willing to lend $1.2 million based on the valuations generated in less than thirty (30) days, the erroneous valuations were more than mere opinions or estimates, but bona fide valuations for the purpose of lending *actual money*.   Plaintiff Croce's First Amended Complaint is based, in substantial part, on the assertion that valuations are well below

---

[3] There are a few oil canvases in the 2019 Valuation, but none of the pieces are the subject of the 2022 and 2023 Valuations.

the represented 50% LTV offer in the October 2022 valuation and are well below the 40-60%

LTV advertised online by Sotheby's to Plaintiff Croce and the public.   The grossly low

valuations are fraudulent because Sotheby's is inducing borrowers, such as Plaintiff Croce, to

encumber their artwork as collateral at lower than 50% LTV.   In other words, Sotheby's

deceived Plaintiff Croce and the public by providing unreasonably low valuations in order to

profit from the securitization of their collateral art loan portfolio. [4]   *See* Exhibit D, News

Articles on Securitization of Sotheby's art loans.

If the valuation had been correct, the 50% LTV loan, based on valuations generated in

October 2022, would have been greater than $1.2 million.   Defendants cannot fraudulently

induce the Plaintiff to enter into a loan, encumbering artwork whose value would yielded a loan

offer greater than $1.2 million.  The artificially low valuations were presented to the Plaintiff in

furtherance of a fraudulent scheme to encumber the artwork at a lower loan-to-value than the

represented 50% LTV valuation in order to make greater profits from art loan portfolio investors.
[5]

### C.    The November 2022 Additional Valuation Work Was Prompted By Plaintiff Croce's Concern That The 2022 Valuation Loan Offer Was Not Based On A True 50% LTV

Plaintiff Croce disagreed with the original offer because it was not based on a true 50%

LTV.  This prompted the November 2022 visit by Sotheby's.   Defendants mischaracterize

Plaintiff Croce's concern as disappointment over their valuation opinion.  As plead in the First

Amended Complaint, Plaintiff Croce's concern about the October 2022 valuation stemmed from

his concern that the artwork, worth more than $1.2 million, was being encumbered based on false

---

[4] Defendants do not disclose to prospective borrowers that their art loan will be re-packaged into art loan portfolio fund for investors.
[5] The Court can take judicial notice of the numerous new articles showing that Sotheby's in the art loan portfolio investor business.

and misleading valuations.   Once the artwork encumbered by loan based on less than 50% LTV, Plaintiff Croce would not receive the full value of his artwork for lending purposes, i.e., artwork correctly valued would yield $ 6 million or more loan.  Plaintiff requested further review because the 2022 valuations were blatantly false and misleading.  This was the reason for the further review and Sotheby's visit to his residence to look at other artwork, a choice that Plaintiff Croce felt forced to make given the urgent need for the loan proceeds to pay the judgment.

In their motion, Defendants' arguments contradict the representations made to Plaintiff Croce that the valuations are private and completed in at least 30 days.   By Defendants' own admission in their Motion To Dismiss, the valuation of a single piece of art, started in November 2022, was not completed by April 2023, which is over 6 months.  Defendants assertion that they needed more time to research, as of April 2023 to complete the valuation is not consistent with prior practices, i.e., valuation for loans in 30 days or less.   The art loan offering by Sotheby's promises expeditious valuation and disbursement of loan funds.

Defendants performed the October 2022 valuation quickly and they certainly had the ability to complete the valuation of a single piece of art in at least 30 days.   Defendants' motive for unreasonably delaying the valuation of a single piece of art for over 6 months is a fact issue for the jury to decide at trial.

Construing the allegations in the First Amended Complaint, including all inferences made in the Plaintiff's favor,  Defendants may have been motivated by the short term profit derived from the judicial sale rather than lending to Plaintiff Croce who has judgment against him.   By denying Defendants' Motion to Dismiss, the Plaintiff Croce will have the opportunity to conduct discovery as to the reason for the low valuations, the delay in completing the valuation of a

single piece of artwork, and more information in regards to Sotheby's earliest contact with the Judgment Creditor in order to serve as auctioneer.

### D. Defendants Actively Participated In The Publication of The 2023 Valuation Based On Defendant Sotheby's Prior Work For Plaintiff Croce In 2022

Defendants vigorously participated in the publication of the 2023 Valuation which itself is based on prior October 2022 valuation of Plaintiff Croce's private collection. Defendants disingenuously argue they simply responded to a request from a judgment creditor to serve as auctioneer of Plaintiff Croce's artwork. Taking the Amended Complaint allegations out of context, in attempt to confuse the well plead facts in the Complaint, Defendants cherry pick allegations from the First Amended Complaint, arguing that the allegations contradict Plaintiff Croce's claims, or constitute an admission fatal to Plaintiff Croce's claims. Nothing could be further from the truth. As emphasized earlier, under Rule 12 standards, all allegations must be construed in favor of Plaintiff Croce. Here are the facts that clearly and conclusively show that the Defendants engaged in the publication:

- The 2023 Valuations were derived from the confidential, private valuations for Plaintiff Croce—and are not valuations generated in response to the judgment creditor's request to serve as auctioneer. [6]

- In her Affidavit in support of the Judgment Creditor's Motion to sell Plaintiff Croce's artwork, Sotheby's Vice President and Associate General Counsel Aimee Scillieri testified "Moreover, Dr. Carlo Croce Has Bought and sold his Old Master drawings and paintings through Sotheby's, and has sought Sotheby's appraisals of those artwork in the past, such that Sotheby's has extensive experience with such artwork." (See Exhibit E, Affidavit of Aimee Scillieri, attached as Exhibit to the Judgment Creditor's Reply Brief In Support Of Its Motion To Sell Personal Property)

- All of the 2022 Valuations are contained in the 2023 Valuation with the same valuations. For example, Giovanni Francesco Barbieri, called II Guercino's Man

---

[6] Defendants again confuse the facts in this case. The basis for Plaintiff's assertions about confidentiality are derived from Sotheby's own representations that the valuations and collateral loan offerings are private and strictly confidential. The 2019 valuation, not relied by Plaintiff, is only referred to show the course of dealings with private clients, such as the Plaintiff.

> With Turban has valuation range of $300,000 to $500,000 in both the 2022 and 2023 valuation.  Other artwork privately valued for Plaintiff Croce are also contained in the 2023 Valuation.  The inference is that the June 2023 Valuations, issued a mere 40 days after Sotheby's informed Plaintiff Croce they were continuing their analysis of Plaintiff Croce's artwork suggests Defendants were simultaneously inducing Plaintiff Croce to believe the art loan process was continuing while they entered into an agreement with a  judgment creditor to auction the artwork.

Defendant Sotheby's, therefore, did more than simply respond to a request by Judgment Creditor—Sotheby's aided and abetted the Judgment Creditor's publication of disparaging valuation statements created by Sotheby's itself.  Defendant Sotheby's took private, confidential valuations and submitted an affidavit in Franklin County Common Pleas Court, stating the valuations are based on past work for Plaintiff Croce in support of their qualifications to serve as auctioneer for the judicial sale.   "As a general rule, all persons who cause or participate in publication of libelous or slanderous are responsible for such publication  * * * Hence, one who requests, procures, or aids or abets, another to publish defamatory matter is liable as well as the publisher."  *Cooker v. United Dairy Farmers, Inc*., 2003-Ohio-3118 (10th Dist. 2003) (citing *Scott v. Hull* (1970), 22 Ohio App.2d 141, 144); *Wattley v. Rinaldi*, 2022 Ohio Misc. LEXIS 2486 (relying on *Cooker*, court held that "one who requests, procures, or aids and abets, another to publish defamatory matter is liable as well as the publisher"); *Youmans v. Smith*, 153 N.Y. 214, 219 (Ct of Appeals 1897) ("He who furnishes the means of convenient circulation, knowing, or having reasonable cause to believe, that it is to be used for that purpose, if it is in fact so used, is guilty of aiding in the publication and becomes the instrument of the libeler."); *Kosmdes v. Sine*, 2020 N.Y. Misc. LEXIS 1668 (Cty. Supreme Ct) ("Contrary to Plaintiff's assertions on this motion, a cause of action for aiding and abetting defamation has been

11

recognized, and there is no requirement that the offender actually publish the defamatory statement to be liable under this cause of action.").

### E. Defendants Are Not Entitled To The Protections of The Litigation Privilege

Contrary to the Defendants' assertion, Defendants are not entitled to the protections of the Litigation Privilege because Defendants' actions were motivated the greed and malice. Plaintiff Croce has well plead allegations of greed and malice in the First Amended Complaint. Defendants bare assertion that Plaintiff Croce makes conclusory statements of malice is not based on a fair reading of the First Amended Complaint. Plaintiff Croce's First Amended Complaint allegations supporting malice are as follows:

- Sotheby's violated its long held business practice and representations of confidentiality concerning its private dealings with private clients. Sotheby's disclosure of private, confidential valuations, derived from dealings with Plaintiff Croce, is evidence of malice since Sotheby's business model is based on strictest confidentiality. This is a jury question and should not be resolved by a Rule 12 motion. Plaintiff's Am. Compl. Paragraphs §§18, 19, 77, 80, 81, 87, 89, 92, 105, and 138, ECF #19, PAGEID #266-267, 278-279, 280, 281,105, 289.

- Defendants were motivated by greed and malice because Defendants never intended to provide collateral art loan valuations based on 50 % LTV, but rather falsely represented 50% LTV loan to induce private clients, such as Plaintiff Croce, to pursue art collateral loans with Defendants, rather than their art collateral loan competitors like Christie's. This overly low valuations was generated in order to make Defendants' art loan portfolio attractive to investors by creating a super hedge against the risk of default. Plaintiff's Am. Compl. §§38, 48, 49, 50, 89, 93, 94, 136, 140, 150, and 157, ECF #19, PAGEID # 270, 272, 280, 281, 289, 290, 291, 293.

- Defendants took the private confidential valuations generated for Plaintiff Croce's benefit—collateral loan—and used them without Plaintiff Croce's knowledge and consent for the benefit of an adverse judgement creditor. This action was taken, deceptively, on or about June 2023, even though, as Defendants' admit, the art loan valuations were ongoing as late as April 2023. Sotheby's actions were motivated by greed—short term profits from an auction sale is greater than interest earned from the collateral loan.

These allegations are sufficiently plead to establish malice in this case.   As such, Defendants are not entitled the protections of Litigation Privilege since they acted with malice.  "This privilege is lost if abused, and is limited to statements which are pertinent to the subject matter of the lawsuit, made in good faith and without malice.  *See Halperin v. Salvan*, 117 A.D.2d 544, 548 (App. Div. 1st Dept., 1986); *Reister v. Gardner*, 2020-Ohio-5484 (recognizing limit on privilege as to conduct); *Watley v. Dept. of Rehab & Corr.*, 2007-Ohio-4148, p*17 (a qualified privilege can be defeated by a showing of malice).   Defendants cannot violate its privacy representations, breach the trust of a private client, and aid and abet the publication of private client art valuations for the purpose of profiting from a judicial sale auction and still avail themselves of the Litigation Privilege.   Allowing the Defendants to do so would turn the privilege on its head. Defendants did not innocently provide its services to the Judicial Creditor upon request.   They actively aided and abetted the publication of false and misleading valuations.

## F.    Plaintiff Croce Has Sufficiently Plead Injury And Harm

Plaintiff Croce has standing because he, in fact, has plead that he suffered actual injury to the value of his artwork.  Defendants falsely assert the Defendants had no obligation to give him a collateral loan and that no sale of his artwork has occurred.   Defendants arguments undercut the representations made to Plaintiff Croce and other prospective customers.    Sotheby's website states: "Our scholarship and expertise in the art market allows us to offer the highest level of service with the *strictest policy of confidentiality* for private collections, museums, fiduciaries, and corporations."  *See* Exhibit F, Sotheby's website , Valuation section (emphasis added).   This representation induced Plaintiff Croce to allow Sotheby's to perform a strictly confidential valuation.   Sotheby's promises of strict confidentiality is necessary because the private

collector/buyer/seller community needs absolute confidentiality since the public disclosure of the valuations by Sotheby's or Christie's adversely affects the value of piece of art.

To underscore the importance of privacy and the effect of Sotheby's' valuation, even if false, Sotheby's public website states:

> **Why do clients transact privately instead of at auction?**
> There are many reasons why people might go in either direction. Timing is often a big factor – they might have an immediate need for liquidity, want to buy something new, or it's time to send their grand kids to college. Of course, some might not want anyone to know they're selling a piece, for example. Each private sale is a negotiated bespoke deal, and there is more price control. Whereas at auction you start low to come to a higher number, generally in private sales you start high and come to a middle ground.

See https://www.sothebys.com/en/articles/privacy-please-the-ins-and-outs-of-buying-and-selling-art-privately-david-schrader.

Plaintiff has been injured to the extent that the private valuations were disclosed without his consent and such private valuations are now available to the public with the wrong valuations.   This is a cognizable injury because Plaintiff Croce is a collector, buyer and seller of his artwork and such works have now been damaged by Sotheby's negligent, public dissemination of false valuations.

Injury therefore has already occurred and there is no need for an actual sale to show injury since the die has already been cast:  Sotheby's has disclosed the false valuations—this is a real, concrete present value loss suffered by Plaintiff Croce. [7]  Defendants cannot undo the damage to Plaintiff Croce's artwork by conducting an auction bidding because bidders will rely on Sotheby's overly low price bracketing.  For instance, the *Giovanni Francesco Barbieri, II*

---

[7] Defendants assertion that a sale must occur in order to establish damage suggests that an appraisal without a corresponding sale is not actionable.  If this were true, no claim could ever be asserted for negligent appraisal. Sotheby's is a well-known appraiser in the art market, and its appraisals, if wrong, carry significant weight in the art world and affect the value of an artwork.

*Guercino's Man with Turban* was given a false valuation between $300,000 to $500,000 by

Sotheby's in both the 2022 and 2023 Valuations.   Buyers will rely on this price bracket and

make offers within the bracket, even though as alleged in the Plaintiff's First Amended

Complaint, the art's true value is $1.2 million.  *See* First Am. Compl. ¶ 108, ECF # 19,

PAGEID# 284.   Art buyers at the auction thus will bracket the values publicly disclosed by

Sotheby's.

### G. Plaintiff Croce's Product Disparagement Claim Is Based On The Publications of Valuations Originally In The October 2022 Valuation

Defendants again assert a straw man argument to dismiss Plaintiff Croce's Product

Disparagement Claim.   They argue unpersuasively that the October 2022 valuation was not

published.  The Defendants know full well that the Original Complaint and First Amended

Complaints amply plead that 2022 valuations are reproduced in the 2023 valuation.   A

comparison of the 2022 and 2023 clearly shows that certain 2022 valuations were reproduced for

the 2023 valuation.   The 2022 valuations reproduced in the 2023 valuation are:

- The Guercio's Man With Turban (actual value is $ 1-2 million less Sotheby's valuation of $300,000 = $1.2 million loss)

- Bernardo Cavallino's Healing Tobit (actual value is $500,000 to $750,000 less Sotheby's $150,000 = $600,000 loss)

- Giovanni Lanfranco's Diana Playing With Three Children (actual value is $750,000 to $ 1,000,000 less Sotheby's $150,000 = $ 600,000)

- The Master Of The Annunciation To The Shepherds' Rest on the flight into Egypt (actual value $2-3 million less Sotheby's valuation of $200,000 resulting loss = $1.8 million), Jusepe De Ribera's Madonna And Child (actual value $500,000 to $750,000 less Sotheby's valuation $150,000= $350,000 loss)

- Virginia Da Vezzo's Allegory Of Painting (actual value $ 5-8 million less Sotheby's $400,000 = $4.6 million loss)

- Simon Vouet's Saint Francis Receiving The Stigmata (actual value is at least $ 2 million less Sotheby's valuation of $300,00 =loss of $ 1.7 million).

*See* Plaintiff Croce's First Amended Complaint, Paragraph 108, ECF # 19, PAGEID # 284-285.
[8]

The differences between the actual values and Sotheby's values, as set forth above, are based on scholarly art expert research concerning Plaintiff Croce's work and the particular artists in his collection, many of which are in catalogues raisonné of these artists (scholarly compilations of an artist's works in a catalogue relied on by Sotheby's and art world).  *See* International Foundation for Art Research, https://www.ifar.org/cat_rais.php.   The accurate valuations set forth in the First Amended Complaint, as will be proven at trial, are real, concrete values based on provenance and inclusion in the catalogues raisonné and expert research.  For instance, Plaintiff Croce provided a valuable letter from Sir Denis Mahon, the world's most prominent *Guercino* expert validating the value of this artist's works.  The letter was never returned to Plaintiff Croce by Sotheby's. Defendants therefore had in their possession valuable evidence confirming a valuation of Plaintiff Croce's artwork at the time of the October 2022 valuation.   [9]   The valuations above are not simply the biased disagreements of an amateur, but are the result of years of expert research on the artworks.   Because Sotheby's relies on the same scholarly materials, the devaluations presented in the October 2022 valuation and reproduced and published in June 2023 are meritless and indicate Defendants did not engage in a good faith valuation.

Defendants' meritless assertion that the valuations are merely estimates misses the point. First, as plead by Plaintiff Croce, the October 2022 valuations, reproduced in the 2023 valuation, were used to offer Plaintiff Croce a loan for $1.2 million dollars.  The October 2022 valuation is

---

[8] The October 2022 is entitled "Confidential" indicating that both parties agreed to keep the valuations confidential.
[9] The Mahon letter is very valuable and irreplaceable. Sir Denis Mahon died in April 2011.

contains the heading at the top of document:  "<u>Confidential</u>."   See Exhibit C, October 2022.  The

2022 valuations therefore were more than mere estimates—they were concrete, strictly

confidential valuations relied on by the Defendants to make a $1.2 million dollar offer . [10]

> ### 1.    *Plaintiff Has Plead Malice*

Defendants argue they had no motive to harm Plaintiff Croce's artwork.  The issue of

motive is a fact issue to be decided by the jury.   However, Rule 12 purposes, the question of

malice must be determined based four corners of the First Amended Complaint.   Plaintiff's First

Amended Complaint has plead several gross negligence claims showing Defendants were

reckless regarding the valuations, breach of confidentiality, and offering a loan based on less

than 50% LTV.   Both Ohio and New York law recognize that malice may be shown by gross

negligence or recklessness.  *Popovich v. Health-Regional*, 2020 Ohio Misc. LEXIS 3588

(Lorain Cty. Comm. Pleas October 1, 2020) ("Although the numerous definitions have caused

confusion as to what is required to prove actual malice, it is apparent from the case law that

actual malice can be placed in two general categories:  first, behavior characterized by hatred, ill

will, or a spirit of revenge and, second, extremely reckless behavior revealing a conscious

disregard for a great and obvious harm."); *Porter v. Forest Hills Care Ctr. LLC*, 2018 N.Y. Misc.

LEXIS 6745 (Queens Cty. Supreme Court, November 28, 2018, *2 ("gross negligence is defined

as conduct of an aggravated character which discloses a failure to exercise even slight

diligence").

---

[10] The October 2022 valuation terms and conditions refer to Sotheby's Financial Services, Inc., the financing entity.
The limitations or qualifications set forth the valuation refer to loan terms and not the actual valuations.   The
valuation were performed by Sotheby's and not Sotheby's Financial Services.   Both entities are jointly and
severally liable for the conduct of each Defendant.  As for valuations, Sotheby's promise that loans are completed in
30 days or less, suggests they could have confirmed title and provenance in a very short period of time and closed
the October 2022 $1.2 million offer.

The October 2022 valuations and their reproduction in the June 2023 valuation is certainly gross negligence. The 2022 valuations, as plead in the First Amended Complaint, ECF # 19, are so blatantly wrong as to indicate a gross failure of due diligence on Sotheby's part. As plead in the First Amended Complaint, the actual value of the artwork and Sotheby's erroneous valuations are so widely divergent that no reasonable valuator, such as Sotheby's, would give valuations so utterly wrong and erroneous if they had exercised a reasonable degree of diligence. Plaintiff Croce is entitled to fact discovery and expert opinion to establish at trial that the valuations are evidence of gross negligence and recklessness.

And finally, Plaintiff Croce does not need to be a professional appraiser in order to determine the value of artwork he is very familiar with. *See State v. Smith*, 2022-Ohio-4687, *p.41 (recognizing that courts allow "lay witnesses to express their opinions in areas in which it would be ordinarily be expected that an expert must be qualified under Evid. R. 702"); *State v. Baker*, 2020-Ohio-7023, *p.35 ("The Ohio Supreme Court has accepted the trend toward allowing lay witnesses to express their opinions in areas in which it would ordinarily be expected that an expert must be qualified under Evid.R.702"); *People v. Helms*, 119 A.D.3d 1153, 1154-1155 (N.Y. App. Div. 2014) (because witness was a frequent purchaser of jewelry, court found "opinion testimony by a lay witness is competent to establish the value of the property if the witness is acquainted with value of similar property").

Plaintiff Croce has been a collector, i.e., buyer and seller of Old Master art, for more than 50 years. As a long time and experienced collector/buyer/seller, he is extremely familiar with the value of Old Master paintings in general and certainly has knowledge about the artwork in his collection. He is also well acquainted and familiar with many of the most experienced and knowledgeable art historians in the world (Sotheby's also relies on them to determine artwork's

value and provenance).   Plaintiff Croce is consistently in contact with the world's foremost experts.   Given his decades of experience with Old Master art, he has ample knowledge and experience regarding the value of his Old Master artwork.  It is enough for Plaintiff Croce, who is a collector, seller and buyer of Old Master artworks, to assert a product disparagement claim and damages.

      *2.*     *Defendants' Negligent Valuations Are More Than Opinions/Estimates*

Defendants' attempt to convert their artwork valuations into mere "opinions" is undercut by their very own conduct.   The October 2022 valuation was used to offer Plaintiff Croce over a million dollars.   They were more than opinions.   "The dispositive inquiry [between fact and opinion] . . . is whether a reasonable [reader] could have concluded that [the statements were] conveying facts about the plaintiff."  *See Holliswood Owners Corp. v.  Rivera*, 145 A.D.3d 968, 969 (App. Div. 2nd Dept.  December 28, 2016); *Eros Intl. PLC v. Mangrove Partners*, 2019 N.Y. Misc. LEXIS 1010, *p. 10 (NY Sup. Ct. 2019) ("When . . . statement of opinion implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it, it is a 'mixed opinion' and is actionable") (quoting *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 289-290 (NY Ct. of App.).

In addition, the 2023 valuations are presented in judicial execution proceedings that the Court, attorneys, and the public will rely on as valid.   Anyone reading the judicial execution pleadings, which Defendants aided and abetted in the public disclosure of, will understand the values to be valid and sufficient to satisfy the judgment against Plaintiff Croce.

**H.     Plaintiff Croce Has Plead Cognizable Negligent Appraisal and Misrepresentation Claims Against The Defendants**

Defendants assert no special or fiduciary relationship exists between Plaintiff Croce and the Defendants.[11]  This action arises from a special relationship premised on the Defendants' knowledge that Plaintiff Croce would be influenced by the *valuations* and *strict confidentiality representations*.  The representations of confidentiality effectively created a contract type obligation.  Plaintiff Croce's expectation, based on Defendants' representations of privacy and a 50% LTV loan offer, was breached by Defendants.  This was <u>not</u> an arms-length transaction where no promises or representations were made.

**1.     *Fiduciary Relationship Is Established By The Facts and Circumstances of Trust and Confidence In This Case***

A fiduciary relationship may "arise de facto from an informal relationship if both parties understand that special trust or confidence has been reposed."  *See, generally*, *Cairins v. Ohio Sav. Bank* (1996), 109 Ohio App.3d 644, citing *Umbaugh Pole Bldg. Co. v. Scott* (1979) 58 Ohio St.2d 282, syllabus.  " [L]iability for negligent misrepresentation has been imposed only by those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with injured party such that reliance on the negligent misrepresentation is justified." *New York Disaster Intefaith Servs. Inc. v. Council of Peoples Org., Inc*., 2018 N.Y. Misc. LEXIS 152 * 19 (Jan. 18, 2018) (citing *Kimmel v. Schaefer*, 89 NY2d 257, 263 (1996);

Restatement of Law (Second) of Torts, § 552, Chapter 22 (2009) provides, in relevant part, that:

> (1) One who, in the course of his business, profession, or employment, or in any other transaction . . . supplies false information for the guidance of others . . .  is subject to liability for pecuniary loss caused by them by justifiable reliance upon the information . . .

---

[11] Sotheby's Financial Services, acting in concert and agreement, with Sotheby's is jointly and severally liable.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that the intends the information to influence or know that the recipient so intends or in a substantially similar transaction.

Defendants' relationship with Plaintiff Croce was not a simple arms-length transaction. As plead in the Original Complaint, ECF No. # 1, PAGEID# 4, 6, and 9, Paragraphs 12, 53, 63 and Proposed First Amended Complaint, ECF No. #16-1, Plaintiff Croce's allegations are sufficient to show the October 2022 false valuations, many of whom were reproduced in the June 2023 valuation, established a special relationship.   Defendants knew or should have known Plaintiff Croce would be influenced by and would rely on the valuations because the collateral loan was *dependent* on the valuations.  [12]  Indeed, the October 2022 valuation is entitled at the top of the document as "Confidential."  *See* October 2022 Valuation, Exh. C.

In the First Amended Complaint, Plaintiff Croce pleads numerous facts showing a special relationship between him and Defendants based on (1) Sotheby's expertise and prominence in the Old Master art market, (2) Sotheby's knew or should have known the valuations would influence Plaintiff Croce due to its reputation and prior course of dealings with him, (3) Sotheby's strict confidentiality representations made on their website regarding strict confidentiality and the designation of the October 2022 valuation as "Confidential," causing Plaintiff Croce to expect the valuations would never be disclosed to anyone other than himself,

---

[12] Plaintiff Croce initially trusted the October 2022 valuation.  He performed research and consulted sources regarding the valuations and discovered that the valuations were false.  Defendants contend that he was disappointed by the loan amount offered.   Plaintiff Croce's disappointment arises from the false valuations which were being used to encumber his assets for a loan amount substantially less than the promised 50% LTV.

and (4) Plaintiff Croce's reliance on Sotheby's guidance as to the value of his art work for collateral loan purposes.  *See* ECF # 19 PAGE ID #  179, 185-186, 123, ¶¶ 87, 88, 93, 118-121, 123.

Defendants' reliance on *Abercrombie v. Andrew Coll*., 438 F.Supp.2d 243 (S.D. N.Y. 2006) is misplaced for Rule 12 dismissal purposes.  The court in *Abercrombie* has held that where a fiduciary duty is plead, based on a special relationship of trust and confidence, dismissal by Rule 12 (b) (6) is not appropriate.  *Id* at 274.

In addition, the Defendants assert that no appraiser-client relationship existed, that mere access to the collection is not special relationship, and that Sotheby's reputation by itself does not create a fiduciary relationship misconstrues the First Amended Complaint.   These points taken out of context is contrary Rule 12 and applicable case law's requirement that allegations be construed in favor of the non-moving party.

First, an appraisal was performed for collateral purposes and Plaintiff Croce was the recipient of the appraisals and loan offer.  These facts are undisputed.  Second, the facts of *Foxley v. Sotheby's, Inc*., 893 F.Supp. 1224 (S.D.N.Y. 1995) are inapposite to the facts in the instant case.  In *Foxley*, the plaintiff brought a suit based on his purchase at a Sotheby's auction of a painting subsequently regarded as inauthentic.   The *Foxley* plaintiff sought to create a special relationship based on an arms-length buyer-seller relationship—not on an strictly confidential appraisal.   In the instant case, an appraisal occurred in order to lend money and such appraisal was to be held strictly confidential by Sotheby's.

Second, Sotheby's reputation alone is not sole basis for Plaintiff Croce's claims.  Sotheby's reputation, however, is inextricably tied to Plaintiff Croce and the public's belief in the accuracy of Sotheby's valuations and confidentiality representations.

In sum, the parties' relationship was built on trust and confidence in the Defendants' appraisal competence and a strict confidential relationship. Plaintiff Croce would never have disclosed his artwork to the Defendants if he knew they were going to aid and abet in the public disclosure of it. This was not an arms-length transaction, but instead is a relationship built on trust and the belief that the Defendants maintain confidentiality by protecting private valuation of his artwork. The disclosure of the valuations, which are themselves false, in a public court proceeding has caused substantial injury and harm.

**I.**     **Plaintiff Croce's Promissory Estoppel Pleads Sufficient Facts Showing the Claim Is Viable**

Contrary to the Defendants' assertion that no injustice will be suffered fails to recognize that the artwork is presently damaged as a result of the public disclosure of the confidential valuations. Presently, any art buyer who has access to the false valuations will use them to determine what the buyer should pay for them. An injustice to Plaintiff Croce, in addition to Sotheby's current and prospective customers, has indeed occurred if a major art appraiser, such as Sotheby's, can blatantly violate its confidentiality representations, ethical standards, and common business practice private transaction to make money as an auctioneer without the consent of artwork's owner. The cure is simple: hold Sotheby's and Sotheby's Financial Services legally responsible for breach of their promises.

Sotheby's also breached its promise to offer a collateral art loan in short period of time based on 50% LTV. Sotheby's represents to Plaintiff Croce and the public: "We pride ourselves in our ability to provide funds with unmatched speed. With our experience, in-house resources, and underwriting focused on the art alone, you can often access funds within a matter of days. Each consultation is confidential." See https://www.sothebys.com/en/art-financing/sothebys-financial-services.

The Defendants' mischaracterize the October 2022 valuation term sheet.  The term sheet language of "discussion purposes only" relates to the financial terms only—not the valuations. It also states content of the October 2022 valuation is "Confidential."   Plaintiff Croce relied on Sotheby's to his detriment since the valuations were not mere discussion items and certainly were not confidential as promised.

As noted earlier, Defendants, acting jointly, represented that the loan transaction process would be completed in a matter of days, which presupposes the valuations can be determined in short order also, since the loan offers are based on the valuations.   Most importantly, Plaintiff Croce is alleging the false, misleading valuations were motivated by Defendants' securitization plan. *See* Exhibit D, Articles on Sotheby's securitization plans.   Those plans require Defendants to present an investment product based on a low risk of asset devaluation by presenting a loan obtained based on less than 50% LTV.   Investors, realizing the hedge against risk, will be more attracted to the investment product.

**J.      Plaintiff Croce Plead Facts Establishing A Fraud Claim**

Plaintiff Croce has plead that Sotheby's and Sotheby's Financial Services are motivated to devalue the paintings in order to create a collateral loan with a less than 50% LTV.  Why? The motive is amply plead in the Complaint.   Defendants devalued the October 2022 valuations by less than 50% LTV in order to re-sell the loan as part of their securitization plans.   The originally devalued paintings valued in October 2022 for securitization purposes is now being auctioned off based on false and misleading valuations.

Plaintiff Croce relied on the misrepresentations as to the value of artwork and that such valuations would be kept strictly confidential.  This was very important to Plaintiff Croce because he may have elected to sell the property through Christie's or other dealers, who are

direct competitors of Sotheby's, for an accurate price. Defendants should have performed a bona-a-fide valuation of Plaintiff Croce's artwork—which was not performed—and obtained consent from him along with a protective order protecting against public disclosure. *See* Original Complaint, ECF No. # 1 and First Amended Complaint ECF No. # 19.

Plaintiff Croce reasonably relied on the misrepresentations. The misrepresentations were not sales puffery, but real, concrete misrepresentations calculated to induce Plaintiff Croce to enter into a loan deal and rely on the valuations as valid.

Further, Plaintiff Croce choose the Defendants because of their representation that the loan process would be quick. Time was of the essence given the potential judgment against him and the need to arrange for financing based on a true 50% LTV. Sotheby breached this promise to Plaintiff Croce. Sotheby's promises: "we aim to make funds available to our clients within one to two weeks after deal terms are agreed." *See* https://www.sothebys.com/en/about/services/sothebys-financial-services/faq#how-much-can-i-borrow-against-my-art. Plaintiff Croce would have accepted a collateral loan based on a true 50% LTV and received the funds quickly. The funds could have addressed the judgment before the execution process. If this Motion is overruled by the Court, Plaintiff Croce can conduct discovery concerning the reasons for Defendants not providing a 50% LTV offer within a matter of weeks.

### K. Plaintiff Has Adequately Pled a Lanham Act False Advertising Claim and Has Standing.

Plaintiff Croce has plead facts establishing a Landham Act false advertising claim against the Defendants. To state a false advertising claim under the Lanham Act, a plaintiff must allege: (1) the defendant made false or misleading statements of fact concerning his product or another's; (2) the statement actually or tends to deceive a substantial portion of the intended audience;

(3) the statement is material in that it will likely influence the deceived consumer's purchasing decisions; (4) the advertisements were introduced into interstate commerce; and (5) there is some causal link between the challenged statements and harm to the plaintiff. *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc*., 185 F.3d 606, 613 (6th Cir. 1999).

Applying these elements to the First Amended Complaint, Plaintiff Croce alleges that the Defendants made false statements in advertising their loan terms and strict confidentiality of their art valuation services, including false statements about loan-to-value requirements. *See* First Am. Compl. ¶¶ 156-157, ECF # 19, PAGEID #292-293. These deceptive statements, made on the Defendants' website and in documents provided to the Plaintiff, materially influenced Plaintiff's decision to seek a loan from Defendants and deceived a substantial portion of the audience. Id. ¶¶ 157-159, PAGEID # 293. Defendants caused these false statements to enter interstate commerce through their website and documents provided across state lines. Id. ¶¶ 158, 161, PAGEID # 293. As a direct result, Plaintiff suffered injury, including undervaluation of his art collection, inability to obtain the expected loan amount, damage to his collection's public perception, and the loss of alternative financing opportunities. Id. ¶¶ 163-164, PAGEID # 293.

### 1. *Plaintiff Has Standing To Bring A Lanham Act Claim*

Defendants argue Plaintiff Croce lacks standing because, as an art collector, his claims fall outside the Lanham Act's zone of interests. However, this ignores the well-pled allegations establishing the Plaintiff's standing. The Complaint expressly alleges Plaintiff is a "world renowned cancer scientist and collector/**seller** of art internationally." ECF # 19, First Am. Compl. ¶ 6, PAGEID # 264 (**emphasis added**). At this stage, the Court must accept this factual allegation as true. Thus, for purposes of this motion, the Plaintiff must be considered as a

business engaged in the sale of artwork that has suffered commercial and competitive injuries from Defendants' alleged false advertising.

The Lanham Act provides a cause of action for "businesses that suffer commercial injuries (such as lost product sales) from the challenged false advertising." *Lewis v. Acuity Real Est. Servs*., LLC, 63 F.4th 1114, 1116 (6th Cir. 2023). Although facially the Lanham Act might be read to allow any party who has been injured by "false advertising" to sue, the private right of action considered by the Lanham Act is only for injuries suffered by plaintiffs whose interests are "within the zone of interests" that the law protects. Id. at 1118. The "intent" of the Lanham act was to "protect persons engaged in [interstate] commerce against unfair competition." Id., quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131 (2014). Here, the First Amended Complaint alleges Defendants' false statements about their art valuation and financing services caused Plaintiff's own art collection to be undervalued in the market, impairing his ability to sell the works at their true value. First Am. Compl. ¶¶ 163-164, 169, ECF #19, PAGEID # 293, 294. These are quintessential commercial injuries falling squarely within the Lanham Act's zone of interests.

As a buyer-seller of Old Master artworks, Plaintiff Croce is not a mere consumer of the Defendants' services. Rather, he is a market participant whose own sales and commercial interests have been damaged by the alleged false advertising. Several cases recognize this key distinction. For example, in *De Sole v. Knoedler Gallery, LLC*, the court distinguished between the plaintiffs, who were "consumers" that merely bought art, and the defendant, an "art gallery" that was "in the business of buying and selling art." 139 F. Supp. 3d 618 (S.D.N.Y. 2015).

A private collector who regularly buys and sells artwork for profit is properly considered a business rather than a consumer. This is based on factors such as: (1) profit motive, (2) regular

activity, (3) market participation, (4) commercial scale, (5) business expenses, (6) reputation and goodwill, and (7) tax treatment.   By actively and consistently trading art with the intent to generate income, such a collector directly participates in the market and their commercial interests can be impacted by the conduct of industry players.  Plaintiff Croce has historically purchased, sold and collected over $30 million in Old Master art and has maintained his vast collection by profiting from the sale of artwork in order to replace them with new pieces of art. He is well known in Old Master art circles as he has numerous contacts with art scholars and regularly travels around the world to pursue Old Master artwork.

The detailed factual allegations, accepted as true at this stage, are sufficient to establish Plaintiff's standing and state a plausible Lanham Act false advertising claim. Plaintiff is a market participant who was directly misled and commercially harmed by Defendants' alleged false statements about their art financing and valuation services. These facts place Plaintiff's interests squarely within the Lanham Act's zone of interests in protecting persons engaged in commerce from unfair competition. Therefore, the Court should deny Defendants' motion to dismiss this claim.

## III.    CONCLUSION

Based on the forgoing, Plaintiff Croce respectfully requests the Defendants' Motion To Dismiss be dismissed.

Respectfully Submitted,

/s/ William W. Patmon III
William W. Patmon III (0062204)
The Patmon Law Firm LLC
4200 Regent Street Suite 200
Columbus, Ohio 43219
Phone: (614) 944-5786
Fax: (614) 448-4393
wpatmon@patmonlaw.com
*Attorney for Plaintiff Carlo Croce*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing has been electronically filed this 24th day of April, 2024. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's CM/ECF system.

/s/ William W.  Patmon III
Counsel for Plaintiff Carlo M. Croce