IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CARLO M. CROCE | Case No. 2:23-cv-02896 |
| Plaintiff, | Judge Morrison |
| vs. | Magistrate Judge Vascura |
| SOTHEBY'S FINANCIAL SERVICES, INC., et al. | |
| Defendants. | |

**PLAINTIFF CROCE'S MEMORANDUM IN OPPOSITION TO THE DEFENDANTS'
<u>MOTION TO FILE A SUR-REPLY</u>**

Defendants request to file a Sur-Reply is without merit and is simply a veiled attempt to re-argue their Opposition Memorandum in response to Plaintiff's Motion To Amend and File the Proposed Second Amended Complaint. Plaintiff's Reply Memorandum contains no new arguments or theories of liability—except for new events (after the First Amended Complaint) and clarification of already plead causes of action. There are no surprises contained in the Reply Memorandum and in the Proposed Second Amended Complaint.[1] Defendants' Sur-Reply motion is really an effort to get a second bite at the apple after the closure of pleading on the motion.

Plaintiff Croce will address each argument presented by Defendants to show that no new ground except the September 4, 2024 depressed sale of *Guercino Man With A Turban* artwork, an event that could not have been plead in the First Amended Complaint because it had no

---

[1] Rule 15 permits new facts and claims be plead in an Amended Complaint. The arguments presented in the Reply Memorandum are presented in the Proposed Second Amended Complaint which was attached the Motion to Amend. The Reply Memorandum are supported by both the Motion and Proposed Second Amended Complaint, which contains the new allegations supporting already plead claims.

happened yet, and a clarification of Plaintiff's Lanham Act claims are not a surprise to the Defendants, particularly as they largely relate to the September 4 sale of the *Guercino* artwork.

## I. PLAINTIFF CROCE HAS ALWAYS OBJECTED TO THE JUDGEMENT AND EXECUTION PROCESS AND HAS BEEN FORCED TO PARTICIPATE

Plaintiff Croce, as a judgment debtor, is compelled to satisfy the Judgement. Defendants' suggestion that his participation in some way equals consent to the sale of his property based on a negligent and misleading valuation pricing well below the actual value is a fantastical argument. Plaintiff Croce was forced to participate in the judgment liquidation of his artwork. Nothing in the judgment and execution process of any debtor can be construed as consensual.

As for the selection of the *Guercino Man With Turban* artwork, he participated in the selection by Receiver because he believed the artwork was worth in excess of $500,000 and that the sale would "fully" satisfy the judgment against him. The fact that Plaintiff Croce was forced against his will to participate in the auction sale, believing it was worth significantly more than Defendant Sotheby's valuation and pricing, actually supports the claims plead in the Original, First Amended Complaint and Proposed Second Amended Complaint: Sotheby's has failed to properly value his artwork and disparaged the value of the artwork by publicizing the erroneous valuations. This is exactly what occurred in connection with September 4, 2024 auction in London, UK. In sum, the auction was a continuation of Sotheby's misconduct culminating in the a loss of value of over $250,000 (Croce originally paid $350,000).

### *The Sale of Guercino Has Depressed The Value of Guercino artwork*

It is axiomatic in the art market that the sale of a piece art for substantially less than it actual value negatively affects the market for a particular artist. As a prominent art sales platform, RevArt explains how a "bad sale" can affect the market for an artist's work:

> "The past sales and auction records of your artwork can influence its current and future value. When an artwork achieves a high price at auction or sells well in previous exhibitions, it establishes a track record of success. This history of sales and recognition can enhance the perceived value of your art and attract potential buyers. As an artist, it is crucial to keep track of your sales and leverage past successes to build credibility and increase the value of your artwork."

(https://revart.co/blogs/101_Ten_factors_that_will_influence_your_art_value). ("Previous sales records provide a benchmark. Artworks from artists with a history of high sales will likely command higher prices.")( https://americascollection.com/art-collecting-and-investment/what-gives-an-artwork-its-value/); (https://artbidy.com/en/about-us/news/the-role-of-artwork-valuations-in-the-art-world-why-precise-appraisal-is-crucial (incorrect valuations can adversely affect market for an artist).

Defendant Sotheby's confirmed the provenance of the artwork as an early work of the artist called *Guercino*. Given the confirmation that the artwork was part of a "very valuable" art produced by *Guercino* in the 1600s, Defendant Sotheby's should have priced the artwork substantially higher. The effect of mispricing the artwork and publicly advertising the misprice certainly affected the sale on September 4, 2024 and will negatively affect *Guercino* artwork of the similar provenance as the *Guercino Man With Turban* artwork (artwork from *Guercino's* early years).

Defendant Sotheby's pre-sale dissemination of false and misleading pricing, despite confirming the provenance of the artwork, is ample evidence of how false and misleading advertising negatively affects the market for *Guercino* artwork. Without Defendant Sotheby's intervening misconduct, any loss suffered by Plaintiff Croce would simply be a loss on an investment. By disseminating false and misleading pricing (based on a negligent appraisal), however, the "market" was negatively affected and the consequence was a sale well below the true value of the artwork.

***Defendant Sotheby's Participation In The Judicial Sale Process Supports The Claims In This Case***

Defendant Sotheby breached its duty to keep the valuations of Plaintiff Croce's art work strictly confidential. While Defendant Sotheby's was subpoenaed to produce information, the decision to assist the Receiver by participating in the judicial execution process was voluntary and was not compelled by the subpoena. Defendant Sotheby's could have simply refused to participate, but it did not. Defendant Sotheby's, not the judgment creditor/receiver, owed a duty to Plaintiff Croce and breached that duty by actively participating in the publication and sale of Plaintiff's artwork.

## II. PLAINTIFF CROCE'S AFFIDAVIT DOES NOT MISTATE ANY MATERIAL FACT

The fact that Plaintiff Croce forcibly participated the judgment execution of the *Guercino Man With Turban* artwork, a compulsory process, does not mean he consented to the mispricing and depressed sale of his artwork. Defendants' assertion that Plaintiff Croce's forced participation in the judgment execution process equals consent to have his artwork sold, based on false and misleading valuation and pricing, does not comport with reality. No judgment debtor, who is forced to sell precious assets, and who is ordered to participate by a court, can be said to voluntarily "agree" to a false and misleading price of an asset, resulting in substantial loss to the judgment debtor.

## III. Product Disparagement and Lanham Act Claims

Contrary to Defendants' argument, the clarification of already plead claims is not "new" where it is based on new events (that occurred after the First Amended Complaint) and where such clarification of a theory of liability flows from already existing claims. In reality, Plaintiff Croce's Reply Memorandum merely addressed arguments put forth by Defendants themselves.

The Reply Memorandum should not be construed as "new" and certainly the Proposed Second Amended Complaint only clarifies already existing claims and only adds facts and claims arising from the September 4, 2024 London sale, an event that occurred after the First Amended Complaint was filed.  Defendants are aware of material facts plead in the Second Amended Complaint (i.e., September 4, 2025 auction, sale of Guercino at less than actual value).

Based on the forgoing, Plaintiff Croce respectfully requests that Defendants' Motion to File A Sur-Reply be denied.

                                                Respectfully Submitted,

                                                /s/ William W. Patmon III
William W. Patmon III (0062204)
The Patmon Law Firm LLC
4200 Regent Street Suite 200
Columbus, Ohio 43219
Phone: (614) 944-5786
Fax: (614) 448-4393
wpatmon@patmonlaw.com
*Attorney for Plaintiff Carlo M. Croce*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing has been electronically filed this 29th day of January, 2025. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's CM/ECF system.

/s/ William W. Patmon III
Counsel for Plaintiff Carlo M. Croce