## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**CARLO M. CROCE,**

           **Plaintiff,**        :

    **v.**

**SOTHEBY'S FINANCIAL
SERVICES INC,** *et al.,*        :

        **Defendants.**

**Case No. 2:23-cv-2896
Chief Judge Sarah D. Morrison
Magistrate Judge Chelsey M.
Vascura**

## <u>OPINION AND ORDER</u>

A cancer researcher by day, Carlo Croce, M.D., is also an avid collector of artworks by Europe's "Old Masters." After the Franklin County Court of Common Pleas entered a million-dollar judgment against him, Dr. Croce was forced to consider parting with the art in his collection or using it as loan collateral. But when neither Sotheby's Financial Services Inc. nor Sotheby's Inc. agreed with Dr. Croce's opinion of the artworks' value, Dr. Croce brought suit. The matter is now before the Court on Defendants' Motion to Dismiss the Amended Complaint (ECF No. 24), Dr. Croce's Motion for Leave to File a Second Amended Complaint (ECF No. 43), and Defendants' Motion for Leave to File a Sur-Reply (ECF No. 49). All three motions are **GRANTED** and this action is **DISMISSED**.

## I.     MOTION FOR LEAVE TO AMEND

In November 2024, Dr. Croce moved for leave to file a Second Amended Complaint. (ECF No. 43.) Defendants responded in opposition (ECF No. 44), Dr. Croce replied (ECF No. 47), and Defendants filed a Sur-Reply (ECF No. 49-1).[1]

When a party seeks leave to file an amended pleading, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P 15(a)(2). Rule 15(a)(2) reflects a liberal policy in favor of granting amendments and "reinforce[s] the principle that cases 'should be tried on their merits rather than the technicalities of pleadings.'" *Inge v. Rock Fin. Corp.*, 388 F.3d 930, 936 (6th Cir. 2004) (quoting *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986)). Thus, trial courts enjoy broad discretion in deciding motions for leave to amend. *See Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990). In exercising its discretion, a trial court may consider "undue delay, bad faith or dilatory motive on the part of a movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). If a party moves to amend after the deadline established in a scheduling order, he must first "meet the higher threshold for modifying a scheduling order found in Rule 16(b)." *Shane v. Bunzl Distrib. USA, Inc.*, 275 F. App'x 535, 536 (6th Cir. 2008). The movant must "show good cause . . . for the failure to seek leave to amend prior to the

---

[1] Defendants moved for leave to file a sur-reply. (ECF No 49.) That motion is **GRANTED.**

2

expiration of the deadline before [the court] will consider whether the amendment is proper under Rule 15(a)." *Hill v. Banks*, 85 F. App'x 432, 433 (6th Cir. 2003).

Dr. Croce moved for leave to file his Second Amended Complaint after the deadline established in the case management schedule but his proposed Second Amended Complaint differs from the First Amended Complaint in limited, discrete ways. (*See* ECF Nos. 29, 43.) Foremost, the Second Amended Complaint includes facts about an auction scheduled to take place on December 4, 2024—the planning and execution of which post-date the amendment deadline. (*See, e.g.*, SAC, ECF No. 43-1, ¶¶ 84–85, 122, 135, 156, 173.) Otherwise, the Second Amended Complaint either reiterates already-pleaded facts or adds legal argument masquerading as fact. The Second Amended Complaint does not add claims or new theories to support existing claims. Because the Court finds good cause to accept the Second Amended Complaint, even after the expiration of the deadline, the Motion for Leave to File is **GRANTED**.

## II.   **MOTION TO DISMISS**

Eight months before Dr. Croce filed his Second Amended Complaint, Defendants moved to dismiss the First Amended Complaint. (ECF No. 24.) Given the minimal differences between the two iterations of Dr. Croce's pleadings, the Court construes the motion as one to dismiss the Second Amended Complaint. *See Yates v. Applied Performance Tech., Inc.*, 205 F.R.D. 497, 499–500 (S.D. Ohio 2002) (Holschuh, J.) (explaining that defendants should not have to file a new motion to dismiss just because an amended complaint was introduced while their motion was

pending, particularly when the amended complaint suffers from the same defects as the original) (citations omitted). For the reasons below, that motion is **GRANTED**.

### A.    FACTUAL BACKGROUND

#### 1.    In 2022, a jury found Dr. Croce liable to KBHR for more than $1 million in unpaid legal fees.

In June 2020, the law firm of Kegler Brown Hill & Ritter ("KBHR") sued Dr. Croce, its former client, to recover unpaid fees. *See Kegler Brown Hill & Ritter Co., L.P.A. v. Croce*, Case No. 20CV003954 (Franklin Cnty. C.P., Compl., June 18, 2020). After a jury found for KBHR, the court entered judgment against Dr. Croce in the amount of $1,098,642.80. *Id.* (J., Dec. 8, 2022).

#### 2.    Dr. Croce applied for a $3 million art-backed loan from Sotheby's Financial Services.

In August of 2022, Dr. Croce approached Sotheby's Financial Services seeking a $3 million loan secured by certain pieces from his Old Masters collection. (SAC, ¶¶ 11, 20.) Two months later, Sotheby's Financial Services delivered a Draft Summary of Indicative Terms and Conditions (the "Term Sheet") outlining the key terms of a proposed loan using twelve of Dr. Croce's artworks as collateral. (Term Sheet, ECF No. 24-1.[2] *See also* SAC, ¶ 28.) Sotheby's Financial Services found that the twelve pieces had a "minimum low auction estimate" of $2.51 million and offered Dr. Croce a loan for half of that amount, or $1.255 million. (Term Sheet;

---

[2] A portion of the Term Sheet is attached to Dr. Croce's original Complaint. (*See* ECF No. 1-2.) The Term Sheet is referenced throughout the Second Amended Complaint and is integral to Dr. Croce's claims. The Court may thus consider the full Term Sheet without converting the Motion to Dismiss into a motion for summary judgment. *See Com. Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007).

SAC, ¶ 27.) Dr. Croce disagreed with the estimates given to several pieces, including *Man with Turban* by Giovanni Francesco Barbieri (known as Il Guercino), which he believes should be much higher. (SAC, ¶¶ 33–43.) Although Dr. Croce and Sotheby's Financial Services engaged in further discussions and negotiation about an art-backed loan, no agreement was ever reached. (*See id.*, ¶¶ 77–78.)

### 3. KBHR obtained a writ of execution to sell Dr. Croce's artworks.

Pursuant to a writ of execution issued by the Court of Common Pleas, the Franklin County Sheriff entered Dr. Croce's home in the summer of 2023 to seize and tag personal property, including his collection of Old Masters art. *See Kegler Brown Hill & Ritter Co., L.P.A. v. Croce*, Case No. 23EX000125 (Franklin Cnty. C.P., Decision filed Sept. 18, 2023). KBHR asked the court to allow Sotheby's, a fine art auction house whose "Old Masters team has been the dominant force in the market for a generation," to sell the seized works. *Id.* (Mot. filed July 31, 2023; Reply filed Aug. 21, 2023). KBHR's Motion included an "Auction Estimate for Sotheby's Financial Services Collateral Loan" dated June 13, 2023 (the "2023 Valuation"), which had apparently been prepared for Dr. Croce. *Id.* (Mot. Ex. 2 filed July 31, 2023). (*See also* 2023 Valuation, ECF No. 1-1; SAC, ¶¶ 76, 83.) Dr. Croce again disagreed with the auction estimates. (*See, e.g.*, SAC, ¶¶ 82–83, 120.)

### 4. Sotheby's offers *Man with Turban* at a December 4, 2024 auction.

After withdrawing the work from a July 2024 auction, Sotheby's offered *Man with Turban* for sale in a December 4, 2024 auction. (*Id.*, ¶¶ 84–85, 90 n.1.)

Sotheby's listed the painting with an estimated value of $80,000–100,000. (*Id.*, ¶ 85; *see also* ECF No. 43-3.) Dr. Croce alleges that the painting's "actual value" is "$1 million plus." (SAC, ¶ 87.) In his view, several pieces of "evidence" support this "actual" valuation, including: other recent Guercino sales, a letter by a now-deceased Guercino expert who opines on the attribution and provenance of the piece, and a treatise on paintings by Guercino. (*See, e.g., id.*, ¶¶ 35, 37, 89–90, 93, 98, 123.) As of the filing of the Second Amended Complaint, *Man with Turban* had not been sold. The parties acknowledge in briefing, however, that *Man with Turban* sold on December 4, 2024, for $120,000. (*See* ECF No. 44, PAGEID # 607; ECF No. 47, PAGEID # 674)

## B. PROCEDURAL BACKGROUND

Dr. Croce first filed this action in September 2023. (ECF No. 1.) In the operative Second Amended Complaint, he asserts seven claims against Defendants, which he alleges "acted in concert and under the same control" at all times throughout "the valuation and collateral art loan process." (SAC, ¶ 9.)

Claim I: Product Disparagement. In his first claim, Dr. Croce alleges that Defendants "made false and erroneous statements and conclusions about the value and provenance of Croce's works of art" in both the collateral loan process and the judgment debtor proceedings. (*Id.*, ¶ 116.)

Claim II: Negligent Appraisal and Ethics Violations. Dr. Croce next alleges Defendants negligently appraised his art by failing to perform adequate research into the art's value "and by disregarding the evidence by Croce establishing their

value and provenance." (*Id.*, ¶ 136.) Dr. Croce's second claim also encompasses allegations that Defendants violated the Uniform Standards of Professional Appraisal Practice pertaining to confidentiality and conflicts of interest when they disclosed valuation information to KBHR and agreed to auction the seized art.

<u>Claim III: Negligent Misrepresentation</u>. This third claim challenges Defendants' "erroneous" and "false" valuation information. (*Id.*, ¶¶ 147, 149.)

<u>Claim IV: Promissory Estoppel</u>. Here, Dr. Croce alleges that Defendants should be held to a number of "broken promises," including that (i) "the loan process would be completed in at least 30 days," (ii) the loan amount offered "would be based on a true 50%" loan-to-value, (iii) "valuations would be accurate," (iv) they "would act ethically" and refrain from conflicts of interest, and (v) "private client dealings, including appraisals and loans, would be strictly confidential." (*Id.*, ¶¶ 152–53.)

<u>Claim V: Fraud and Intentional Misrepresentation</u>. Dr. Croce's fifth claim takes aim at both the valuations of his Old Masters art and Sotheby's Financial Services' representations about the terms of its collateralized art loans. (*See id.*, ¶¶ 166, 169.)

<u>Claim VI: False Advertising under the Lanham Act (15 U.S.C. § 1125)</u>. Dr. Croce next asserts that Defendants falsely advertised their "loan terms and art valuation services." (SAC, ¶ 181.) He further alleges that the *Man with Turban* listing falsely devalues the piece. (*Id.*, ¶ 184.)

Claim VII: Misrepresentation of Art Collection Valuation. Finally, Dr. Croce asserts an independent claim for Defendants' alleged misrepresentation of the value of his Old Masters collection. (*Id.*, ¶ 196.)

Defendants move to dismiss the Second Amended Complaint for failure to allege standing and failure to state a claim. (ECF No. 24 (citing Fed. R. Civ. P 12(b)(1), (b)(6).)

## C.    RULE 12(B)(1) – SUBJECT MATTER JURISDICTION

Rule 12(b)(1) provides for dismissal when the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack "questions merely the sufficiency of the pleading[,]" so the trial court takes the allegations of the complaint as true. *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016) (internal quotation marks omitted). To survive a facial attack, the complaint must contain a short and plain statement of the grounds for jurisdiction. *Id.* A factual attack is a challenge to the factual existence of subject matter jurisdiction. No presumption of truth applies to the factual allegations. *Glob. Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co., Ltd.*, 807 F.3d 806, 810 (6th Cir. 2015). When subject matter jurisdiction is challenged, "the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

A federal court's jurisdiction is confined to "Cases" and "Controversies." U.S. CONST. ART. III, § 1. Cases and controversies "of the justiciable sort" are those in

which the plaintiff demonstrates "standing." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The Supreme Court has long recognized "that the irreducible constitutional minimum of standing contains three elements." *Id.* "First and foremost," the plaintiff must show an injury-in-fact that is concrete and particularized. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 103 (1998)). Second, he must show that the injury was caused by the conduct complained of. *Lujan*, 504 U.S. at 560. And, third, he must show that the injury is redressable by a favorable decision. *Id.* at 560–61. The plaintiff must establish Article III standing "in the same way as any other matter on which the plaintiff bears the burden of proof." *Ward v. Nat'l Patient Acct. Servs. Sols., Inc.*, 9 F.4th 357, 360–61 (6th Cir. 2021) (quoting *Lujan*, 504 U.S. at 561).

Defendants argue that Dr. Croce fails to show an injury-in-fact. (ECF No. 24, PAGEID # 313; ECF No. 39, PAGEID # 520.) Dr. Croce counters that he has suffered injury, citing: (i) Sotheby's Financial Services' failure to loan him $3 million loan within 30 days of contacting the firm; (ii) publication of the 2023 Valuation, which he understood to be confidential; and (iii) a diminution in value of the artwork.[3] (ECF No. 30, 13–14.)

---

[3] The parties give unfortunately short shrift to the question of standing. For example, Defendants do not specify whether their attack is a facial one or factual. And neither party offers case law to support their respective positions. The Court cannot take the issue so lightly—without subject matter jurisdiction, it has no authority to hear any part of the case or make any decision on the merits. *Fair Housing Ctr. of Metro. Detroit v. Singh Senior Living*, 124 F. 4th 990, 992 (6th Cir. 2025) (citing *Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 531 (6th Cir. 2002)); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (federal

Generously construed, the first injury is analogous to a loan application being denied, which is "a harm in the 'dollars-and-cents sense of the term.'" *Fillinger v. Third Fed. Sav. & Loan Ass'n*, No. 21-3088, 2021 WL 6200498, at *2 (6th Cir. Nov. 16, 2021) (quoting *Huff v. TeleCheck Servs. Inc.*, 923 F.3d 458, 462 (6th Cir. 2019)). Dr. Croce thus has standing to assert claims arising out of the art-backed loan process.

Although separately cast, the second and third alleged injuries are one and the same. Dr. Croce does not allege that Defendants breached any contract of confidentiality when they disclosed the 2023 Valuation to KBHR (who went on to file it on the public docket in the judgment debtor action). Instead, his position is that the 2023 Valuation's disclosure was injurious to him because it may diminish the market value of the appraised pieces. (*See* SAC, ¶¶ 57, 86, 100, 120, 125–26.)

Except as to *Man with Turban*, which has been sold for less than Dr. Croce believes it was worth, Dr. Croce lacks standing to sue for the alleged diminution in value of his art. First, the diminution is not sufficiently concrete to confer standing. That is because "a plaintiff lacks standing when the alleged injury is dependent upon the perceived risk of future actions [by] third parties not before the Court." *Key v. DSW, Inc.*, 454 F. Supp. 2d 684, 689 (S.D. Ohio 2006) (Frost, J.) (citing *Lujan*, 504 U.S. at 564). Dr. Croce alleges that "in all likelihood, [he] will not be able to sale [*sic*] the art work based on its 'true' value, or use it [to] obtain a collateral loan consistent with the 'true' value of the art." (SAC, ¶ 57.) Thus the prospect of any

courts are "courts of limited jurisdiction" that "possess only that power authorized by Constitution and statute").

10

"dollars-and-cents" injury is remote, speculative, and indefinite—and cannot predicate a justiciable controversy. And even if the artworks' diminution in value were an injury-in-fact, Dr. Croce does not show that the injury was caused by Defendants' conduct. For example, if the art in the 2023 Valuation is ever sold, Dr. Croce cannot be certain of the eventual buyer's motivations—conditions general to the market and specific to the artwork itself would influence the final sale price. Even Dr. Croce admits that art occasionally sells for far more than an auctioneer estimates. An article attached to his Second Amended Complaint discusses a suspected Guercino painting that "far surpassed is €5,000–6,000 ($5,175–6,200) estimate to fetch a dizzying hammer price of €590,000 ($610,000)." (ECF No. 43-5, PAGEID # 601.)

Dr. Croce's case arises in a unique context: He has been forced to let someone else sell his high-value assets. But the Court's conclusion that he lacks standing to assert claims based on the value of art that has not yet sold is in line with decisions from other, less unique contexts. For example, in *Tingley v. Beazer Homes Corp.*, the plaintiffs challenged practices that led to "widespread foreclosures" in their neighborhood, which devalued the surrounding homes and "caused [p]laintiffs' home to abnormally depreciate." No 3:07cv176, 2008 WL 1902108, at *1 (W.D. N.C. Apr. 25, 2008). The court found that the Tingleys would realize harm only if they sold their home, *id.*, at *4 n.5, and that the value of their home bore only a "tenuous" connection with the defendants' actions, *id.*, at *4. *See also Gibson v. Credit Suisse AG*, 787 F. Supp. 2d 1123, 1129 (D. Idaho 2011) (explaining that "losses in value to

property are too conjectural and unascertainable to satisfy the injury in fact requirement . . . unless and until the property is sold"); *but see Maya v. Centex Corp.*, 658 F.3d 1060, 1072 (9th Cir. 2011) (concluding that diminution in value of one's home is a concrete injury, even absent an attempt to sell).

And in *Sanner v. Board of Trade of City of Chicago*, the Seventh Circuit examined whether soybean farmers had standing to sue the Board of Trade for a 1989 Resolution that artificially depressed soybean prices. 62 F.3d 918 (7th Cir. 1995). Among the farmers, "some assert[ed] that the depressed price of soybeans caused them to refrain from selling soybeans. Others complain[ed] of being forced to sell soybeans at a depressed price." *Id.* at 923. The court had "little difficulty concluding" that the farmers who refrained from selling soybeans during the relevant period lacked standing—they could neither allege nor prove that "the injury of which [they] complain[ed was] 'fairly traceable' to the challenged conduct of the defendants." *Id.* at 923–24.

What remains are Dr. Croce's claims based on his pursuit of an art-backed loan from Defendants and the alleged diminution in value of *Man with Turban*.

### D. RULE 12(B)(6) – FAILURE TO STATE A CLAIM

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal alteration and quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Id.* (citing *Twombly,* 550 U.S. at 555.) "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In reviewing a motion to dismiss, the Court "construe[s] the complaint in the light most favorable to the plaintiff[.]" *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

The Court must first determine which state's substantive law applies. That decision is made by reference to Ohio's choice-of-law rules. *Miller v. State Farm Mut. Auto. Ins. Co.*, 87 F.3d 822, 824 (6th Cir. 1996). Defendants argue that claims arising from Dr. Croce's art-backed loan application should be analyzed under New York law because the Term Sheet identifies New York as the governing law. (Term Sheet, PAGEID # 334.) As Defendants note, Ohio courts generally enforce contracting parties' choice of governing law. *See Bridgestone Am. Tire Ops., LLC v. Harris*, 150 N.E.3d 1270, 1281–82 (Ohio Ct. App. 2020), *appeal not allowed*, 144

13

N.E.3d 445 (Table) (Ohio 2020). But the Term Sheet was, emphatically, not a contract:

> This [Term Sheet] is provided for discussion purposes only and does not constitute an agreement by Sotheby's Financial Services, Inc. ("SFS") or any of its affiliates or subsidiaries to negotiate, or a commitment to lend, or an agreement to issue any such commitment, nor does it create any binding or enforceable obligation on SFS or any of its affiliates or subsidiaries.

(Term Sheet, PAGEID # 332.) The Term Sheet is more accurately read as a proposal that any resulting loan and security agreement would be governed by New York law. With no other reason[4] to look at New York law, the Court will apply Ohio's. *Cf. Wilkes Assocs. v. Hollander Indus. Corp.*, 144 F. Supp. 2d 944, 949 n.4 (S.D. Ohio 2001) ("Where neither party argues that the forum state's choice-of-law rules require the court to apply the substantive law of another state, the court should apply the forum state's substantive law.") (citation and quotation omitted).

### 1. Claim I: Product Disparagement

In Claim I, Dr. Croce alleges that Defendants disparaged his artworks by making false statements about the works' value. Although Dr. Croce's intent is somewhat unclear, the Court construes the claim as one for defamation.[5] *See Accelerated Moving and Storage v. Herc Rentals, Inc.*, 2022 WL 3907764 (Ohio Ct. App. Aug. 30, 2022) (comparing Ohio's statutory claim for commercial

---

[4] Dr. Croce does not respond on the choice-of-law issue, offering instead a medley of cases from New York and Ohio. (*See* ECF 30, *generally*.)

[5] Defendants move to dismiss Claim I by analyzing the relevant allegations under Ohio's test for "common-law libel." (ECF No. 24, PAGEID # 319.) Dr. Croce does not challenge Defendants' framing. (*See* ECF No. 30, 15–19.)

disparagement, common-law claim for slander of title, and common-law claim for libel). "A cause of action for defamation consists of five elements: (1) a false and defamatory statement, (2) about plaintiff, (3) published without privilege to a third party, (4) with fault of at least negligence on the part of the defendant, and (5) that was either defamatory *per se* or caused special harm to the plaintiff." *Gosden v. Louis*, 687 N.E.2d 481, 488 (Ohio Ct. App. 1996). "For a statement to be defamatory, it must be a statement of fact and not of opinion." *Brown v. Lawson*, 863 N.E.2d 215, 220 (Ohio Ct. App. 2006) (citing *Vail v. The Plain Dealer Publ'g Co.*, 649 N.E.2d 182, 184 (Ohio 1995)).

Defendants argue that the auction estimates prepared for Dr. Croce's art-backed loan application and the *Man with Turban* sale cannot form the basis of a defamation claim because they are not statements of fact. The Court agrees. Ohio courts consider the totality of the circumstances in deciding whether a statement is one of fact or opinion. *Bentkowski v. Scene Mag.*, 637 F.3d 689, 693–94 (6th Cir. 2011) (applying Ohio law). The auction estimates included in the Term Sheet, the 2023 Valuation, and the *Man with Turban* listing are expressed as a range. The 2023 Valuation disclaims the estimates as "approximate" figures that are "preliminary only and subject to change." (*See* 2023 Valuation, PAGEID # 22.) And in every instance, the figure is labeled as an "estimate." True, the estimate is a product of Defendants' expert judgment, but it is unverifiable (except with *post hoc* reference to a final hammer price) and subject to change based on a number of factors. Defendants' estimates as to the auction price of Dr. Croce's art—whether

used to determine the amount Sotheby's Financial Services would be willing to lend Dr. Croce, or to market *Man with Turban*—cannot form the basis of a defamation claim.

The Motion to Dismiss is **GRANTED** as to Claim I.

### 2. Claim II: Negligent Appraisal/Ethics Violations

Dr. Croce next asserts a claim of "negligent appraisal/ethics violation." The Court finds no such claim in the annals of Ohio law, but in view of Dr. Croce's reference to Restatement (Second) of Torts § 552, will construe Claim II as one for negligent misrepresentation.[6] In Ohio, a claim for negligent misrepresentation lies when:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Delman v. City of Cleveland Heights*, 534 N.E.2d 835, 838 (1989) (emphasis omitted) (quoting Restatement (Second) of Torts § 552(1) (Am. L. Inst. 1965)).

Claim II centers on Dr. Croce's allegation that Defendants failed to perform adequate research into his art's value in developing the auction estimates. But as Defendants point out, Dr. Croce declined to rely on information provided by

---

[6] Defendants also argue that the Uniform Standards of Professional Appraisal Practice do not provide a private cause of action. (ECF No. 24, PAGEID # 322.) Because Dr. Croce does not respond to Defendants' argument, he is deemed to have abandoned any such claim. *See Allstate Ins. Co. v. Global Med. Billings, Inc.*, 520 F. App'x 409, 412 (6th Cir. 2013).

Defendants in securing an art-backed loan. And as to *Man with Turban*, Dr. Croce has made clear that he did not consent to the sale and so, necessarily, did not rely on the information provided by Defendants.

The Motion to Dismiss is thus **GRANTED** as to Claim II.

### 3. Claim III: Negligent Misrepresentation

Claim III is also for negligent misrepresentation. This time, Dr. Croce challenges the auction estimates outright. Claim III fails for the same reasons as Claim II.

The Motion to Dismiss is **GRANTED** as to Claim III.

### 4. Claim IV: Promissory Estoppel

Dr. Croce next asserts a claim for promissory estoppel. In Ohio, promissory estoppel has four elements: "(1) the defendant made a clear and unambiguous promise; (2) the plaintiff relied on the promise; (3) said reliance was reasonable and foreseeable; and (4) the reliance caused damages." *MTD Prods. Inc. v. Am. Honda Motor Co.*, — F. Supp. 3d —, 2024 WL 3758585, at *17 (N.D. Ohio 2024) (applying Ohio law) (citations omitted). Dr. Croce alleges that Defendants broke several "promises" made to him.

First, Dr. Croce alleges that Defendants promised that "the loan process would be completed in at least 30 days." (SAC, ¶ 152.) Dr. Croce complains about the loan process taking <u>too long</u> (*see id.*, ¶ 28), but never alleges that Defendants made a clear and unambiguous promise that loan proceeds would be paid <u>within</u> 30 days. Just the opposite, Dr. Croce alleges that Defendants represented that "the

loan process takes <u>at least</u> 30 days." (*Id.*, ¶ 15.) Although this could be seen as a scrivener's error, Defendants raised the issue in their Motion to Dismiss and Dr. Croce did not acknowledge any error in subsequent briefing or revise the language in the Second Amended Complaint. The Court thus takes Dr. Croce at his word and finds that he did not allege that Defendants made the promise he believes they broke.

Next, he alleges that Defendants promised that the loan amount "would be based on a true 50% LTV" and that Defendants' "valuations would be accurate." (SAC, ¶ 152.) Even assuming that these promises are sufficiently clear and unambiguous, and that it was reasonable for Dr. Croce to rely on them, his reliance is limited to initiating the loan process.[7] There is no allegation that initiating the loan process with Defendants caused Dr. Croce any damage. For example, Dr. Croce does not allege that he paid an application fee or was charged for the valuation. There is also no allegation that Defendants precluded Dr. Croce from pursuing an art-backed loan from another financial institution or lender.

The fourth basis for Dr. Croce's promissory estoppel claim is Defendants' promise that they "would act ethically regarding [their] clients (i.e., no conflict of interest)." (*Id.*) Dr. Croce alleges that Defendants broke this promise by acting as both "appraiser, lender and judgment auctioneer/seller." (*Id.*, ¶ 159.) There are at least two defects here. First, in their formal valuation materials, Sotheby's disclosed

---

[7] To the extent Dr. Croce alleges that the *Man with Turban* estimate is not accurate because Defendants did "not rely[] on the attribution and provenance evidence" that Dr. Croce provided (SAC, ¶ 156), there is no allegation that Defendants promised to do so.

that they "may have been, or may be in the future, engaged to sell some or all of the property at auction or by any other means." (*See* 2023 Valuation, PAGEID # 30.) It is therefore unclear based on the materials attached to the pleadings that a clear and unambiguous promise to avoid this supposed "conflict" was made. Further, there is no allegation that Dr. Croce was Defendants' "client"—or that Defendants were Dr. Croce's "lender"—when KBHR asked the state court for permission to employ Sotheby's as auctioneer. Dr. Croce approach Sotheby's Financial Services about an art-backed loan in August 2022. He received the Term Sheet two months later. Though Dr. Croce and Defendants were in conversation as late as April 2023, Dr. Croce did not engage Defendants, as lender or otherwise, before KBHR asked the court to appoint Sotheby's as auctioneer.

Finally, Dr. Croce alleges that Defendants promised that "private client dealings, including appraisals and loans, would be strictly confidential." (SAC, ¶ 152.) There is no allegation, however, that Defendants promised Dr. Croce that they would refuse to comply with a court-issued Subpoena requesting information about their dealings with him—especially when Dr. Croce did not oppose the subpoena in the relevant proceeding. *See Kegler Brown Hill & Ritter Co., L.P.A. v. Croce*, Case No. 23EX000125 (Franklin Cnty. C.P.); *see also* ECF No. 24-3.

The Motion to Dismiss is **GRANTED** as to Claim IV.

### 5. Claim V: Fraud/Intentional Misrepresentation

In Claim V, Dr. Croce alleges that Defendants' auction estimates constitute fraud and intentional misrepresentation. Plaintiffs face a heightened pleading

standard with respect to claims sounding in fraud. *See* Fed. R. Civ. P. 9(b) (requiring that fraud must be pled "with particularity"). To satisfy Rule 9(b)'s heightened standard, a complaint must "allege the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993) (internal quotation and citation omitted). Although the Second Amended Complaint is clear about the time, place, and content of the alleged fraudulent representations, it fails to allege facts supporting a reasonable inference that Defendants' auction estimates furthered any fraudulent scheme or were rendered with any fraudulent intent.

The Motion to Dismiss is **GRANTED** as to Claim V.

### 6.    Claim VI: False Advertising

Dr. Croce next asserts a claim for false advertising under the Lanham Act. The Lanham Act prohibits, among other things, false or misleading statements of fact in commercial advertising. 15 U.S.C. § 1125(a)(1). The Lanham Act "does not provide a cause of action for customers who suffer consumer injuries" from false advertising. *Lewis v. Acuity Real Est. Servs., LLC*, 63 F.4th 1114, 1115 (6th Cir. 2023). Instead, it "provides a cause of action only for businesses that suffer commercial injuries[.]" *Id*. Dr. Croce alleges that Defendants made false statements in advertising (i) their loan process and (ii) *Man with Turban*. (SAC, ¶¶ 180–81.) As to the former, Dr. Croce's alleged injury is clearly consumer in nature. And as to the

latter, the Court has already concluded that the auction estimates are not statements of fact.

The Motion to Dismiss is thus **GRANTED** as to Claim VI.

### 7. Claim VII: Misrepresentation of Art Collection Valuation

Finally, Dr. Croce asserts a claim for "misrepresentation of art collection valuation." As Defendants point out, Ohio law does not recognize any such claim. Dr. Croce does not respond and thus abandons the claim. *See Allstate Ins. Co. v. Global Med. Billings, Inc.*, 520 F. App'x 409, 412 (6th Cir. 2013).

The Motion to Dismiss is **GRANTED** as to Claim VII.

## III. CONCLUSION

For these reasons, Dr. Croce's Motion for Leave to File the Second Amended Complaint (ECF No. 43) and Defendants' Motion for Leave to File Sur-Reply (ECF No. 49) are **GRANTED**. Defendants' Motion to Dismiss (ECF No. 24), construed to apply to the Second Amended Complaint, is also **GRANTED**. Dr. Croce's Second Amended Complaint is **DISMISSED**. The Clerk is **DIRECTED** to **TERMINATE** this case.


**IT IS SO ORDERED.**


/s/ Sarah D. Morrison
**SARAH D. MORRISON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**